# Coordinating Council of Black Farm Groups

P.O. Box 115525 • Atlanta, GA 30310

FILED
FEB 2 5 1999
Clerk, U.S. District Court
District of Columbia

February 15, 1999

CA 97-1978

Let this be filed.

PAUL L. FRIEDMAN
United States District Judge

DATE: 2/25/99

**Coordinating Council Members** *(partial listing)*

Arkansas Land & Farm Development Corporation

Black Farmers & Agriculturalists Association

Federation of Southern Coops/ Land Assistance Fund *(Secretariat)*

Kentucky Minority Farmers Association

Land Loss Prevention Project

Mileston Farmers Cooperative

Mississippi Family Farmers Association

National Black Farmers Association

New North Florida Farmers Cooperative

Penn Center

Southwest Georgia Vegetable Producers Cooperative

Texas Landowners Association

West Tennessee Farmers

**Joseph Lowery, Convenor**
(404) 653-1199 or 699-0261
Fax (404) 691-6296 or 653-0086

**Secretariat**
(404) 765-0991
Fax (404) 765-9178

The Hon. Judge Paul Friedman
U. S. District Court for the
District of Columbia
E. Barrett Pettyman Courthouse
333 Constitution Ave. NW
Washington, D. C. 20001

Dear Hon. Judge Friedman:

This statement comes on behalf of the Coordinating Council of Black Farmer Organizations to comment on the proposed settlement agreement in the case of Timothy Pigford,et al vs. Dan Glickman, Secretary, U. S. Department of Agriculture (Civil Action No. 97-1978).

The Coordinating Council of Black Farmer Organizations is a collection of community based organizations assisting and advocating for black farmers and other disadvantaged rural people. We have been working together for the past year to develop unity, collective action and public support to benefit our constituency of black farmers. The Council provides support for the farmers and their organizations, around the issues raised by the litigation and related actions on behalf of Black farmers.

The Coordinating Council is essentially in support of the settlement agreement and the opportunity it provides for the dwindling number of Black farmers who remain on the land and have been victims of racial discrimination in credit and program servicing decisions of the U. S. government, to receive some immediate resolution and compensation for past actions. We are, however, concerned that the settlement agreement

118

does not clearly deal with the systemic changes needed in the policies and practices of the USDA to prevent further discrimination and correct the continuing conditions which led to the problems addressed in the lawsuit.

Our specific concerns with the settlement agreement are in two major areas. These are: first, concerns with the clarity and content of the settlement; and second, concerns related to the five year period into the future, during which implementation of the settlement will be monitored and ways to improve and strengthen the agreement during this period to insure more systemic changes are made by USDA to eliminate discrimination against the plaintiffs and all other Black and similarly disadvantaged farmers.

1. Concerns about the clarity and content of the settlement

a. Eligibility

- It is not clear from the language of the settlement if Black farmers who went to a USDA office and were actively discouraged from applying for credit and other services are eligible to participate in the class. It is also not clear if a Black farmer who complained to a Congressperson or other public official, without getting that official to specifically write a letter of complaint to USDA, is eligible; nor is it clear that a farmer who attended a USDA listening session but did not get the opportunity to raise their individual and specific complaint with USDA officials, is eligible to participate in the class. These Black farmers should be included in the class as Black farmers who made a complaint of discrimination during the relevant time period defined in the lawsuit.

b. Consideration of all government related loan obligations

- it is our understanding that under Track "A" that the only loan obligations of a farmer that will be forgiven are those owed directly to the government, i.e., direct loans with Farmers Home Administration, now Farm Services Agency.

Many farmers with whom we work, initially incurred direct loan obligations with FmHA/FSA, but later at the initiation, request, urging or specific action of the USDA agency, were converted to a guaranteed, subordinated, shared appreciation, net recovery or other loan obligation with a private lending institution. We feel Black farmers whose loan obligation was converted, transferred or otherwise changed by a USDA agency to a private lender, should have their full debt obligation forgiven, under the conditions of this settlement.

If this is not done, many Black farmers will continue to owe debt originally incurred as a result of borrowing from USDA; or they will be forced to spend their settlement funds to pay off these debts; or they will loose their land; and not be able to farm or resume farming, as was envisioned by the settlement.

We are also concerned that members of the class are currently still having problems with local FSA county officials on the payment of direct loans, the offsetting of disaster and other related payments and the acquisition of land held in inventory.

c. Full payment of Taxes

- it is our understanding that the intention of the settlement is to pay the Federal tax liability for Black farmers who receive income from the settlement. We feel the government should make provisions to pay the full Federal and state tax liability for this settlement not the partial payments as proposed in the settlement. The current language in the settlement leaves Black farmers vulnerable to pay additional taxes beyond those provided by the government.

