UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
TIMOTHY PIGFORD, et al.,            )
                                   )
    Plaintiffs,                    )
                                   )
  v.                               )   Civil Action No. 97-1978 (PLF)
                                   )
ANN VENEMAN, Secretary,             )
   United States Department of Agriculture, )
                                   )
    Defendant.                     )
_____)
                                   )
CECIL BREWINGTON, et al.,           )
                                   )
    Plaintiffs,                    )
                                   )
  v.                               )   Civil Action No. 98-1693 (PLF)
                                   )
ANN VENEMAN, Secretary,             )
   United States Department of Agriculture, )
                                   )
    Defendant.                     )
_____)

OPINION

        On December 22, 2004, Mr. James Myart, Esq. filed, on behalf of his client, Mr. Thomas Burrell, a "Notice of Unprofessional Conduct by Michael Sitcov in Connection with Allegations of Department of Justice/Attorney Misconduct in Direct Relation to Class Members Cases and Defendant's Appeals of Arbitrator Awards." This is not the first document captioned "Notice" that Mr. Myart has filed in this case, and the Court is less than pleased at counsel's repeated use of the Court's docket as a forum for what are, in essence, press releases. This most

recent "notice" has crossed a line that the Court will not ignore. Because the Court finds this notice to be unprofessional, harassing and irrelevant to this litigation, the Court will order, sua sponte, that it and another notice filed the following day be stricken from the record.[1] The Court will not reach into the past to strike other inappropriate notices that have been filed, but admonishes counsel against the use of such mechanisms in the future in this, or any other, case.[2]

        Mr. Myart's "notice" appears to complain that Mr. Sitcov will not speak with him on the telephone concerning the recent concerns raised regarding Margaret O'Shea, an individual who participated in the Department of Justice's work regarding the implementation of the Consent Decree. Mr. Myart claims that "[i]n spite of the urgency of this matter, Mr. Sitcov refuses to communicate with Counsel justifying his refusal to communicate and insistence on hanging up in Counsel's face." Notice at 2. As noted, Mr. Myart's filing is a notice, not a motion requesting relief from the Court. Indeed, the Court notes that Mr. Myart has already filed both a notice to bring the Court's attention to the matter of Ms. O'Shea [3] and multiple motions on

---

[1] This second "notice" was captioned "Notice of Environmental Working Group Communication with Assistant Attorney General Peter D. Keisler Regarding Allegations of Department of Justice/Attorney Misconduct in Direct Relation to Class Members Cases and Defendants's Appeals of Arbitrator Awards." The Court notes that the Environmental Working Group is not a party in this case nor a movant in the two motions – a motion to modify the Consent Decree and a motion to disqualify class counsel – decided today by separate Opinion.

[2] In view of the separate Opinion issued today denying Mr. Myart's motions to modify the Consent Decree and to disqualify class counsel, the Court does not know of any reason why Mr. Myart or Mr. Burrell will have occasion to file anything further in this case, but Mr. Myart does have other cases pending before the undersigned and other judges of this Court.

[3] See Notice of Allegations of Department of Justice/Attorney Misconduct in Direct Relation to Class Members Cases and Defendant's Appeals of Arbitrator Awards filed December 19, 2004.

the same topic.[4]  Thus, the "notice", if it involved only the matter of Ms. O'Shea, at the very least would be redundant.[5]

The focus of the "notice," however, is not the matter of Ms. O'Shea, but rather Mr. Sitcov's refusal to speak with Mr. Myart on the telephone. The Court notes that this is not the first time Mr. Myart has raised this complaint. In a hearing for a temporary restraining order in <u>Bradshaw v. Veneman</u>, Civil Action No. 04-1422, on October 8, 2004, Mr. Myart advanced similar concerns regarding Mr. Sitcov's alleged failure to communicate. After explaining his reasons for refusing to speak to Mr. Myart over the telephone, including Mr. Myart's previous suspension from the Texas State Bar, Mr. Sitcov explained:

