UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY PIGFORD, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>MIKE JOHANNS, Secretary, )<br>  United States Department of Agriculture, )<br>)<br>Defendant. )<br>_____) | Civil Action No. 97-1978 (PLF) |
| CECIL BREWINGTON, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>MIKE JOHANNS, Secretary, )<br>  United States Department of Agriculture, )<br>)<br>Defendant. )<br>_____) | Civil Action No. 98-1693 (PLF) |

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the motion of New Communities, Inc. for extraordinary relief. The movant argues that the circumstances surrounding the arbitration of its claim brought under the Consent Decree necessitate the setting aside of the arbitrator's decision. The movant asks this Court to vacate the hearing conducted by the arbitrator and set aside the findings of the arbitrator and instead to enter its own judgment in movant's favor. In the alternative, movant asks the Court to order a new hearing conducted by an arbitrator assigned by the Court and agreed upon by the plaintiff.

I.   BACKGROUND

Movant New Communities, Inc.("New Communities") filed a Track B claim as permitted under the terms of the Consent Decree in 2000. As provided for in Paragraph 10 of the Consent Decree, an evidentiary hearing on the movant's claim was held before an arbitrator on July 30, 2002.[1] The arbitrator assigned to this hearing was Linda Singer. On October 8, 2002, the arbitrator issued a decision in favor of the USDA. New Communities sought monitor review of the arbitrator's decision, pursuant to Paragraph 12 (b)(iii) of the Consent Decree on February 3, 2003.

In December 2004, subsequent to the hearing before and decision by the arbitrator, all of the parties, including the defendant, learned for the first time that the attorney acting as counsel for defendant in the arbitration – Margaret O'Shea – was alleged in news reports to have lied to her employers, including the government, about her bar status. See Notice of Allegations of Department of Justice/Attorney Misconduct [Docket No. 1073]; Motion on Behalf of the Class Seeking an Inquiry into the Track A and Track B Cases Handled by Margaret O'Shea [Docket No. 1075]; Emergency Motion for Hearing [Docket No. 1076]; Emergency Motion for Hearing [Docket No. 1080]; Defendant's Response to (1) Notice of Allegations of Department of Justice/Attorney Misconduct; (2) Motion on Behalf of the Class Seeking Inquiry into Track A and Track B Cases Handled by Margaret O'Shea; and (3) Motion and Amended

---

[1]   Under the Consent Decree, "[t]he term 'arbitrator' shall mean Michael K. Lewis . . . and other person or persons selected by Mr. Lewis who meet qualifications agreed upon by the parties and by Mr. Lewis and whom Mr. Lewis assigns to decide Track B claims under ¶ 10, below." Consent Decree ¶ 1(b). To avoid confusion, this Opinion will refer to Mr. Lewis exclusively as the "Arbitrator," capitalized, and any other assigned arbitrator will be referred to as an "arbitrator" in the lower case.

Motion for Status Conference or Hearing [Docket No. 1082]; Plaintiff's Reply to Defendant's Opposition to Motion on Behalf of the Class Seeking an Inquiry into the Track A and Track B Cases Handled by Margaret O'Shea [Docket No. 1091]. At that time, Ms. O'Shea was no longer an employee of the defendant.

Within three weeks of this matter being brought to the Court's attention, class counsel confirmed with the Arbitrator that Ms. O'Shea had worked on five of the arbitrated claims, four as counsel for the government in arbitration hearings, as the government reported. Plaintiff's Reply to Defendant's Opposition to Motion on Behalf of the Class Seeking an Inquiry into the Track A and Track B Cases Handled by Margaret O'Shea at 2. Apparently satisfied that the issue of Ms. O'Shea's bar status had no broader implications for the class, class counsel left the matter to individual claimants and their attorneys to address as they saw fit, stating:

> Based upon the report we received from the defendant, we believe the interests of the five individual claimants (all of whom are class members) affected by Ms. O'Shea's work are currently being protected because we have (1) notified their individual attorneys of the defendant's report, and (2) inquired of the Arbitrator of any other involvement of Ms. O'Shea in this case, finding the answer in the negative. Should circumstances change, we will immediately inform the Court through an appropriate motion.

Id. Since the time that this matter was brought to the Court's attention, only New Communities has raised any further complaints with this Court regarding Ms. O'Shea.

