UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
TIMOTHY PIGFORD, et al.,                            )
                                                    )
           Plaintiffs,                              )
                                                    )
       v.                                           )        Civil Action No. 97-1978 (PLF)
                                                    )
CHUCK CONNER, Acting Secretary,                     )
United States Department of Agriculture,[1]         )
                                                    )
           Defendant.                               )
_____           )
                                                    )
CECIL BREWINGTON, et al.,                           )
                                                    )
           Plaintiffs,                              )
                                                    )
       v.                                           )        Civil Action No. 98-1693 (PLF)
                                                    )
CHUCK CONNER, Acting Secretary,                     )
United States Department of Agriculture,            )
                                                    )
           Defendant.                               )
_____           )

MEMORANDUM OPINION AND ORDER

       This matter is before the Court on a motion to enforce the consent decree filed by

Anthony and Selena Miller, who are members of the plaintiff class and successful Track A

claimants.[2]  On June 30, 2005, the Adjudicator issued a decision discharging the Millers' loans

_____

[1]     The first amended complaint named Ann Veneman, former Secretary of
Agriculture, as the party defendant.  The Court subsequently substituted her successor, Mike
Johanns, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  The Court now
substitutes Chuck Conner, Acting Secretary of Agriculture and Mr. Johanns' successor, pursuant
to that Rule.

[2]     The papers submitted in connection with this matter are: Motion of Anthony and
Selena Miller to Enforce the Consent Decree [1270] ("Miller Mot."); Defendant's Opposition to

pursuant to the debt relief provisions of the Consent Decree governing this case.  See Miller Mot.

at 3.  The Millers argue that the Adjudicator's decision eliminated all interests defendant had in

the proceeds of a loan which had been placed in a supervised bank account, thereby entitling the

Millers to those proceeds without any restrictions.  See id. at 5-7.[3]

Defendant responds that the Millers are not entitled to the proceeds because

(1) the proceeds were not the Millers' assets and the defendant therefore did not impermissibly

obtain payment on a non-existent debt when it recovered those proceeds; and (2) even if

defendant did (unintentionally) obtain a payment, the Millers suffered no harm and thus are

entitled to no relief.  See Def.'s Opp. at 6-8; id. at 8-9.  The latter argument is based on the idea

Motion of Anthony and Selena Miller to Enforce the Consent Decree [1284] ("Def.'s Opp."); and
Reply of Anthony and Selena Miller to Defendant's Opposition to Motion to Enforce Consent
Decree [1288] ("Miller Reply").

[3]      United States Department of Agriculture regulations allow for loan proceeds to be
placed in "supervised bank accounts" in certain situations.  See 7 C.F.R. §§ 1902.1 et seq.
(2005).  Withdrawals from supervised bank accounts are permitted only by order of the borrower
and countersignature by USDA personnel, or by written demand of certain USDA officials.  See
id. § 1902.10 (2005).  USDA maintains a security interest in supervised bank account proceeds
which allows USDA to reclaim the proceeds to satisfy a borrower's debts.  See Def.'s Opp. at 3;
Miller Mot., Ex. 5 at 1, ¶¶ 1-2.

The proceeds of the Millers' Operating Loan No. 44-03 were placed in a
supervised bank account in 1997.  Under the terms of the Millers' loan agreements, the proceeds
of this loan were to be used for financing a hog farming business.  See Def.'s Opp. at 3; id. Ex.
C.  USDA subsequently authorized several withdrawals for that purpose.  By 2005, however, a
balance of approximately $23,000 remained in the account because the Millers were unable to
obtain the environmental permits required to further pursue the business.  See id. at 3-4.  In the
meantime, the Millers had become delinquent on Loan No. 44-03.  As noted above, the
Adjudicator discharged the Millers' loans in June 2005.  In July 2005, a USDA official (who
apparently was unaware of the Adjudicator's decision) authorized the Millers' bank to issue a
check to USDA for all proceeds remaining in the account; USDA then applied those proceeds to
the balance owed on Loan No. 44-03.  See id. at 5.  Defendant concedes that at the time the
proceeds were reclaimed and applied to the Millers' debt there was, in fact, no debt to repay.  Id.
at 6.  Nonetheless, for reasons discussed above, defendant maintains that it need not "write [the
Millers] a check for $22,882 as 'debt relief' on a loan that they never used."  Id. at 1.

