UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
TIMOTHY PIGFORD, *et al.*,                          )
                                                    )
              Plaintiffs,                           )
                                                    )
       v.                                           )        Civil Action No. 97-1978 (PLF)
                                                    )
TOM VILSACK, Secretary,                             )
United States Department of Agriculture,[1]         )
                                                    )
              Defendant.                             )
_____)
                                                    )
CECIL BREWINGTON, *et al.*,                         )
                                                    )
              Plaintiffs,                           )
                                                    )
       v.                                           )        Civil Action No. 98-1693 (PLF)
                                                    )
TOM VILSACK, Secretary,                             )
United States Department of Agriculture,            )
                                                    )
              Defendant.                             )
_____)


OPINION AND ORDER

       This matter is before the Court on a motion for attorneys' fees, costs and expenses

by Covington & Burling LLP ("Covington"), counsel for class member Robert E. Holmes, Sr.

("Mot."); an opposition to Covington's motion by the United States Department of Agriculture

("Opp."); Covington's reply ("Reply"), and USDA's surreply ("Surreply").

_____

       [1]      Petitioners initially named Edward T. Schafer, former Secretary of Agriculture, as
the party defendant.  The Court now substitutes Tom Vilsack, current Secretary of Agriculture,
pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

I.  BACKGROUND

On October 1, 2007, "Mr. Holmes prevailed against the [USDA] in a Track B

arbitration, which was conducted pursuant to the Court's April 14, 1999 consent decree[.]" Mot.

at 1-2; see also id., Declaration of Joshua A. Doan, Ex. 1, In Re: Track B Claim of Robert E.

Holmes, Sr. (Claim No. 19230, Arb. No. 131) (Oct. 1, 2007) ("Arbitrator's Decision").[2]  The

USDA chose not to appeal the arbitrator's decision, and it became final on January 29, 2008.

In the Track B proceeding, Mr. Holmes alleged that the Farmers Home

Administration, an agency of the USDA, discriminated against him in the provision and

servicing of farm loans on various occasions between 1985 and 1994.  Presumably because they

_____

[2]        The Court approved the Pigford Consent Decree on April 14, 1999.  See Pigford
v. Glickman, 185 F.R.D. 82, 113 (D.D.C. 1999).  The Consent Decree

> creates a mechanism for resolving individual claims of class
> members outside the traditional litigation process.  See Pigford v.
> Glickman, 185 F.R.D. 82, 94 (D.D.C. 1999).  Class members may
> choose between two claims procedures, known as Track A and
> Track B.  Track A awards $50,000 in monetary damages, debt
> relief, tax relief, and injunctive relief to those claimants able to
> meet a minimal burden of proof.  See id. at 96-97.  Track A claims
> are decided by a third-party neutral known as an adjudicator.
> Track B imposes no cap on damages and also provides for debt
> relief and injunctive relief.  Claimants who choose Track B must
> prove their claims by a preponderance of the evidence in one-day
> mini-trials before a third-party neutral known as an arbitrator.  See
> id. at 97.  Decisions of the adjudicator and the arbitrator are final,
> except that the monitor, a court-appointed third-party neutral, may
> on petition direct the adjudicator and the arbitrator to re-examine
> claims if the monitor determines that "a clear and manifest error
> has occurred" that is "likely to result in a fundamental miscarriage
> of justice."  See id.

Pigford v. Schafer, Civil Action No. 97-1978, Memorandum Opinion and Order at 2 (D.D.C.
Nov. 12, 2008).

occurred at different times and rested on distinct facts, the arbitrator treated Mr. Holmes' various

allegations of discrimination as eleven discrete claims.  The arbitrator found in Mr. Holmes'

favor with respect to some but not all of his claims.  Specifically, the arbitrator found in Mr.

