UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
TIMOTHY PIGFORD, *et al.*,                          )
                                                    )
            Plaintiffs,                             )
                                                    )
      v.                                            )      Civil Action No. 97-1978 (PLF)
                                                    )
TOM VILSACK, Secretary,                             )
United States Department of Agriculture,            )
                                                    )
            Defendant.                              )
_____           )
                                                    )
CECIL BREWINGTON, *et al.*,                          )
                                                    )
            Plaintiffs,                             )
                                                    )
      v.                                            )      Civil Action No. 98-1693 (PLF)
                                                    )
TOM VILSACK, Secretary,                             )
United States Department of Agriculture,            )
                                                    )
            Defendant.                              )
_____           )


<u>OPINION</u>

            Claimant Maurice G. McGinnis prevailed on a so-called "Track A" claim in this

case but refused to cash the award check that was issued to him, insisting that he had requested

to have his claim arbitrated under "Track B" instead.  He now asks the Court to order that his

claim be heard anew under Track B.  Having carefully considered Mr. McGinnis' motion to

enforce the Consent Decree, the government's opposition, and the available record, the Court

concludes that Mr. McGinnis is entitled to the relief that he seeks. The Court therefore will grant his motion.[1]

## I. BACKGROUND

The Consent Decree negotiated by the parties to this case and approved by the Court in April 1999 created a mechanism for resolving the individual claims of class members outside the traditional litigation process. See Pigford v. Glickman, 185 F.R.D. 82, 94 (D.D.C. 1999). Class members were permitted to choose between two claims procedures, known as Track A and Track B. Track A claims were decided by a third-party neutral known as the Adjudicator and resulted in awards of $50,000 in monetary damages to those claimants able to meet a minimal burden of proof. See id. at 103. Track B claims, which were decided by a different neutral known as the Arbitrator, imposed no cap on damages but required claimants to prove their claims by a more demanding preponderance-of-the-evidence standard in one-day mini-trials. See id. at 106.

Maurice McGinnis completed a Pigford claim form in August 1999 with the assistance of an attorney. See McGinnis Decl., Ex. 1. He opted to pursue a Track A claim, although his claim form suggests that he harbored some confusion or indecision about that

---

[1]     The papers filed in connection with the pending matter include the following: Motion of Claimant Maurice G. McGinnis for Enforcement of the Consent Decree ("Mot."); Declaration of Maurice G. McGinnis ("McGinnis Decl."); Defendant's Opposition to Motion of Maurice G. McGinnis for Enforcement of Consent Decree ("Opp."); Opposition of Claimant Maurice G. McGinnis to Joint Motion of the Parties to Approve the Proposed Stipulation and Order ("Stip. Opp."); Defendant's Reply Memorandum in Support of the Joint Motion of the Parties to Approve the Proposed Stipulation and Order ("Def.'s Stip. Reply"); Plaintiffs' Reply to Opposition of Maurice G. McGinnis to Joint Motion to Approve the Proposed Stipulation and Order ("Pls.' Stip. Reply"); and Class Counsel David J. Frantz's Submission in Response to Court Order of May 7, 2013 ("Frantz Decl.").

choice.[2]  Later the same month, Mr. McGinnis attests, he telephoned the Claims Facilitator and

asked for his claim to be processed under Track B instead of Track A.  McGinnis Decl. ¶ 2.

Although not part of the record or essential to the resolution of this motion, the Court has been

informed that the Claims Facilitator has telephone records showing that Mr. McGinnis called the

Facilitator on August 31, 1999 regarding a switch to Track B and was instructed to send a letter

to the Facilitator.  Mr. McGinnis then wrote a letter to the Claims Facilitator, dated September 1,

1999, that states in part: "Per our phone conversation, this is to confirm that under the current

status of this settlement, I have indeed filed my claim and/or petition under 'Plan B' instead of

Plan A as originally thought."  Id., Ex. 2.  A copy of this letter provided by Mr. McGinnis shows

a Claims Facilitator date-stamp of September 7, 1999, indicating that the letter was received.

