UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIMOTHY C. PIGFORD, et al.
    PLAINTIFFS

v.                                                                       CIVIL ACTION NO. 97-1978 (PLF)

TOM VILSACK, SECRETARY, THE UNITED
STATES DEPARTMENT OF AGRICULTURE
    DEFENDANT

CECIL BREWINGTON, et al.
    PLAINTIFFS

v.                                                                         CIVIL ACTION NO. 98-1693 (PLF)

TOM VILSACK, SECRETARY, THE UNITED
STATES DEPARTMENT OF AGRICULTURE
    DEFENDANT

IN RE:  THE TRACK B ARBITRATION OF JAMES STEPHENSON
CLAIM NO. 18759, ARBITRATION NO. 064

**MEMORANDUM OF CROSS & KEARNEY PLLC
IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND EXPENSES**

      Cross & Kearney PLLC submits this Memorandum in support of its Motion for Attorneys' Fees and Expenses incurred in its successful representation of James Stephenson. Mr. Stephenson was the prevailing party in a Track B arbitration claim against the USDA in *In Re: The Arbitration of James Stephenson, Claim No. 18759, Arbitration No. 064*.

      Cross Kearney's Motion seeks fees and expenses for work performed on Mr. Stephenson's claim over a nearly 11 year period from February 1999 to its successful conclusion by settlement in August 2010, plus work performed to the present on this petition for payment of

fees and reimbursement of expenses. The firm has not received any fees or expenses for work performed on Stephenson's claim during that period of time.

Fees and expenses are sought pursuant to the April 14, 1999 Consent Decree in this matter, as addressed in this Court's Opinion and Order issued on March 8, 2001, as well as the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq., and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

I.     FACTS[1]

Mr. Stephenson resides in Dermott Arkansas. He was born in 1949. He has a college diploma from the University of Arkansas at Pine Bluff, and he has additional college credits from Notre Dame and the University of Illinois. He is a Vietnam veteran. He was brought up on his grandfather's farm in Chicot County, Arkansas, where he learned the basic fundamentals of farming. He also learned the economics of raising produce, cotton, soybeans, hay and livestock. He also worked on his father-in-law's farm while in college.

In the mid 1980s, he leased approximately 1,332 acres of farmland and began raising rice, soybeans and milo. He had three tractors, three combines, two grain trucks, a pickup truck, a drill, a planter, two disks, a fuel tank, a water tank, and a grain cart. He purchased all of these with his own money.

In 1986, Mr. Stephenson applied for an operating loan ($80,000) and a farm ownership loan ($342,000) from the Farmers Home Administration (FmHA) County Office in Chicot County. The County Supervisor refused to assist him. He leased an additional 475 acres in a neighboring county, and applied for an operating loan with the FmHA County Office in that county. The County Committee found that he was eligible for a loan. The loan was funded late, and it was supervised, as a result of which his crop was planted late.

---

[1] The facts recited herein are set forth in Mr. Kearney's declaration. Exhibit A.

Mr. Stephenson also applied for a $158,000 farm ownership loan in August 1986. His application was "favorably considered" by the County committee, but he did not receive the loan in 1986.

In February 1987, Mr. Stephenson applied for an operating loan. He was found eligible for the loan, but he did not receive a loan. He appealed the loan denial to the National appeals staff, but received no resolution until the appeal was suspended due to the *Pigford* litigation.

Mr. Stephenson applied in December 1987 for a 1988 farm ownership loan to purchase 900 acres of farmland. The County Supervisor refused to consider the application. Mr. Stephenson reduced the size of the requested loan from $342,000 to $205,000, and reduced the purchase to 450 acres. He applied for a Farm Ownership Loan in the reduced amount. He also applied for an operating loan of $82,000. He did not receive any of the loans.

Mr. Stephenson sought two loans in January 1989, a $90,000 operating loan and an $80,000 Farm Ownership Loan to purchase a 150 acre tract. The loans were denied by the Chicot County Supervisor. At first, he was told the loans were denied because no funds were available, but after he appealed to the district and state directors, he was told that he did not qualify for the loans due to improper conduct.

He then applied for a $90,000 Farm Ownership loan to purchase 90 acres of farmland. Two months later, in January 1990, he applied for an operating loan of nearly $80,000. Both loans were denied by the Chicot County Supervisor in June 1990 on the grounds that no funds were available.

In the arbitration proceedings, the County Supervisor admitted that the unavailability of funds was not a valid basis to deny a loan. He believed that the loan applications were denied due to Mr. Stephenson's credit history. When Mr. Stephenson appealed the denial, the County Committee took the position that he was not eligible for any loan because he would not carry out

the terms and conditions of the loan and that he did not have sufficient experience in managing and operating a farm. The Hearing Officer on the appeal found that Mr. Stephenson was not eligible because he had given the FmHA misleading information.