**2. Concerns about implementation and monitoring of the settlement agreement**

The agreement provides for the designation of a monitor for the implementation of the agreement for five years and gives Black farmers the right to priority consideration for loans and services during that five year period. These benefits of the settlement which we consider critical to the future implementation of systemic changes by the USDA are not clearly defined and enumerated in the settlement agreement.

We urge you, as the judge in this case, to hold a special hearing or hearings on the monitoring and implementation plans and procedures for this settlement. At this hearing(s), you should take into account testimony and information from community based organizations, 1890 Land Grant Colleges and other interested parties, on ways to strengthen and improve the implementation of this settlement agreement by USDA.

The monitoring and implementation of the settlement agreement, could be strengthened and improved by requiring USDA to take the following steps:

a. **Monitoring Staff**: the monitor of this agreement should have a staff of 8 to 10 persons to assist in implementing, certifying results, resolving disputes and reporting on the settlement. The monitor should have the ability to contract for professional services and community outreach, technical assistance and informational services needed to carry out the assignment.

b. **Receipt for Service**: to insure better and more efficient service by USDA; and to establish the basis for and implementation of the settlement requiring priority service for Black farmers, USDA must implement a system of providing customers with a "receipt for service" when they visit the agencies of USDA to request credit, loan servicing or

other program benefits. This receipt will establish the date of service, type of service or assistance requested, disposition by the agency and follow-up steps for the agency and the farmer to take to complete the services. The receipt will become a tracking mechanism to reduce future discrimination and document priority and other services rendered for farmers.

c. **Registry of Black Farmers and Landowners:** implement CRAT recommendation number 28 requiring USDA to create a voluntary registry of Black and other people of color farmers and landowners. This registry will serve as a baseline measuring tool to determine the number of Black and other minority farmers and the extent of their landholdings. The registry will assist USDA in planning outreach, education and technical assistance programs. The registry will assist USDA and farmer organizations in evaluating the effectiveness of USDA services and programs in maintaining diversity and plurality in the ownership of farmland in our nation.

Many of the member groups of our Coordinating Council have been urging USDA to implement this registry since 1990. It was included as CRAT recommendation number 28 and included in the recommendations of the National Small Farm Commission but it has yet to be implemented by USDA.

d. **Support for Outreach, Technical Assistance and Education Funding:** For the implementation of this settlement to be effective and supportive of Black farmers there is a need for a program of concentrated outreach, education and technical assistance for Black and other disadvantaged farmers. Since 1990, Congress authorized a $10 million annual program in the farm bill (Section 2501) for this purpose, however, only about $3 million annually has been appropriated and spent for this purpose. Full funding for this kind of an outreach program will provide more direct support and assistance for Black and other people of color farmers.

e. **Better USDA Research and Education Funding and Activities geared to family sized and people of color farmers:** More support and funding is needed from USDA for research, education and extension activities geared to the needs of Black family sized farmers. Much of USDA research, education and extension activities are geared to the largest sized farmers and are not relevant, appropriate or scaled to the needs of family sized farmers. The best and most relevant research to Black family farmers is being carried out by 1890 Historically Black Land Grant Colleges, however, they are often under-funded and discouraged from doing research most beneficial to their natural constituency. The lack of relevant and beneficial research is another manifestation of the history of discriminatory policies within and practiced by USDA.

f. **Democratization of the USDA/FSA County Committee system:** The FSA County Committee election system must be reformed and made more democratic and representative. There are only a handful of elected Black committee-members across the South. The system as currently administered and implemented by USDA has failed to provide fair representation of Black and other people of color farmers on these critical local decision-making committees. For this settlement to be effective and long-lasting it must deal with the democratization of the USDA County Committee system.

g. **Full Implementation of the Civil Rights Action Team (CRAT) and National Small Farm Commission recommendations:** During the past two years, the USDA has issued two reports, the Civil Rights Action Team report; and " A Time To Choose", a report of the National Small Farm Commission, which contain many well thought out and realistic recommendations for improving USDA's services to its Black farmer customers and all USDA family farmer

customers. The implementation of this legal settlement should include full implementation of the recommendations in these reports.

Thank you for taking the time to review our concerns and suggestions for strengthening the settlement in this landmark case for our nation's Black farmers. If we can be of additional assistance in providing information, testimony or other background for our suggestions, please do not hesitate to contact us in Atlanta.

Sincerely yours,

Dr. Joseph Lowery
Convenor

cc: Alexander J. Pires, Esq.
Michael Sitcor, Esq.