---

[4]   <u>See</u> Motion for Status Conference or Hearing Seeking Inquiry into the Track A and Track B Cases Handled by Margaret O'Shea and on Allegations of Department of Justice/Attorney Misconduct in Direct Relation to Class Members Cases and Defendant's Appeals of Arbitrator Awards and Other Matters as May be Determined by the Court, filed on December 20, 2004; Amended Motion for Emergency Status Conference or Hearing Seeking Inquiry into the Track A and Track B Cases Handled by Margaret O'Shea and on Allegations of Department of Justice/Attorney Misconduct in Direct Relation to Class Members Cases and Defendant's Appeals of Arbitrator Awards and Other Matters as May Be Detrmined [sic] by the Court and Request for Expedited Ruling, filed on December 23, 2004.

[5]   As the Court notes, <u>infra</u> at 10-11, documents captioned "notices" like those filed by Mr. Myart here have no place in this litigation. Furthermore, since class counsel – not Mr. Myart – represents the class – it was their responsibility or that of the Monitor or the Arbitrator, not Mr. Myart's, to bring the matter of Ms. O'Shea to the attention of the government and the Court. (Any class member, of course, could have brought the matter to the attention of class counsel.).

Indeed, on December 20, 2004, the very day Mr. Myart filed his motion, co-lead class counsel, Alexander Pires, filed a motion "on behalf of the class" asking the Court to order the Justice Department to undertake an inquiry into each Track A or Track B case handled by Ms. O'Shea in the event the Justice Department did not promptly do so on its own initiative. On December 30, 2004, the Justice Department filed a response to class counsel's request, describing for the Court the nature of Ms. O'Shea's involvement in this case and informing the Court that defendant has provided class counsel with the names of the class members whose cases defendant has identified as cases on which Ms. O'Shea worked.

> I have told him that I will accept e-mail from him or letters or faxes. And when it suits his purpose, which is almost every day, he sends me one of his e-mails. But when he wants to create what he views as some sort of issue about me not talking to him, he calls me. Now, I am not lead counsel in any one of these cases. As I think Your Honor is aware by this time, I supervise a practice area that, one little corner is a farm services agency. The practice involves HUD, it involves the V.A., it involves FEMA; it is nationwide in scope. The way our office operates, there are trial attorneys, and the trial attorneys are personally and primarily responsible for litigating those cases.
>
> Mr. Myart knows who the trial attorney on Pigford is. It's Liza [Goitein]. He has her number. He calls her, she calls him. If he wants to talk to somebody by phone about a motion, he can call her. And when it suits his purpose, he does.
>
> So if he is going to stand up here and lie to you that there is no way for us to communicate, that is simply false. And if he is going to say to you that there is no way for us to communicate other than by e-mail, that's false as well, because he can call Ms. [Goitein], who is the person that he should call.
>
> In other cases, he calls the lawyers who are assigned to them. There is a case called Williams that's being handled by Josh Rabinovitz. He regularly calls Mr. Rabinovitz. There's a fellow named Cowden in the United States Attorney's Office who is in several cases. Mr. Myart regularly calls Mr. Cowden. So the notion that I am some sort of roadblock is just a lie. And it is in keeping with, and I'm just going to quote now, what, "the Texas Bar found that it was conduct that was deceitful and fraudulent in those proceedings." And it is deceitful and fraudulent in these.

October 8, 2004 Motions Hearing in <u>Bradshaw v. Veneman</u>, 04-1422 ("<u>Bradshaw</u> Hearing") at 9-11. Mr. Myart knows that Mr. Sitcov prefers to communicate with him in writing in connection with this case. This is not a "refusal to communicate." It is merely a refusal to communicate by telephone. It is certainly not uncommon, in contentious cases, for prudent attorneys to prefer that their communication with opposing counsel be memorialized in writing.