## II.   DISCUSSION

New Communities moves for this Court to set aside the arbitrator's October 8, 2002 decision and find for the movant, or, in the alternative, to order a new hearing to be conducted by an arbitrator assigned by the Court. In support of its motion, the movant cites the

following: (1) Ms. O'Shea's status as an unlicensed practitioner of law who may have deceived the government in that respect and the attendant "taint" it threw on the entire process, including the possibility that she could have destroyed evidence; (2) Ms. O'Shea's insistence that a court reporter talk privately with her during the hearing and her alleged comment to the court reporter during the July 30, 2002 hearing that "I pay your salary"; (3) speculation that Ms. O'Shea's comment to the court reporter could have had a negative impact on the arbitrator, Linda Singer, and the credibility of her decision on the claim; (4) the alleged change in demeanor of a witness who testified in the hearing after she spoke to Ms. O'Shea during a break in the hearing. The Court must deny the motion for the reasons discussed below.

The movant does not cite any the authority in law or in the negotiated Consent Decree that would justify granting the relief requested – that is, that the Court render a judgment for the movant or order a new hearing. First, with the agreement of the parties to the class action, this Court has delegated completely the authority to make final decisions on individual claims in this case to the Arbitrator and the Adjudicator. Consent Decree ¶¶ 9(a)(v), 10(i). Second, the parties agreed in the Consent Decree that "except as provided by ¶ 12(b)(iii) [of the Consent Decree]" class members with claims under Track B had "forever waive[d] their right to seek review in any court or before any tribunal of the decision of the arbitrator with respect to any claim that is, or could have been decided, by the arbitrator." Consent Decree ¶ 10(i). Paragraph 12(b)(iii) provides the mechanism by which the movant could, and has, petitioned for Monitor review of an arbitrator's decision. Even were the Court inclined to do so, it could not render judgment for the movant or order a new hearing without running afoul of the express terms of the Consent Decree which governs this case. The Court has no authority under the

Decree or under any relevant statute or case law to overturn the carefully crafted process that has been put in place by the Consent Decree.

The facts surrounding Ms. O'Shea's case are unfortunate and disturbing. A misrepresentation of this sort is, of course, unacceptable and unethical. Class counsel should and appropriately did take note of this serious incident. The fact remains, however, that there exists no evidence other than Ms. O'Shea's misrepresentation concerning her bar status that she acted unethically during movant's hearing or in the course of handling movant's claim, or that movant was in any way prejudiced by her conduct. The totality of the movant's actual evidence of the asserted unethical behavior (other than Ms. O'Shea's misrepresentation about her bar status) are (1) a single statement that, while rude, is not significant and not directed at a party to the case, and (2) a reported change in demeanor by one of movant's own witnesses who has not, apparently, provided movant with any information to support the allegation that Ms. O'Shea had any effect on her testimony. Furthermore, movant has provided no support for its charge that Ms. O'Shea destroyed evidence. These charges hardly undermine the integrity of either this particular arbitration or the entire process under which this case has operated over the course of the seven years since the Consent Decree was entered and under which over dozens of claims have been decided.

The Court turns now to the particular allegation that Ms. O'Shea's alleged statement to the court reporter within the hearing of the arbitrator assigned to movant's claim could somehow have had an impact on arbitrator Linda Singer's decision in this case. Movant states that the statement "I pay your salary" could have influenced the arbitrator because "the government also pays the salary of the Arbitrator," going on to say that "[w]e do not intend to

impugn the integrity of the Arbitrator, but it is possible that unbiased weight was given to Ms. O'Shea's representations and arguments." Mot. ¶ 6.  The Court finds this assertion to be pure speculation and baseless; the suggestion that Ms. Singer could have been so influenced lacks credence.

First, the alleged statement in and of itself was not directed at Ms. Singer, but at the court reporter.  Second, counsel for the movant reported Ms. O'Shea's statement to Arbitrator Michael Lewis, who assured her that he did not believe that the assigned arbitrator was affected by the statement.  Third, and most importantly, the inference that Ms. O'Shea had any power over the arbitrator's "salary" is strained, if not absurd, and would hardly have been of concern to an experienced arbitrator like Ms. Singer.  The defendant USDA bears the cost of the Arbitrator's fees and expenses pursuant to the Consent Decree, as it bears the costs and expenses of *all* of the neutrals assigned to implement the Consent Decree.  Consent Decree ¶¶ 3(b) (Facilitator's fees and expenses borne by the USDA); 9(c) (Adjudicator's fees and expenses borne by the USDA); 10(k) (Arbitrator's fees and expenses borne by the USDA); 12(a) (Monitor's fees and expenses borne by the USDA).  In fact, the USDA's obligation to pay the fees and expenses associated with implementing the Consent Decree extends not just to the neutrals in this case, but also to class counsel (who represent the movant here) and other attorneys performing work in the implementation of the Consent Decree.  Consent Decree ¶ 14. If movant's argument is to be credited, then not only the Arbitrator (and his designated arbitrators), but class counsel themselves would be compromised by the fact of these payments.  That simply is not the case.