that the Adjudicator's decision eliminated the Millers' obligation to *repay* USDA, but did not eliminate the "separate and distinct obligation[]" to use the loan proceeds only for hog farming purposes.  Id. at 9.  Thus, reasons defendant, because the Millers still do not have the permits required to engage in hog farming, they have no legal right to recover or use the funds at issue. See id. at 8-9.  Defendant further contends that the Millers' continuing inability to use the proceeds gives defendant authority to reclaim and retain the proceeds as "unexpended loan funds."  See id. at 9-10; see also 7 C.F.R. § 1902.15(b) (2005).

In light of the parties' positions, the nature of the controversy, and the relatively small amount in dispute -- approximately $23,000 -- the Court concludes that this matter would benefit from settlement discussions.  The Court therefore will order the parties to initiate negotiations and to contact the court-appointed Monitor, Randi Ilyse Roth, to discuss ways in which the Monitor and her Office can facilitate the parties' efforts.  The Court urges both sides to approach the issue with a degree of flexibility in order to achieve a fair and efficient resolution without judicial intervention.

In the event that the parties are unable to resolve their differences, the Court will require additional briefing to reach a decision.  In their reply brief, the Millers argue that they became "paid-up borrowers" under the applicable USDA supervised bank account regulation when the Adjudicator discharged their debts.  See Miller Reply at 2-3; see also 7 C.F.R. § 1902.15(d) (2001) ("paid-up borrower" regulation in effect at the time of the Adjudicator's decision in the Millers' case).[4]  The Court finds this argument persuasive, at least on first

---

[4]      The version of the "paid-up borrower" regulation in effect at the time of the Adjudicator's decision provided that

[a] paid-up borrower is one who has a balance remaining in the

3

reading.  If the Millers are correct, then it is possible that defendant's own regulation establishes

the Millers' entitlement to the funds at issue.  The Court therefore believes it would be useful for

defendant to respond to this argument (addressing, for example, whether the Millers'

interpretation is correct and whether any subsequent revisions to this regulation or other

regulations should affect the analysis), and for the Millers to offer further support for their

interpretation of the "paid-up borrower" regulation and its applicability to them.  The Court also

believes it would be useful for both parties to address certain related matters, such as (1) whether

other federal agencies with authority to enter into supervised bank account agreements have

confronted analogous situations and, if so, how they have resolved those situations; (2) whether

creditor-debtor law or property law sheds any light on the effect of the Adjudicator's decision on

the parties' interests in the supervised bank account proceeds; and (3) whether there is any

helpful discussion of these or closely related issues in recent case law.

Accordingly, it is hereby

ORDERED that the parties pursue further settlement discussions with the

assistance of the court-appointed Monitor, Randi Ilyse Roth.  The Monitor's Office may be

reached via telephone at 1-877-924-7483; and it is

---

supervised bank account and has repaid the entire indebtedness to
FmHA or its successor agency under Public Law 103-354 and has
properly expended all funds advanced by other lenders.  In such
cases the District Director or County Supervisor will (i) notify the
borrower in writing that the interests in the account of FmHA or its
successor agency under Public Law 103-354 have been terminated,
and (ii) inform the borrower of the balance remaining in the
supervised bank account.

7 C.F.R. § 1902.15(d) (2001).

FURTHER ORDERED that if the parties are unable to reach a settlement agreement on or before February 1, 2008, they shall file supplemental briefs as follows. On or before February 20, 2008, defendant shall file a supplemental brief addressing the Millers' argument that the Millers are entitled to the proceeds of the supervised bank account as "paid up borrowers" under all applicable USDA regulations. The Millers may respond to defendant's supplemental brief on or before March 5, 2008. The supplemental briefs should address the matters listed above.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: December 21, 2007