Holmes' favor on Claim 1 ("Failure to Provide Limited Resource Interest Rate[] [Loan in]

1985"); Claim 2 ("Delay in Processing 1986 Loan"); Claim 3 ("Delay in Processing 1987

Loan"), Claim 4 ("Delay in Processing the 1988 Loan"); and two of three allegations in Claim 6

("Denial of Loans and Loan Servicing in 1990").  The arbitrator did not find in Mr. Holmes'

favor on Claim 5 ("Delay in Processing the 1989 Loan and Servicing Request"); one of three

allegations in Claim 6; Claim 7 ("Denial of Loans and Loan Servicing in 1991"); Claim 8

("Denial of Loans and Loan Servicing in 1992"); Claim 9 ("Denial of Loan Servicing in 1993

and 1994"); Claim 10 ("Denial of Loans for Machinery Purposes"); and Claim 11 ("Denial of

Farm Ownership Loans").  <u>See</u> Arbitrator's Decision at 21-33.  The arbitrator awarded Mr.

Holmes a total of $202,290.87 in actual damages and $100,000 in emotional distress damages.

<u>Id</u>. at 36.  He also directed that any outstanding loan balances in the Operating Loan program

dating from 1985 were to be forgiven.  <u>Id</u>.

   Covington represented Mr. Holmes throughout the litigation of his Track B claim.

The firm now seeks $192,180.93 in attorneys' fees, costs and expenses under the Equal Credit

Opportunity Act, 15 U.S.C. § 1691e(d) ("ECOA"), and the Equal Access to Justice Act, 28

U.S.C. § 2412 ("EAJA").[3]  The USDA concedes that Mr. Holmes is a prevailing party for fee-

---

[3]  Under the ECOA, parties who prosecute "successful action[s]" against the
government are entitled to reasonable fees.  15 U.S.C. § 1691e(d).  Similarly, under the EAJA,
"prevailing part[ies]" are entitled to reasonable fees – unless the government's position was
substantially justified or special circumstances make an award unjust.  28 U.S.C. § 2412
(d)(1)(A).

shifting purposes, and thus that the ECOA and the EAJA entitle Covington to reasonable fees,

costs and expenses.  See Opp. at 1.  The USDA contends, however, that Covington's fee should

be reduced to account for the fact that Mr. Holmes did not prevail on all of his claims.  See id.

The USDA's argument is based on Hensley v. Eckerhart, 461 U.S. 424 (1983),

and its progeny.  In Hensley, the Supreme Court "defined the conditions under which a plaintiff

who prevails on only some of his claims may recover attorney fees" under fee-shifting statutes

like the ECOA and the EAJA.  George Hyman Construction Co. v. Brooks, 963 F.2d 1532, 1535

(D.C. Cir. 1992).[4]  In such cases, Hensley prescribes the following two-part inquiry for assessing

a plaintiff's "degree of success," Goos v. Nat'l Ass'n of Realtors, 997 F.2d 1565, 1568 (D.C. Cir.

1993), and hence the reasonableness of the fees sought:

> First, did the plaintiff fail to prevail on claims that were unrelated
> to the claims on which he succeeded?  Second, did the plaintiff
> achieve a level of success that makes the hours reasonably
> expended a satisfactory basis for making a fee award?

Hensley v. Eckerhart, 461 U.S. at 434.  If the answer to the first question is "yes," then "no fee

may be awarded for services on the unsuccessful claim[s]," because "[t]he congressional intent to

limit awards to prevailing parties requires that these unrelated claims be treated as if they had

been raised in separate lawsuits[.]"  Id. at 435.  See also Sierra Club v. EPA, 769 F.2d 796, 801

(D.C. Cir. 1985) (fees should not be awarded for meritless or unsuccessful claims "simply

because those unsuccessful claims were brought in a lawsuit that included successful claims").

---

[4]      "Though the Hensley analysis was crafted in the . . . context [of the Civil Rights
Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988], it was explicitly designed by the Court to
apply to all federal statutes limiting fee awards to 'prevailing part[ies].'"  George Hyman
Construction Co. v. Brooks, 963 F.2d at 1535.

If, however, the court finds that a prevailing party's unsuccessful and successful claims are "interrelated," then it is instructed "to skip the first <u>Hensley</u> [prong] and move to its second." <u>George Hyman Construction Co. v. Brooks</u>, 963 F.2d at 1537.  Under <u>Hensley</u>'s second prong, the court must consider "whether the success obtained . . . is proportional to the efforts expended by counsel," <u>George Hyman Construction Co. v. Brooks</u>, 963 F.2d at 1535, and then "award only that amount of fees that is reasonable in relation to the results obtained."  <u>Hensley v. Eckerhart</u>, 461 U.S. at 440.  In other words, if the successful and unsuccessful claims "share a common core of facts or are based on related legal theories, then a court should simply compute the appropriate fee as a function of degree of success."  <u>George Hyman Construction Co. v. Brooks</u>, 963 F.2d at 1537.