See id.

Although Mr. McGinnis requested in writing that his claim be switched from

Track A to Track B, and although the Claims Facilitator appears to have received his letter, the

Facilitator nevertheless sent his claim form to the Adjudicator for a Track A determination,

rather than to the Arbitrator for a Track B determination.

In June 2000, the Adjudicator denied Mr. McGinnis' claim, based on a lack of

supporting evidence and on perceived discrepancies between his allegations of discrimination

and the documentary record.  See Opp., Ex. 1.

_____

[2]       In the section of Mr. McGinnis' claim form that asks the claimant to choose
between Track A and Track B by placing a check in the corresponding box, both boxes are
checked.  Mr. McGinnis scratched out the Track B box, however, and placed his initials next to
this scratched-out box, while leaving the Track A box intact.  McGinnis Decl., Ex. 1, at 2.  He
also filled out the portion of the claim form containing the heading "Track A – Adjudication
Claim Affidavit," which provides these directions below the heading: "Only complete this
affidavit if you have elected to settle your claim under the Track A – Adjudication option."  Id.
at 3.  Thus, Mr. McGinnis unambiguously selected Track A, but the claim form suggests that he
may have initially selected Track B before changing his mind.

In 2001, Mr. McGinnis petitioned for Monitor review of the Adjudicator's denial

of his claim.  See McGinnis Decl., Ex. 3.  Under the Consent Decree, the Monitor was

empowered to direct the Adjudicator to reexamine a claim determination where the Monitor

concluded "that a clear and manifest error has occurred in the . . . adjudication . . . of the claim

and has resulted or is likely to result in a fundamental miscarriage of justice."  Pigford v.

Glickman, Civil Action No. 97-1978, Consent Decree ¶ 12(b)(iii) (D.D.C. Apr. 14, 1999).

Mr. McGinnis' petition to the Monitor, which was prepared by Pigford class

counsel — specifically Alexander J. Pires, Jr. — and not the attorney who had assisted him with

his claim form, argued that the Adjudicator's denial of his claim represented a clear and manifest

error because Mr. McGinnis "mistakenly chose the wrong Track and the facilitator failed to

correct it."  McGinnis Decl., Ex. 3, at 1.  The petition further explained:

> Because Claimant thought he was proceeding under [Track B] he
> thought he would have a later opportunity in the process to furnish
> the details of his claim. Thus, his claim form omitted some further
> allegation[s] of the numerous incidents of discrimination he
> encountered. Claimant, therefore, requests that his claim be
> remanded to the facilitator to be placed into Track B.

Id.[3]  "In the alternative," Mr. McGinnis requested "that his claim be remanded to the Adjudicator

for readjudication" under Track A.  Id.  In support of this alternative form of relief, the petition

contended that "[t]he record before the Adjudicator was incomplete because of an

error/miscommunication between Claimant and the individual assisting him with his claim."  Id.

It continued:

---

[3]        The first sentence of this quote actually reads "Track A," not "Track B," but the
context leaves no doubt that this was a typographical error — though a particularly unfortunate
one, given that the entire discussion in this part of the petition is devoted to explaining Mr.
McGinnis' alleged confusion about the choice between Track A and Track B.

> Due to above referenced error/miscommunication between Claimant and the individual assisting him with his claim form, the original claim form failed to give all of the years the discriminatory conduct took place and all of the correct details surrounding the discriminatory conduct. Claimant was under the impression that his case would be handled under Track B, he did not delve into all of the incidents of discrimination under the belief that he would build his whole case under Track B.

Id.

Accompanying Mr. McGinnis' petition for Monitor review were a number of documents that the petition argued should be admitted into the record if his request to switch to Track B were rejected and his claim were reexamined by the Adjudicator under Track A. McGinnis Decl., Ex. 3, at 3.