From 1992 through 1996, Mr. Stephenson filed annual loan applications for farm ownership loans and operating loans. In 1992, he sought an operating loan of $284,060 and an ownership loan of $283,000. In 1993, he sought an operating loan of $183,000 and an ownership loan of $332,000. In 1994, he sought an operating loan of $70,000 and an ownership loan of $332,000. In 1995, he sought an operating loan of $43,000 and an ownership loan of $232,000. In 1996, he sought an operating loan of $45,000 and an ownership loan of $332,000. In some years, his applications were accepted and then denied. In other years the County Supervisor refused to accept his applications or to give him a formal decision. In some years, he was told he did not qualify because his credit was unacceptable.

## II.   THE SUCCESSFUL ARBITRATION

Jesse Kearney and Cross Kearney commenced representing James Stephenson in February, 1999. Mr. Stephenson's Track B arbitration was successfully concluded by agreement dated August 17, 2010. Mr. Stephenson was awarded $142,500.

Mr. Stephenson filed his Track B Claim Sheet and election Form on October 11, 1999. He alleged that he is an African American farmer who farmed or attempted to farm between January 1, 1981 and December 31, 1996, that he applied to participate in a federal farm program with the United States Department of Agriculture during that period, and that he filed a complaint of discrimination against USDA concerning the treatment he received in that application process.

The Arbitrator granted the USDA's motion to dismiss in 2001. The basis for the dismissal was that in 1991 Mr. Stephenson hurt his back and did not farm. His wife filed a Track

A claim for that year, and the Arbitrator ruled that her claim for 1991 barred his claims for other years for jointly-farmed land.

The dismissal was appealed to the Monitor. The Monitor concluded in 2008 that the dismissal was clear and manifest error. The Monitor further concluded that the error constituted a fundamental miscarriage of justice within the meaning of the Consent Decree.

The Monitor directed the Arbitrator to reexamine the claim.

The parties prepared for arbitration. In June, 2010, shortly before the scheduled arbitration hearing, the parties began settlement negotiations. Negotiations proceeded in tandem with preparation for the arbitration. Mediation was held on August 2, 2010. The matter was settled.

The settlement agreement expressly left open the question of attorney's fees and expenses for further negotiations.

The parties have been unable to resolve the question of fees and expenses.

### III.     JESSE KEARNEY

The work in this matter was performed by Jesse Kearney and his office staff. The present fee petition was prepared by David Fierst, a partner in Stein, Mitchell, Muse, Cipollone & Beato, LLP.

Jesse Kearney received his undergraduate degree in 1973 and his Juris Doctorate in 1976, both from the University of Arkansas at Fayetteville. He was admitted to the Arkansas Bar in 1976, and has been a member in good standing since then. He is admitted to practice in all courts in Arkansas, the U.S. District Court for the Eastern and Western Districts in Arkansas, the U.S. 8th Circuit Court of Appeals, and the U.S. Supreme Court. He is a member of the American Bar Association, American Trial Lawyers Association, National Bar Association, Arkansas Bar

Association, Arkansas Trial Lawyers Association, Jefferson County Arkansas Bar Association, and the W. Harold Flowers Law Society.

Except for periods of Government Service, Jesse Kearney has maintained a general practice for the past 38 years, with an emphasis on Title VII law and general civil rights law.

He served as Assistant Arkansas Attorney General October 1977 through January 1979. In that position, he was Acting General Counsel for State Labor and Local Service Departments and for the Arkansas State Police, and represented these agencies in all state and federal courts in Arkansas and in the U.S. Supreme Court. He represented the state in criminal appeals to the Court of Appeals of Arkansas, the Arkansas Supreme Court, and United States Supreme Court.

Mr. Kearney served as Special Assistant to Governor Bill Clinton from January 1979 through January 1981, as Governor's liaisons to the State Labor Department, State Local Government Services Department, Employment Security Department, and Federal Government Programs.

Mr. Kearney was the Arkansas State Claims Commissioner in 1981. This quasi-judicial commission, composed of three commissioners, exercises subject matter jurisdiction over claims against the State of Arkansas or its agents and departments, including injunctive and monetary relief, for enforcement of property, contract, and civil rights against agents and officers of the state.