4

The Court notes that, during that same hearing, Mr. Myart essentially accused Mr. Sitcov of racism, saying: "[I]f I am being treated any differently than any other lawyer or white lawyer that he deals with, that I'd consider that to be discriminatory," and, later in the hearing, when handing Mr. Sitcov a document said "yes sir, yes sir" in what Mr. Sitcov described as the patois of a slave speaking to a master, <u>Bradshaw</u> Hearing at 9, 26, to which Mr. Sitcov responded: "I don't have to be treated like dirt privately in e-mail and I don't have to be treated as dirt by Mr. Myart here." <u>Id</u>. at 27.[6]  In response, the Court, acknowledging the contentious nature of this case, noted its agreement with Mr. Sitcov on this point, <u>id</u>., and admonished all counsel to conduct themselves courteously and professionally, stating:

> Mr. Myart, you are both, everybody in this case is going to have to conduct themselves professionally.  There are a lot of lawsuits where people don't, lawyers on the other side don't like each other.  There are a lot of lawsuits where there is a history between lawyers on the other side.  But they still both have an obligation.  All have an obligation to try to act professionally toward each other and try to act professionally in their filings and in the courtroom.
>
> * * *
>
> I just don't think it is appropriate to, and I heard what you said.  I don't think that was appropriate, the way you addressed Mr. Sitcov just now.  There may be other things that are not appropriate, too.  You've identified some things that you think are inappropriate on his side and things that he has done.  As I say, there have been other things as well.  This has been a contentious matter for a long time.
>
> * * *

---

[6]  The Court notes that this is not the first time that Mr. Myart acted in such an inappropriate manner.  In his Opposed Motion to Deem Pleading Served on Defendant, filed July 29, 2004, Mr. Myart included a copy of e-mail communications between himself and Mr. Sitcov on July 27, 2004.  The first line states: "Myart Response: 'yas Sir, me's be gett'in it for ya real quick Sirrr.  I's soory, Sirrr."  <u>See</u> Opposed Motion to Deem Pleading Served on Defendant at 2.

> But it seems to me that it is the responsibility of the lawyers in the case, and the neutrals in the case, and the professionals in the case to try to keep the level of contentiousness and bad blood down and the level of civility and professionalism up. And I don't know if that is ever going to be repairable between you, Mr. Myart and you, Mr. Sitcov. And it does not have to be repaired. But people have to act professionally and civilly when they file things in writing and when they say things in Court.

Bradshaw Hearing at 27-31. The hearing ended with the following exchange:

> Mr. Myart. Does the Court have any admonition, structure, otherwise any learned advice on how to deal with my phone calls with Mr. Sitcov?
>
> Court: No.

Id. at 71. The Court assumed that its previous admonition would be sufficient. Clearly it has not been.

Mr. Myart claims to be "at a loss on this insurmountable problem and the Court's refusal to address this conduct even after the Court admonished all attorneys regarding professional conduct toward each other." Notice at 3. Mr. Myart states that he "has abided by the Court's admonishment." Id. It is clear, however, from the tenor of this and past filings by Mr. Myart, that this is not so. The e-mail attached to Mr. Myart's Notice that was directed towards Mr. Sitcov and copied to multiple members of Congress is undeniably unprofessional in tone. It states, in part:

> SITCOV, It does not matter that you did not respond to my December 19th request for information on the DOJ/O'Shea "debacle." Ms. Goitien [sic] did not respond either.
>
> Sitcov, it does not matter that you and Ms. Gotien [sic] did not answer my December 20th effort to confer on my most recent motion. . . .