The USDA bears all of these costs as part of the negotiated settlement reached

years ago by class counsel.  Payment of these costs obviously is a huge benefit to the class, and Ms. O'Shea, as an individual government "attorney" (one among many) assigned to this case, would have had no authority or influence over the payment of these costs – as an arbitrator as intelligent, experienced and sophisticated as Ms. Singer surely understood. The Court has never been given any reason to believe that the USDA's payment of fees and costs associated with implementing the Consent Decree has ever had an impact on the objectivity of the persons designated by the Court as neutrals or the vigorousness with which class counsel and other attorneys have represented their clients.

Arbitrator Michael Lewis and the persons he has designated as arbitrators pursuant to his authority in the Consent Decree, including Linda Singer, have done an exemplary job of arbitrating the numerous complex and emotionally fraught claims that have been brought to them over the years in this process.  Both Mr. Lewis and Ms. Singer are nationally renowned experts in the alternative dispute resolution field and have decades of experience doing this kind of work.  The Court has the utmost confidence in the Arbitrator's neutrality, thoroughness, and integrity in implementing the Consent Decree and in deciding the Track B claims.  The meager evidence on the record before the Court does not shake the Court's confidence and cannot provide a basis for taking away the authority delegated to Mr. Lewis and his designees by agreement of the parties when they negotiated and – after a Rule 23 Fairness Hearing – the Court approved the settlement and signed the Consent Decree.

Furthermore, by asking the Court itself to review and overturn the arbitrator's decision, the movant is requesting the Court not only to act in a manner inconsistent with the terms of the Consent Decree and for which it can find no legal authority, but also in a way that

would usurp the Monitor's authority under the Consent Decree. The Monitor and the Monitor alone has the power to review an arbitrator's decision pursuant to Paragraph 12(b)(iii) of the Consent Decree. She may "[d]irect the facilitator, adjudicator, or arbitrator to reexamine a claim where the Monitor determines that a clear and manifest error has occurred in the screening, adjudication, or arbitration of the claim and has resulted or is likely to result in a fundamental miscarriage of justice." Consent Decree ¶ 12(b)(iii). The movant filed a petition for Monitor review under this process and, as of the time of this motion's briefing, was still awaiting a response. Other than stating that it had not yet received a decision from the Monitor, the movant provides no particular reason why the Court should circumvent the process set out in the negotiated Consent Decree. This is not a legal or even a logical basis for asking the Court to step in.

The Monitor appointed by the Court in this case, Randi Roth, has established an office of professionals whose primary task is to review and examine decisions that have been petitioned under Paragraph 12(b)(iii) of the Consent Decree. Under Ms. Roth's leadership, her staff has performed this task in a thorough and conscientious manner that does credit to both the Monitor's Office and the process established under the Consent Decree. Ms. Roth herself has performed extraordinarily under the pressures of her role, a role which includes not only reviewing Arbitrator and Adjudicator decisions, but also handling "any problems that any class member may have with respect to any aspect of this Consent Decree." Consent Decree ¶ 12(b)(ii). Over 20,000 persons filed timely claims and an additional 60,000 or more requested permission to file late claims in this case. The mandate, therefore, to deal with "any problems" that arise for "any class member" with respect to the Consent Decree created for Ms. Roth the

almost Herculean task of reviewing and responding to a huge number of complaints on a wide variety of issues, in addition to her primary task of deciding the petitions for review.  Despite the challenges presented in performing all the duties assigned to her, Ms. Roth has demonstrated at every turn an unwavering dedication to her work and an incredible level of competence in carrying out her responsibilities.  The Court could not have chosen a better person for the job and continues to have the utmost confidence in Ms. Roth and her staff, including General Counsel Kenneth Saffold and Senior Counsel Stephen Carpenter.  The movant has presented no law or facts that would cause this Court to usurp the authority it has delegated to the Monitor.  Nor can the Court see why the movant would not want the Monitor's Office to review its petition, with the expertise and dedication they bring to their work.

        For all of these reasons, it is hereby

        ORDERED that movant's motion for extraordinary relief [1155] is DENIED.

        SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
DATE: March 23, 2006        United States District Judge