The USDA's principal argument is that Covington's fee request should be reduced under <u>Hensley</u>'s first prong.  Specifically, the USDA contends that Covington is not entitled to fees for its work on Mr. Holmes' unsuccessful claims because those claims are "unrelated" to Mr. Holmes' successful claims.  <u>See</u> Opp. at 2; <u>see also</u> <u>id</u>. at 11-13.  In the alternative, the USDA argues that if the Court disagrees with its principal argument – *i.e.*, if the Court concludes that Mr. Holmes' claims are "related" under <u>Hensley</u>'s first prong – then Covington's fee request should be reduced under <u>Hensley</u>'s second prong.  The USDA asserts that it would be disproportionate and excessive to award Covington fees for its work on all of Mr. Holmes' claims when Mr. Holmes prevailed on only some of those claims.  <u>See id</u>. at 16-17.

Covington, of course, disagrees on both points.  With respect to the first point, Covington argues that Mr. Holmes' unsuccessful claims were related to his successful claims because all of his claims were formulated as "disparate treatment claims under the Equal Credit

Opportunity Act that relied on the <u>McDonnell Douglas</u> framework (because of an absence of direct evidence of racial animus)."  Reply at 7; <u>see</u> <u>also</u> <u>id</u>. at 10 (arguing that "Mr. Holmes' successful and unsuccessful claims were closely related because they were brought using related legal theories under the same statute using the same legal framework and relying on the same type of evidence.").[5]  With respect to the second point, Covington argues that it is entitled to the full fee sought because that fee would reasonably compensate the firm for its work on Mr. Holmes' Track B claim, particularly in light of the excellent results obtained.  <u>See</u> <u>id</u>. at 10.

## II.  SCOPE

As an initial matter, the Court will accept the USDA's invitation to (1) limit its analysis to the first issue raised by the parties – that is, whether Mr. Holmes' unsuccessful claims are "related" to his successful claims under <u>Hensley</u>'s first prong – and (2) order the parties to attempt to settle this matter in light of the Court's ruling on that issue.  <u>See</u> Opp. at 2, 16; <u>see also</u> <u>Ass'n of Admin. Law Judges, Inc. v. Heckler</u>, Civil Action No. 83-0124, 1988 WL 30760, at *6-7 & n.4 (D.D.C. Mar. 21, 1988) (utilizing this approach).  Because "[a] request for attorney's fees should not result in a second major litigation," and "[i]deally . . . litigants will settle the amount of a fee," <u>Hensley v. Eckerhart</u>, 461 U.S. at 437, the Court concludes that it is both wiser and more efficient to give the parties one last chance to resolve this dispute.  <u>See</u> <u>Morgan v. District of Columbia</u>, 824 F.2d 1049, 1067 (D.C. Cir. 1987) (noting the "Supreme Court's call for [parties to make a] conscientious effort to resolve differences over [fee] awards").

---

[5]      In <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), the Supreme Court set forth a burden-shifting formula for evaluating claims of discrimination when direct evidence of discriminatory animus is lacking.