The Monitor's task of reviewing thousands of Track A decisions was a lengthy process that took many years.  Moreover, according to Pigford co–lead class counsel David Frantz, who assisted Mr. McGinnis during the pendency of his petition for Monitor review: "The request in a PMR [*i.e.*, petition for monitor review] for a track switch from Track A to Track B was an unusual request."  Frantz Decl. ¶ 3.  Perhaps for that reason, in 2007 the Claims Facilitator contacted Mr. Frantz about Mr. McGinnis' request to switch tracks and asked whether — six years after the submission of his petition — he still wished to have his claim arbitrated under Track B.  Id.  After consulting with Mr. McGinnis, Mr. Frantz sent an email to the Claims Facilitator in December 2007 that stated in full: "I have spoken with Mr. McGinnis, and he wishes for his PMR to proceed as is."  Id., Ex. 1.

Apparently misunderstanding Mr. Frantz's terse message, the Claims Facilitator promptly sent an email to the Monitor conveying precisely the opposite meaning from the one Mr. Frantz says he, on behalf of Mr. McGinnis, intended.  This email read: "Class Counsel has communicated with Mr. McGinnis and has confirmed that the original election of Track A

should stand."  Frantz Decl., Ex. 2.  Mr. Frantz was not copied on the email, which he first

learned about only recently as a result of Mr. McGinnis' motion.  Id. ¶ 5.[4]  At the time, Mr.

Frantz  had no apparent reason to suspect that anything had gone amiss, because the Claims

Facilitator replied to his message the same day by writing: "I have notified the Monitor's office.

Thank you."  Id., Ex. 1.

        The Monitor issued a lengthy opinion in January 2008 granting the alternative

request made in Mr. McGinnis' petition — i.e., that his claim be reexamined under Track A by

the Adjudicator in light of the additional documents that he had provided in support of his

allegations.  See McGinnis Decl., Ex. 4, at 1.  The Monitor did not consider Mr. McGinnis'

primary request — that she remand the case to the Claims Facilitator with instructions that it be

processed under Track B.  Instead, consistent with the information provided to her by the Claims

Facilitator, she simply explained in a footnote: "In his Petition, the Claimant also requests that

his claim be arbitrated under Track B.  Pursuant to discussions with the Facilitator, the parties

and the Monitor have established that the Claimant will proceed as a Track A claimant."  Id. at 6

n.27; see also id. at 25 n.125 (same).[5]  The Monitor directed the Adjudicator to reexamine Mr.

---

[4]      These emails first came to light in response to an Order of the Court issued in May of this year.  See infra note 5.

[5]      In the declaration submitted last year with his pending motion, Mr. McGinnis adamantly denied that he ever relinquished his request to have his claim adjudicated under Track B, as the Monitor's opinion indicates: "The Monitor's conclusion through a discussion with the Facilitator that I somehow abandoned my election of Track B is erroneous and entirely unsupported in the record.  At no time since I advised the Facilitator of my original mistake did I suggest to anyone in the process that I agreed to a Track A election."  McGinnis Decl. ¶ 4. Evidence that subsequently has emerged supports Mr. McGinnis' account, namely the email that Mr. Frantz sent to the Claims Facilitator in 2007 instructing that the petition for Monitor review should "proceed as is."  Frantz Decl., Ex. 1.  This email came to light only recently, after the Court ordered Pigford's co–lead class counsel to search their records and consult with the Claims Facilitator in order to explain who said what to the Facilitator or Monitor in 2007 about Mr. McGinnis' choice between Track A and Track B.  See Frantz Decl. ¶ 5; Memorandum Opinion and Order at 4-5 (May 7, 2013).

McGinnis' claim under Track A in light of the supplemental materials he furnished with his petition. See id. at 21.