Mr. Kearney also served a term as Circuit Judge, 11th District, State of Arkansas, from 1989 to 1991. The Circuit Court is a general jurisdiction court, exercising full State and Federal Constitutional, criminal, civil, and equitable jurisdiction. He also served as Magistrate in Probate and Chancery Court, 11th District West, State of Arkansas, 1989 to 2000, except while a Circuit Judge. He served as a Special County Judge, Jefferson County, State of Arkansas from 1992 to 2000.

He was actively involved in this case since its inception, representing the class as well as Mr. Stephenson and other Track A and B claimants.

IV.     DAVID FIERST[2]

David Fierst is a partner in Stein, Mitchell, Muse, Cipollone & Beato, LLP. He graduated from the University of Pennsylvania in 1972, and received his J.D. Degree from George Washington University in 1975. He was admitted to the Bar of the District of Columbia in 1975, and other courts at varying times after that.

Mr. Fierst was employed by the Securities and Exchange Commission for one year, and since then has been in private practice with his present firm.

V.      THE LODESTAR FEE

The Consent Decree in this class action as interpreted in the Opinion and Order of March 8, 2001 provided, among other things, that counsel for successful claimants were entitled to attorneys' fees and costs. The Court quoted the ECOA, which was incorporated into the consent decree, as holding that "In the case of a successful action … the costs of the action, together with a reasonable attorney's fee as determined by the court, shall be added to any damages …." Opinion and Order at 7. Based on that, the Court ruled that the benefits of Paragraph 14 (a) of the consent Decree, relating to attorney's fees, extend "to those [Track A and B claims] where the claims succeeded." Opinion and Order at 8. Mr. Stephenson, as a successful Track B claimant, is the prevailing party in this case, and his counsel, Cross Kearney, is entitled to recover attorneys' fees and costs pursuant to the ECOA, paragraph 14 (a) of the Consent Decree, and this Court's Opinion and Order of March 8, 2001.

Well established legal precedent further underscores the propriety of awarding fees to Mr. Stephenson. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992) ("prevailing party" means that

---

[2] See Declaration of David Fierst, attached as Exhibit B.

the party obtained "at least some relief on the merits of [the] claim"); *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (a prevailing party is "one who has succeeded on any significant claim, affording it some of the relief sought"); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (a plaintiff who succeeds on "any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit" is a prevailing party). By any measure, an award of $142,500 qualifies Mr. Stephenson as a prevailing party.

Courts begin the calculation of attorneys' fees by determining the hours reasonably expended, and then multiplying that number by a reasonable hourly rate to determine the lodestar. *Hensley*, 461 U.S. at 433; *Board of Trustees of the Hotel and Restaurant Employees v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998) ("The usual method of calculating reasonable attorneys' fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount"); *Blackman v. District of Columbia*, 59 F.Supp.2d 37, 42 (D.D.C. 1999) ("In determining a reasonable attorneys' fees award, the Court begins by calculating 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate' – the so-called 'lodestar' fee") (citation omitted).

This Court has already determined that *Laffey* rates based on the *Laffey* Matrix as prepared by the Civil Division of the United States Attorneys' Office for the District of Columbia are applicable in this case and specifically to firms, such as Cross Kearney, based outside the District of Columbia. In its March 8, 2001 Opinion and Order, at 14, this Court held:

> District of Columbia rates will apply to all Counsel requesting reimbursement under Paragraph 14(a) of the Consent Decree, even if such Counsel are not based in the District of Columbia. As the government acknowledges, the location of the court deciding the case is normally the relevant market for determining appropriate rates. *See Donnell v. United States*, 682 F.2d 240, 251 (D.C. Cir. 1982), *cert. denied*, 459 U.S. 1204 (1983). As such, "some attorneys may receive fees based on rates higher than they normally command if those higher rates are the norm for the jurisdiction in which the suit was litigated. *Id.* At 251-52.

Jesse Kearney kept contemporaneous time records of his work on the Stephenson matter, shown on Exhibit C. The *Laffey* rates in effect at the time services were rendered for the applicable lawyers are shown on Exhibit D.