The e-mail continues in a similar tone, with multiple paragraphs all beginning "Sitcov." The Court considers the tenor of this e-mail to be entirely unprofessional.[7]

Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part, that by presenting to the court any "pleading, written motion, or other paper," an attorney "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading "is not being filed for an improper purpose, such as to harass . . . and [that] the allegations and other factual contentions have evidentiary support . . . ." FED. R. CIV. P. 11(b). The notice and the attached e-mail have been filed for an improper purpose unrelated to this litigation, serving instead to bring opprobrium on a fellow member of the Bar. "[A]busive language toward opposing counsel has no place in documents filed with our courts; the filing of a document containing such language is one form of harassment prohibited by Rule 11." Coats v. Pierre, 890 F.2d 728, 734 (5th Cir. 1989), see John G. Koeltl, *The Argument for Civility*, 23 LITIGATION 66 (Spring 1997) ("Judges are not impressed by papers that hurl epithets against the other side. Memoranda that are personally insulting to an adversary are also often offensive to the Court.").

The Court has noted in the past, and will reiterate now, that Mr. Sitcov is "an experienced and dedicated Department of Justice attorney and public servant of many years who has devoted nearly six [now seven] years of his professional life to this important case" and that he "always has recognized and respected the basic rights of plaintiffs and their lawyers, without

---

[7] Although this opinion focuses on the most recent filings regarding Mr. Sitcov, the Court notes that Mr. Myart's inappropriate "notices" have extended to class counsel as well. See, e.g. Notice of Client Communication with Class Counsel, filed September 16, 2004 (attaching various letters purporting to fire Mr. Pires).

regard to their race." Pigford v. Veneman, 215 F.R.D. 2, 3-4 (D.D.C. 2003). The Court has observed Mr. Sitcov and listened to his arguments and representations in court on scores of occasions and has read thousands of pages that he has either written or whose preparation he has supervised. While his frustration level clearly has risen over the years (and his choice of language in certain filings has reflected that frustration), Mr. Sitcov has appeared always to have acted professionally, honorably and ethically.

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike any matter that is "redundant, immaterial, impertinent, or scandalous." FED. R. CIV. P. 12(f).[8] Although striking filings is generally disfavored as an extreme remedy, a court has "liberal discretion" to strike such filings as it deems appropriate under Rule 12(f). Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000); see 2 MOORE'S FEDERAL PRACTICE § 12.37[1] at 12-93 to 12-94 (3d ed. 2002). The word "scandalous" in Rule 12(f) "generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." 2 MOORE'S FEDERAL PRACTICE § 12.37[3] at 12-97; see also In re TheMart.com Inc. Securities Litigation, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) ("scandalous" includes allegations that cast "a cruelly derogatory light on a party or other person"). Mr. Myart's insinuations "improperly cast[] a derogatory light" on a dedicated government attorney who has done his best to navigate the deep and murky waters of this litigation. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

---

[8] Although Rule 12(f) applies by its terms only to "pleadings," courts occasionally have applied the Rule to filings other than those enumerated in Rule 7(a) of the Federal Rules of Civil Procedure. See, e.g., Cobell v. Norton, 213 F.R.D. 33 (D.D.C. 2003) (considering Rule 12(f) motion to strike plaintiffs' response to defendant's historical accounting plan).

FEDERAL PRACTICE & PROCEDURE § 1382 (3d ed. 2004).  The current accusations, and others, which too often have been contained in superfluous and inappropriate filings, have no place in this Court and will be stricken.

Finally, counsel is reminded that Local Civil Rule 83.8(b)(6)(v) of the Rules of this Court requires all counsel appearing in this forum to familiarize themselves with the D.C. Bar Voluntary Standards for Civility in Professional Conduct, which are included as Appendix D to those Rules. Among other things, the Standards provide that

> we [attorneys] will treat all participants in the legal process, including counsel . . . in a civil, professional, and courteous manner, at all times and in all communications, whether oral or written. . . . Except within the bounds of fair argument in pleadings or in formal proceedings, we will abstain from disparaging personal remarks or acrimony toward such participants . . . . We will not bring the profession into disrepute by making unfounded accusations of impropriety or making ad hominem attacks on counsel, and, absent good cause, we will not attribute bad motives or improper conduct to other counsel. . . . We will not degrade the intelligence, ethics, morals, integrity or personal behavior of others, unless such matters are legitimately at issue in the proceeding.