III.  "RELATEDNESS" OF CLAIMS

According to the D.C. Circuit, unsuccessful claims are unrelated to successful claims when the unsuccessful claims are "'distinctly different' in all respects, *both legal and factual*, from the . . . successful claims." Morgan v. District of Columbia, 824 F.2d at 1066 (quoting Hensley v. Eckerhart, 461 U.S. at 434) (emphasis added); see also Williams v. First Gov't Mortgage and Investors Corp., 225 F.3d 738, 746 (D.C. Cir. 2000) (same).  Although "there is no certain method of determining when claims are 'related' or 'unrelated,'" Hensley v. Eckerhart, 461 U.S. at 436 n.12, generally speaking "interrelated claims are those that 'cannot be viewed as a series of discrete claims.'" George Hyman Construction Co. v. Brooks, 963 F.2d at 1539 (quoting Hensley v. Eckerhart, 461 U.S. at 435).  Thus, for example, a plaintiff's claims may be related if they are brought under different legal theories but are intended to establish the illegality of the same conduct.  See Goos v. Nat'l Ass'n of Realtors, 997 F.2d at 1569 (concluding that a common law contract claim and a statutory claim were related because "both claims focused on a single, necessary factual issue:" whether plaintiff was dismissed from her job for retaliatory and hence unlawful reasons).  But when a plaintiff's claims "overwhelmingly involve[] distinct legal and factual issues," then they are unrelated under Hensley's first prong. Martin v. Lauer, 740 F.2d 36, 47 (D.C. Cir. 1984).  Applying these principles, the Court concludes that Mr. Holmes' unsuccessful claims are unrelated to his successful claims, and that Covington therefore is not entitled to a fee award for work performed on Mr. Holmes' unsuccessful claims.

It is beyond dispute that Mr. Holmes' unsuccessful claims are factually distinct from his successful claims. As the arbitrator's 38-page decision illustrates, each of Mr. Holmes' eleven claims of discrimination were based on different factual allegations, with no discernible factual overlap among claims. Compare, e.g., Arbitrator's Decision at 21 (discussing Claim 1, based on Mr. Holmes' allegation that "in 1985, a similarly-situated white farmer . . . received a Limited Resource loan while he did not") with id. at 30 (discussing Claim 7, based on Mr. Holmes' allegation that he "applied for and was qualified for an OL loan and servicing in January 1991 but never received the desired funding"). Thus, not surprisingly, Covington does not contend that Mr. Holmes' unsuccessful claims are *factually related* to his successful claims. See, e.g., Goos v. Nat'l Ass'n of Realtors, 997 F.2d at 1569 (claims were related because they "shared a common core of facts"). Rather, Covington argues that Mr. Holmes' unsuccessful claims are *legally related* to his successful claims because all of Mr. Holmes' claims were based on the same legal argument: that is, that specific actions by the USDA were motivated by racial discrimination in violation of the ECOA. See, e.g., Reply at 7.

This argument has some surface plausibility, but it must be rejected for at least three reasons. First, Covington cites no authority (and the Court has discovered none) which supports its theory that a series of otherwise discrete, easily separable claims are "legally related" simply because they invoke the same legal authority and rely on the same legal standard. Rather, the case law indicates that claims are legally related for Hensley purposes when they require the resolution of identical, interlocking or overlapping legal questions (or mixed questions of law and fact). See, e.g., Williams v. First Gov't Mortgage and Investors Corp., 225 F.3d at 746 (statutory and common law claims were related because they all required resolution of whether

8

defendant's sale of insurance to plaintiff was fraudulent); <u>Morgan v. District of Columbia</u>, 824

F.2d at 1066 (claims were related because they all arose from plaintiff's "central claim that the

[defendants] had been deliberately indifferent to [plaintiff's] eighth amendment rights in

connection with the assault [suffered by plaintiff]").

        Mr. Holmes' claims did not require the resolution of identical, interlocking or

overlapping legal questions or mixed questions of law and fact.  Instead, each claim required the

arbitrator to resolve a unique and distinct legal question: whether Mr. Holmes' allegations and

evidence pertaining to a specific governmental action (for example, the denial of a loan to Mr.

Holmes in a particular year), evaluated under the <u>McDonnell Douglas</u> framework, were sufficient

to establish by a preponderance of the evidence that the specific action in question was motivated

by discriminatory animus.  <u>See</u> <u>Sierra Club v. EPA</u>, 769 F.2d at 803 (claims were unrelated

because "petitioners could be granted relief on any one issue without necessarily obtaining their

desired relief on any other issue"); <u>Martin v. Lauer</u>, 740 F.2d at 47 (claims under the First

Amendment and a whistleblower statute were unrelated because "the legal issues raised by the

First Amendment claim were largely distinct from those implicated by the whistleblower claim");

<u>Hawaii Longline Ass'n v. Nat'l Marine Fisheries Svc.</u>, Civil Action No. 01-0765, 2004 WL

2239483, at *6 & n.3 (D.D.C. Sept. 27, 2004) (claims could be "compartmentalized" for <u>Hensley</u>

purposes).  Thus, Mr. Holmes' claims are easily "viewed as a series of discrete claims" – both

factually *and* legally – and his unsuccessful claims therefore should be regarded as unrelated to

his successful claims.  <u>Hensley v. Eckerhart</u>, 461 U.S. at 435.