Upon reexamination, the Adjudicator approved Mr. McGinnis' claim in May 2008. See Opp., Ex. 2. But Mr. McGinnis never cashed the $50,000 award check that subsequently was issued to him. The reasons, he explains, are that this award did not nearly approximate the actual losses he experienced because of the USDA's discrimination, and that his claim should have been arbitrated under Track B, as he requested, in order to allow him to prove and recover his actual damages. See McGinnis Decl. ¶ 5 ("The liquidated damages of $50,000 ultimately awarded to me come nowhere close to satisfying the years of economic loss and hardship suffered as a result of illegal discrimination. I have refused to accept payment."); id. ¶ 3 ("In the years 1982, 1987, 1991, 1994 and 1996, due to the denial of operating and/or emergency loans, I lost all proceeds from 100 acres of cotton and was forced to surrender leased land. During these years my crops suffered because of my inability to purchase adequate farm supplies. Losses to me resulting directly from the discriminatory denial of farm loans greatly exceeds the liquidated settlement amount provided in Track A.").

What happened during the two years after the Adjudicator's reexamination decision is not clear, but in October 2010 Mr. McGinnis' sister, Yvonne McGinnis, wrote to the Pigford Track B Arbitrator, Michael Lewis, explaining her brother's grievance and his steadfast belief that the Claims Facilitator made a mistake by not switching his claim to Track B. The letter asked for the Arbitrator's assistance in permitting Mr. McGinnis to pursue his claim under Track B. See Mot., Ex. B. In January 2011, Mr. Lewis responded with a letter explaining that the Consent Decree did not give him the authority to grant this request, continuing: "I believe the

only way [Mr. McGinnis] might be able to pursue a Track B claim would be to petition the judge . . . to permit him to do so." Id. at 1.[6]

Following this advice, Mr. McGinnis obtained his own counsel and filed the present motion in November of last year.  The motion argues that the Claims Facilitator's failure to place Mr. McGinnis' claim into Track B violated the Consent Decree.  Under paragraph 13 of the Consent Decree ("Enforcement Procedures"), Mr. McGinnis moves for an order directing the Arbitrator to convene a hearing on his claim under Track B.  See Mot. at 6.

The USDA opposes Mr. McGinnis' motion, arguing that paragraph 13 of the Consent Decree does not authorize the relief that he seeks and that other portions of the Decree prohibit that relief.

## II.  DISCUSSION

Paragraph 13 of the Consent Decree gives the Court enforcement authority to remedy violations of the Decree.  The Court, however, may enforce the Consent Decree only to the extent that paragraph 13 authorizes it to do so.  See Pigford v. Veneman, 292 F.3d 918, 923 (D.C. Cir. 2002).  That paragraph is limited to correcting violations of specific terms in the Consent Decree; it does not authorize orders generally enforcing the Decree's "overarching remedial purposes."  Id. at 924.  Apart from the authority conferred by the specific terms of paragraph 13, the Court lacks "free-ranging 'ancillary' jurisdiction" to enforce the Consent Decree.  Id.

---

[6]     The Arbitrator, however, also included a cautionary note in which he questioned the wisdom of relinquishing Mr. McGinnis' Track A award in favor of arbitrating his claim under the more demanding standards governing Track B, thus running the risk that Mr. McGinnis might end up losing all recovery for his injuries.  See Mot., Ex. B, at 2.

"[A] consent decree or order is to be construed for enforcement purposes basically as a contract[.]"  Segar v. Mukasey, 508 F.3d 16, 22 (D.C. Cir. 2007) (quoting United States v. ITT Cont'l Baking Co., 420 U.S. 223, 238 (1975)); see United States v. W. Elec. Co., 894 F.2d 1387, 1390 (D.C. Cir. 1990) ("We read the Decree essentially as we would a contract.").  "The court's task, then, is to discern the bargain that the parties struck[.]"  United States v. Microsoft Corp., 147 F.3d 935, 946 (D.C. Cir. 1998).  This inquiry "is guided by conventional 'aids to construction,' including 'the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree[.]'"  United States v. W. Elec. Co., 894 F.2d at 1390 (quoting ITT Continental Baking Co., 420 U.S. at 238).  A "cardinal principle of contract construction" that applies to the interpretation of consent decrees is that "'a document should be read to give effect to all its provisions and to render them consistent with each other.'"  Segar v. Mukasey, 508 F.3d at 22 (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995)).