The lodestar fee for work performed in the Stephenson arbitration by Cross Kearney for each year[3] from February, 1999 through December 2010 (completion of settlement matters) is:

| Time | Hours | Attorney | Laffey Rate | Lodestar |
|---|---|---|---|---|
| 2/4/1999-5/31/1999 | 44.60 | Kearney | $335/hour | $14,941 |
| 6/1/1999-5/31/2000 | 105.20 | Kearney | $340/hour | $35,768 |
| 6/1/1999-5/31/2000 | 3.80 | Paralegal | $90/hour | $342 |
| 6/1/2000-5/31/2001 | 277.70[4] | Kearney | $350/hour | $97,195 |
| 6/1/2000-5/31/2001 | 1.10 | Paralegal | $90/hour | $99 |
| 6/1/2001-5/31/2002 | 27.90 | Kearney | $360/hour | $10,044 |
| 6/1/2002-5/31/2003 | 7.30 | Kearney | $370 | $2,701 |
| 6/1/2003-5/31/2004 | 0.50 | Kearney | $380/hour | $190 |
| 6/1/2004-5/31/2005 | 0 | N/A | N/A | $0 |
| 6/1/2005-5/31/2006 | 0.60 | Kearney | $405/hour | $243 |
| 6/1/2006-5/31/2007 | 0 | N/A | N/A | $0 |
| 6/1/2007-5/31/2008 | 10.60 | Kearney | $440/hour | $4,664 |
| 6/1/2008-5/31/2009 | 0.80 | Kearney | $465 | $372 |
| 6/1/2009-5/31/2010 | 26.80 | Kearney | $465 | $12,462 |
| 6/1/2009-5/31/2010 | 8.00 | Paralegal | $130/hour | $1,040 |

---

[3] The *Laffey* matrix runs from June 1 to May 31 each year.

[4] In accordance with this Court's Opinion and Order dated March 8, 2001, the travel time in this time period, and everywhere else where appropriate, was reduced by 50%. Travel time is shown in full on Exhibit C, but half of it has been eliminated from the calculation of fees. In addition, the contemporaneous records show a full 24 hours for each day Mr. Kearney traveled out of Arkansas, and that has been reduced to a normal workday.

| | | | | |
|---|---|---|---|---|
| 6/1/2010-5/31/2011 | 77.35 | Kearney | $475/hour | $36,741.25 |
| 6/1/2010-5/31/2011 | 34.00 | Paralegal | $135/hour | $4,590 |
| Subtotal: | | | | $221,392.25 |

Exhibit C. This fee is based on contemporaneous *Laffey* rates multiplied by the hours expended. This Court should award that entire amount to Cross Kearney.

Cross Kearney also seeks fees incurred in seeking payment of fees and expenses, including preparing and filing this motion. That is in accord with prevailing case law. "Cases in this Circuit have routinely awarded reasonable fees incurred in requesting fees under fee-shifting statutes such as the EAJA." *American Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 331 (D.C. Cir. 2004) (internal citation and quotation marks omitted). See also *Commissioner, I.N.S. v. Jean*, 496 U.S. 154 (1990); *Bretford Mfg., Inc. v. Smith System Mfg. Co.*, 421 F.Supp.2d 1117, 1128 (N.D.Ill. 2006) ("we agree with Smith that an allowance of reasonable fees for presenting a successful fee petition is the only way a fee applicant can be made whole"). The preparing and filing of this motion entailed time and fees of $11,431, as shown on Exhibit E.

Additional fees for this fee application were incurred by Stein, Mitchell, Muse, Cipollone & Beato, LLP, in the amount of $19,600. This fee is based on actual rates ($500/hour) rather than *Laffey* rates ($505/hour). Declaration of David U. Fierst, Exhibit B. This is in addition to the amount set forth above.

Fees incurred in seeking payment of fees and expenses are as follows:

| | | | | |
|---|---|---|---|---|
| 6/1/2011-5/31/2012 | 0.20 | Kearney | $495 | $99 |
| 6/1/2011-5/31/2012 | 31.00 | Paralegal | $140/hour | $4,340 |
| 6/1/2012-5/31/2013 | 13.40 | Kearney | $505/hour | $6,767 |
| 6/1/2013-5/31/2014 | 4.50 | Kearney | $505/hour | $225 |
| 6/1/2013-Present | 39.20 | Fierst | $500/hour | $19,600 |

Subtotal                                                                                          $31,031

Cross Kearney reserves the right to supplement the fee application to account for fees to be incurred in connection with this fee petition, including, for example, the cost of any reply to an opposition to this motion.

V.      COSTS AND EXPENSES

The expenses incurred in the arbitration total $21,817.92. Exhibit F. They should be awarded in conformity with the consent agreement and this Court's Opinion and Order of March 8, 2001.

VI.     CONCLUSION

For the foregoing reasons, the Court should award to Cross Kearney fees and costs in the total amount of $274,241.17.

                                              /s/ David U. Fierst
                                              DAVID U. FIERST (#912899)
                                              Stein, Mitchell, Muse, Cipollone & Beato, LLP
                                              1100 Connecticut Avenue, N.W., Suite 1100
                                              Washington, DC 20036
                                              Tel. (202) 737-7777
                                              Fax (202) 296-8312