D.C. Bar Voluntary Standards for Civility in Professional Conduct ¶¶ 1, 3, 5, 28. Despite these established principles, the communications among counsel and some of the court filings in this case are not civil, respectful, or professional.  Counsel is reminded that it is a privilege to practice law in this Court, not a right, and that the Court's docket is not a forum for personal attacks.  See In re Snyder, 472 U.S. 634, 644-45 (1985) ("The license granted by the court requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice.").

9

Finally, even outside the context of ad hominem attacks, the flood of "notices" with which Mr. Myart has deluged the Court deserves comment. Many of these notices, including the instant notices, serve no legitimate litigation-related purpose and appear to be a form of grandstanding really addressed to other audiences. There are generally two types of documents that are appropriately filed in a court: pleadings (complaints, answers, counterclaims, etc.) which either state a claim or respond to a claim, and motions (oppositions, responses, etc.) which are used to bring before a court for resolution disputes involving the claims in the case or the procedures to be followed. Although in some limited circumstances it may be appropriate for a party to file a notice with the Court, the purpose of such a filing is not to carry on a conversation with the world at large.[9] The Court is a forum for dispute resolution, not a means of disseminating press releases, letters to the two political branches of government (the Congress and the Executive Branch), or postings from the Black Farmers and Agriculturalists, Inc. website. Rarely has the Court encountered filings that constitute a greater waste of the Court's resources and time or that are as inconsistent with the letter or spirit of the Federal Rules. Cf. Moore v. National Children's Center, Civil Action No. 96-0118 (PLF) (D.D.C. 1997) ("[C]ounsel seem to have adopted the notion that 'quantity is quality,' resulting in this Court . . . being barraged with motions that seemingly articulate each and every spat over which counsel find it necessary to bicker.").

---

[9] Legitimate "notices" under the Federal Rules include notices of hearing in those courts where that is the practice (FED. R. CIV. P. 6(d)), notices of removal (28 U.S.C. § 1446(a)), notices of appeal (FED. R. APP. P. 3), notices of lawsuit (Form 1A to the Federal Rules of Civil Procedure), and notices of condemnation (FED. R. CIV. P. 71A(d) and Form 28).

Mr. Myart should take care in the future to file papers with this Court <u>only</u> to the extent that they serve a legitimate litigation-related purpose. Should the Court be forced to expend its time striking inappropriate filings, the Court will seriously consider imposing sanctions. The Court notes, however, that this same day the Court has issued an Opinion and Order denying Mr. Myart's motion to modify the Consent Decree and denying his motion to disqualify class counsel in this case. Mr. Myart may not, therefore, purport to speak on behalf of "all plaintiffs" in this litigation anymore, or file documents for "Thomas Burrell, on behalf of all class members." Indeed, he never had the right to do so. Class counsel, and only class counsel, speak on behalf of the class. Should a class member have a concern, that class member may certainly contact class counsel directly or through counsel; and the Court is confident that class counsel will bring issues to the Court's attention that may require the Court's intervention.[10]

An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

DATE:

_____
PAUL L. FRIEDMAN
United States District Judge

---

[10] The Court notes that the "Motion to Enjoin James W. Myart and Thomas Burrell From Disseminating Misleading Communications to Class Members and for other Relief" remains pending. Clearly, should further filings be required by the Court in connection with this motion, Mr. Myart would be permitted to submit briefs on behalf of himself and Mr. Burrell. Since briefing on the motion is already complete, however, the Court is confident that no further briefing will be forthcoming absent Court order. Otherwise, the Court presumes that Mr. Myart's filings in this case should now be at an end, as will his use for any purpose of the caption in this case.