Second, to accept Covington's theory would be to severely undermine the purpose and intent of Hensley's first prong.  As the D.C. Circuit has explained, Hensley's first prong is intended to ensure that "a plaintiff [will] not be able to force his opponent to pay for the legal services involved in bringing groundless claims simply because those unsuccessful claims were brought in a lawsuit that included successful claims."  Sierra Club v. EPA, 769 F.2d at 801. Under Covington's theory, however, a prevailing party could seek fees for any number of groundless claims so long as those groundless claims were submitted under the same legal authority as the party's successful claims.  In other words, Covington's theory would permit a prevailing party to seek fees that were not in any cognizable way "premised on successful litigation of a claim," Trout v. Winter, 464 F. Supp. 2d 25, 30 (D.D.C. 2006) – in direct contravention of Hensley's first prong.

Third, and relatedly, it would be particularly inappropriate to adopt Covington's theory in the context of Track B adjudications under the Pigford Consent Decree.  As the USDA points out, "*only* disparate treatment claims under the ECOA can be brought under Track B, and all [or nearly all] are subject to the McDonnell Douglas standard of proof."  Surreply at 2 (emphasis added).  Thus, under Covington's theory, "all claims in a Track B arbitration would always be 'interrelated[.]'"  Id.  That result would be unacceptable because – as Mr. Holmes' case illustrates – Track B claims may well include many "truly fractionable" claims.  Action on Smoking and Health v. Civil Aeronautics Board, 724 F.2d 211, 216 (D.C. Cir. 1984) (internal quotation marks and citation omitted).

IV.  CONCLUSION

In sum, the Court concludes that Mr. Holmes' unsuccessful claims are unrelated to his successful claims under the principles of Hensley and its progeny.  As the parties will be ordered to try to settle this matter in light of that conclusion, it is worthwhile to note what that conclusion does *not* entail or imply.  In deciding that Mr. Holmes' unsuccessful claims are unrelated to his successful claims, and hence that Covington is not entitled to fees for its work on Mr. Holmes' unsuccessful claims, the Court does not mean to endorse "a mathematical approach" to calculating a reasonable fee.  Hensley v. Eckerhart, 461 U.S. at 435 n.11.  The Court recognizes – as the USDA seems to concede, see Surreply at 7 – that simply reducing Covington's fee by a fraction corresponding to the number of unsuccessful claims is not likely to result in a fair and reasonable fee for Covington's services.  After all, "even when a lawsuit involves distinct claims, there inevitably may be some overlap in the requisite factual and legal analysis."  Martin v. Lauer, 740 F.2d at 47.  Cf. Int'l Center for Technology Assessment v. Vilsack, Civil Action No. 03-0020, 2009 WL 693154, at *4 (D.D.C. Mar. 18, 2009) (concluding that plaintiffs' unsuccessful claims were unrelated to their successful claims, but noting that "[p]laintiffs spent a good deal of time . . . working on other issues not directed to any of the three claims specifically, but which was necessary to plaintiffs' successes").  Moreover, Covington likely would have had to perform certain litigation-related tasks whether or not it brought the unsuccessful claims.  See Ustrak v. Fairman, 851 F.2d 983, 988 (7th Cir. 1988).[6]

---

[6]    The Court also expresses no view as to the USDA's argument that Covington is not entitled to certain fees related to this fee dispute.  See Surreply at 8-9.

For all of these reasons, it is hereby

ORDERED that the parties shall attempt to settle Covington's motion for an award of attorneys' fees in light of this Opinion and Order.  If the parties are able to settle this matter, they shall inform the Court immediately in writing and shall file the appropriate settlement or dismissal papers.  If the parties are unable to settle this matter, they shall file a joint report so informing the Court on or before June 8, 2009.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: May 12, 2009