Mr. McGinnis' motion raises two central questions:  Does the Consent Decree give the Court the authority to grant the relief that he seeks?  If so, has he demonstrated that he is entitled to that relief?  The Court concludes that the answer to both questions is "yes."

### A.  Authority to Grant Mr. McGinnis' Motion

Mr. McGinnis points to paragraph 13 of the Consent Decree, entitled "Enforcement Procedures," as the source of authority for the relief that he seeks. That section establishes procedures with which a party must comply before "seeking any order by the Court concerning the alleged violation of any provision of th[e] Consent Decree." Consent Decree ¶ 13. After an aggrieved party has satisfied the prerequisites set forth in paragraph 13, which include serving notice on one's opponent and making efforts to resolve the disputed matter without the

9

Court's involvement, the party may "move for enforcement of th[e] Consent Decree."  Id.

¶ 13(c).

The USDA argues that paragraph 13 is "irrelevant" here, because it concerns only situations where one party accuses the other party of violating the Consent Decree, not situations where a party believes that the court-appointed neutrals have violated the Decree.  Quoting from the Opinion issued by this Court when it approved the Consent Decree in 1999, which stated that paragraph 13 establishes a procedure to be followed "[i]f one side believes that the other side has violated the terms of the Consent Decree," Pigford v. Glickman, 185 F.R.D. at 98, the USDA emphasizes that Mr. McGinnis "does not contend that USDA committed any violation of the Consent Decree" but instead "focuses on the neutrals' treatment of his claim."  Opp. at 5; see Def.'s Stip. Reply at 2.

Some of the language in paragraph 13 could be read to imply that it contemplates only situations where the plaintiffs believe that the USDA has violated the Consent Decree or vice versa.  Among other things, the paragraph states that a person seeking enforcement of the Consent Decree must "serve *on his opponent* a written notice" describing the alleged violation.  Consent Decree ¶ 13(a) (emphasis added).  The section further directs that, before filing any motion seeking enforcement of the Decree, "*[t]he parties* shall make their best efforts to resolve the matter in dispute without the Court's involvement."  Id. ¶ 13(b) (emphasis added).  If required to do so, a moving party "shall provide *to his opponent* any information and materials available" that support the alleged violation.  Id. (emphasis added).  The focus in this paragraph on interacting with one's "opponent," along with the requirement that "the parties" attempt to resolve disputes before filing anything with the Court, arguably reflects an exclusive focus on

disputes between the parties about whether the other side is keeping up its end of the bargain — rather than any attempt to create a mechanism for challenging actions taken by the neutrals.

Such a restrictive interpretation is not persuasive, however, for several reasons. First, many provisions in the Consent Decree set forth rules for the conduct of the neutrals, not the parties. And paragraph 13 authorizes the seeking of court orders concerning the alleged violation of "any provision" of the Consent Decree, not just those provisions that impose requirements on the parties themselves. See Consent Decree ¶ 13. For example, among the functions that the Consent Decree says the Claims Facilitator "shall perform" are the following: "transmit to the adjudicator the claims packages of class members with ECOA claims who elect to proceed under Track A," and "transmit to the arbitrator the claims packages of class members with ECOA claims who elect to proceed under Track B." Id. ¶¶ 3(a)(vi), (vii). Failing to transmit to the Arbitrator the claims packages of class members who have elected to proceed under Track B would contravene the latter provision. It is evident, therefore, that the neutrals, and not just the parties, are capable of violating provisions of the Consent Decree. Thus, paragraph 13, on its face, permits a party to seek an order for the enforcement of the Decree to remedy such a violation. And how could it be otherwise? Suppose, for example, that the Facilitator refused to submit any claims packages to the Adjudicator or the Arbitrator — or just those from, say, farmers in Alabama. Would the aggrieved class members be powerless to seek enforcement of the Consent Decree?

Second, if the representatives of the parties who drafted the Consent Decree had wished to limit paragraph 13's enforcement authority to violations of the Consent Decree committed by the parties themselves, that would have been a relatively easy thing to accomplish. Yet no such limitation is explicitly set forth in the text of the Consent Decree. Instead, as just

noted, the plain language of the Decree provides to the contrary by authorizing enforcement proceedings for violations of "any provision" of the Consent Decree.

Finally, Mr. McGinnis' more expansive interpretation of paragraph 13 is not incongruous with provisions in that paragraph which seems to evince an exclusive focus on the parties — such as the requirement that a person alleging a violation serve notice on "his opponent," or the requirement that "the parties" attempt to resolve disputed matters without the Court's involvement.  There is nothing strange about requiring a person wishing to correct a perceived violation, even where the alleged violation was committed by one of the neutrals rather than by one of the parties, to first notify the other party and attempt to resolve the matter without drawing the Court into the fray.  And because only the parties, and not the neutrals, would ever conceivably move for enforcement of the Consent Decree, it is understandable that paragraph 13 refers only to the parties when directing that certain steps be taken before filing such an enforcement motion.  Nothing here indicates that the only violations enforceable under paragraph 13 are those *committed* by the parties — at least not with sufficient clarity to overcome the explicit language to the contrary authorizing relief for violations of "any provision" of the Consent Decree.  The Court therefore concludes that the relief sought by Mr. McGinnis falls within the ambit of paragraph 13's enforcement authority.

The next question is whether, as the USDA contends, other portions of the Consent Decree affirmatively forbid granting relief under paragraph 13.  The USDA argues that allowing Mr. McGinnis' claim to be heard anew, this time under Track B, would violate the Consent Decree by undermining the finality of the Adjudicator's Track A reexamination decision from 2008.  The Consent Decree provides that all decisions of the Adjudicator are final, subject only to limited Monitor review.  See Consent Decree ¶ 9(a)(v).  Moreover, the parties have

agreed "to forever waive their right to seek review in any court or before any tribunal of the decision of the adjudicator with respect to any claim that is, or could have been decided by the adjudicator." Id.; see id. ¶ 10(i) (same for Arbitrator decisions). Thus, according to the USDA, "the outcome of McGinnis' claim is not something the Court can review." Opp. at 6.

The USDA's argument is unavailing, because Mr. McGinnis is not seeking review of the Adjudicator's reexamination decision — which granted him a complete victory and full Track A relief. Instead, he is challenging the *Facilitator's* decision to send his claim to Track A in the first place. He has not asked the Court to review any aspect of the Adjudicator's reexamination decision itself.

It is true, as the USDA emphasizes, that granting Mr. McGinnis' motion would have the effect of vacating the Adjudicator's reexamination decision. From the USDA's standpoint, this would frustrate the Consent Decree's proviso that "[t]he decision of the adjudicator shall be final." Consent Decree ¶ 9(a)(v); see Def.'s Stip. Reply at 2 ("Allowing Mr. McGinnis to start the ADR process over again . . . would require the Court to determine the validity of the Track A decision in McGinnis' favor."). But the apparent purpose of paragraph ¶ 9(a)(v) is to prevent claimants and the USDA from appealing adverse Track A determinations to the Court, thus confining the merits determinations of plaintiffs' claims of discrimination to the non-judicial claims resolution process established in the Consent Decree. That is simply not what is happening here: Mr. McGinnis *prevailed* on his Track A claim, and he does not ask the Court to review that decision. The parties' choice to make adjudications reviewable only by the Monitor — and there under a highly deferential review standard — cannot, in the Court's view,

reasonably be construed as a choice to render the parties powerless in a situation where a neutral

violates one of the Consent Decree's provisions through a mistake in the processing of a claim.[7]

Finally, nothing in the Consent Decree purports to make unreviewable the act

truly being contested by Mr. McGinnis here — the *Facilitator's* assignment of his claim to

Track A instead of Track B.  Cf. Settlement Agreement (Revised and Executed as of May 13,

2011) § V.A.8, In re Black Farmers Discr. Litig., Misc. No. 08-0511 (D.D.C.) ("The Class

Membership Determinations, Claim Determinations, *and any other determinations made under*

*this Section* are final and are not reviewable[.]") (emphasis added); id. ("The Class

Representatives and the Class agree to forever and finally waive any right to seek review of the

Class Membership Determinations, the Claim Determinations, *and any other determinations*

*made under this Section*.") (emphasis added).

The Court therefore concludes that the Consent Decree does not prohibit the relief

that Mr. McGinnis seeks, and that authorization for this relief is found in paragraph 13 of the

Decree.

---

[7]        The argument advanced here by the USDA — that paragraph 9(a)(v) of the
Consent Decree prohibits a final Track A decision from being vacated for any reason — could be
made about successful motions that the USDA itself has filed to seek relief from final Track A
decisions.  Just last year, the USDA moved to vacate a claimant's Track A award after
discovering that the claimant had made fraudulent representations in his claim form.  See Motion
for Relief from Judgment as to John Tyler's Track A Claim, at 1 [Dkt. No. 1792] ("Defendant
asks that the court vacate Tyler's Track A award and prohibit him from obtaining any benefit
whatsoever as a result of his Track A claim application."); Memorandum Opinion and Order at 3
(Jan. 22, 2013) (granting motion and vacating Track A decision).  Although, to be fair, the
USDA moved for relief under Rule 60(d)(3) of the Federal Rules of Civil Procedure, whereas
Mr. McGinnis moves to enforce the Decree pursuant to its inherent terms, the Court does not
believe that this distinction detracts from the validity of the comparison.  The USDA's request to
vacate Mr. Tyler's Track A award, though it disturbed the finality of the Adjudicator's decision
on that claim, was not an impermissible attempt "to seek review . . . of the decision of the
adjudicator."  Consent Decree ¶ 9(a)(v).  Neither is Mr. McGinnis' request.

*B.  Entitlement to Relief*

Having concluded that Mr. McGinnis is permitted by the Consent Decree to seek the relief that he requests — a determination of his claim under Track B by the Arbitrator — the only question remaining is whether he has shown that he is entitled to that relief.  Resolution of this question requires little discussion.  The undisputed evidence indicates that the neutrals erred not once, but twice, in the processing of his claim: first, when the claim was assigned to Track A despite Mr. McGinnis' written request to the contrary, and second when his request to switch tracks at the Monitor review stage was ignored based on a miscommunication.  The original mistake violated paragraph 3(a)(vii) of the Consent Decree, which required the Claims Facilitator to transmit to the Arbitrator the claims packages of class members who elected to proceed under Track B.  Mr. McGinnis has been attempting to correct that mistake for over twelve years — an effort that has been frustrated and delayed by the neutrals' second mistake.  Even at this late date, he is entitled to have these errors rectified.

Mr. McGinnis has been warned about the high standard of proof required to prevail on a claim under Track B, and the danger that by pursuing this course and giving up his Track A victory he will end up with nothing at all.  Nevertheless, he wishes to go down that path.  He is entitled to do so, and the Arbitrator has agreed to resolve the matter under the procedures set forth in the Consent Decree.  <u>See</u> Mot., Ex. B, at 1 ("[S]hould Judge Friedman agree with your brother that he has the right to pursue a Track B claim, I will schedule the necessary hearing . . . as quickly as possible.").

III.  CONCLUSION

For the reasons stated above, the Court will grant Mr. McGinnis' motion to enforce the Consent Decree.  An Order consistent with this Opinion will issue this same day.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
DATE:  August 8, 2013                       United States District Judge

16