UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIMOTHY C. PIGFORD, et al.
    PLAINTIFFS

v.                                               CIVIL ACTION NO. 97-1978 (PLF)

TOM VILSACK, SECRETARY, THE UNITED
STATES DEPARTMENT OF AGRICULTURE
    DEFENDANT


CECIL BREWINGTON, et al.
    PLAINTIFFS

v.                                               CIVIL ACTION NO. 98-1693 (PLF)

TOM VILSACK, SECRETARY, THE UNITED
STATES DEPARTMENT OF AGRICULTURE
    DEFENDANT

## DECLARATION OF JESSE KEARNEY

I, Jesse Kearney, declare as follows:

1. Except as stated herein, I have personal knowledge of the facts stated herein, and am competent to testify to them.

**My Background**

2. I am a partner in Cross & Kearney PLLC.

3. I received my undergraduate degree in 1973 and my Juris Doctorate in 1976, both from the University of Arkansas at Fayetteville. I was admitted to the Arkansas Bar in 1976, and I have been a member in good standing since then. I am admitted to practice in all courts in Arkansas, the U.S. District Court for the Eastern and Western Districts in Arkansas, the U.S. 8th Circuit Court of Appeals, and the U.S. Supreme Court. I am a member of the American Bar

1

Association, American Trial Lawyers Association, National Bar Association, Arkansas Bar Association, Arkansas Trial Lawyers Association, Jefferson County Arkansas Bar Association, and the W. Harold Flowers Law Society.

4. Except for periods of Government Service, I have maintained a general practice for the past 38 years, with an emphasis on Title VII law and general civil rights law.

5. I served as Assistant Arkansas Attorney General October 1977 through January 1979. In that position, I was Acting General Counsel for State Labor and Local Service Departments and for the Arkansas State Police, and I represented these agencies in all state and federal courts in Arkansas and in the U.S. Supreme Court. I represented the state in criminal appeals to the Court of Appeals of Arkansas, the Arkansas Supreme Court, and United States Supreme Court.

6. I served as Special Assistant to Governor Bill Clinton from January 1979 through January 1981, as Governor's liaisons to the State Labor Department, State Local Government Services Department, Employment Security Department, and Federal Government Programs.

7. I was the Arkansas State Claims Commissioner in 1981. This quasi judicial commission, composed of three commissioners, exercises subject matter jurisdiction over claims against the State of Arkansas or its agents and departments, including injunctive and monetary relief, for enforcement of property, contract, and civil rights against agents and officers of the state.

8. I also served a term as Circuit Judge, 11th District, State of Arkansas, from 1989 to 1991. The Circuit Court is a general jurisdiction court, exercising full State and Federal Constitutional, criminal, civil, and equitable jurisdiction. I also served as Magistrate in Probate and Chancery Court, 11th District West, State of Arkansas, 1989 to 2000, except while a Circuit

Judge. I served as a Special County Judge, Jefferson County, State of Arkansas from 1992 to 2000.

9. I was actively involved in this case since its inception, representing the class as well as Mr. Stephenson and other Track A and B claimants.

## My Representation of James Stephenson

10. I began representing James Stephenson in February, 1999. Mr. Stephenson's Track B arbitration was successfully concluded by agreement dated August 17, 2010. Mr. Stephenson was awarded $142,500.

11. I filed Mr. Stephenson's Track B Claim Sheet and election Form on October 11, 1999. Mr. Stephenson alleged that he is an African American farmer who farmed or attempted to farm between January 1, 1981 and December 31, 1996, that he applied to participate in a federal farm program with the United States Department of Agriculture during that period, and that he filed a complaint of discrimination against USDA concerning the treatment he received in that application process.

## The Evidence in the Arbitration

12. The evidence in the arbitration showed that:

13. Mr. Stephenson resides in Dermott Arkansas. He was born in 1949. He has a college diploma from the University of Arkansas at Pine Bluff, and has some additional college credits from Notre Dame and the University of Illinois. He is a Vietnam veteran. He was brought up on his grandfather's farm in Chicot County, Arkansas, where he learned the basic fundamentals of farming. He also learned the economics of raising produce, cotton, soybeans, hay and livestock. He also worked on his father-in-law's farm while in college.

14. In the mid 1980s, he leased approximately 1,332 acres of farmland and began raising rice, soybeans and milo. He had three tractors, three combines, two grain trucks, a pickup truck, a drill, a planter, two disks, a fuel tank, a water tank, and a grain cart. He purchased all of these with his own money.

15. In 1986, Mr. Stephenson applied for an operating loan ($80,000) and a farm ownership loan ($342,000) from the Farmers Home Administration (FmHA) County Office in Chicot County. The County Supervisor refused to assist him. He leased an additional 475 acres in a neighboring county, and applied for an operating loan with the FmHA County Office in that county. The County Committee found that he was eligible for a loan. The loan was funded late, and it was supervised, as a result of which his crop was planted late.

16. Mr. Stephenson also applied for a $158,000 farm ownership loan in August 1986. His application was "favorably considered" by the County committee, but he did not receive the loan in 1986.

17. In February 1987, Mr. Stephenson applied for an operating loan. He was found eligible for the loan, but he did not receive a loan. He appealed the loan denial to the National appeals staff, but received no resolution until the appeal was suspended due to the *Pigford* litigation.

18. Mr. Stephenson applied in December 1987 for a 1988 farm ownership loan to purchase 900 acres of farmland. The County Supervisor refused to consider the application. Mr. Stephenson reduced the size of the requested loan from $342,000 to $205,000, and reduced the purchase to 450 acres. He applied for a Farm Ownership Loan in the reduced amount. He also applied for an operating loan of $82,000. He did not receive any of the loans.

19. Mr. Stephenson sought two loans in January 1989, a $90,000 operating loan and an $80,000 Farm Ownership Loan to purchase a 150 acre tract. The loans were denied by the Chicot County Supervisor. At first, he was told the loans were denied because no funds were available, but after he appealed to the district and state directors, he was told that he did not qualify for the loans due to improper conduct.

20. He then applied for a $90,000 Farm Ownership loan to purchase 90 acres of farmland. Two months later, in January 1990, he applied for an operating loan of nearly $80,000. Both loans were denied by the Chicot County Supervisor in June 1990 on the grounds that no funds were available.

21. In the arbitration proceedings, the County Supervisor admitted that the unavailability of funds was not a valid basis to deny a loan. He said he believed that the loan applications were denied due to Mr. Stephenson's credit history. When Mr. Stephenson appealed the denial, the County Committee took the position that he was not eligible for any loan because he would not carry out the terms and conditions of the loan and that he did not have sufficient experience in managing and operating a farm. The Hearing Officer on the appeal found that Mr. Stephenson was not eligible because he had given the FmHA misleading information.

22. From 1992 through 1996, Mr. Stephenson filed annual loan applications for farm ownership loans and operating loans. In 1992, he sought an operating loan of $284,060 and an ownership loan of $283,000. In 1993, he sought an operating loan of $183,000 and an ownership loan of $332,000. In 1994, he sought an operating loan of $70,000 and an ownership loan of $332,000. In 1995, he sought an operating loan of $43,000 and an ownership loan of $232,000. In 1996, he sought an operating loan of $45,000 and an ownership loan of $332,000. In some years, his applications were accepted and then denied. In other years the County Supervisor

refused to accept his applications or to give him a formal decision. In some years, he was told he did not qualify because his credit was unacceptable.

### Successful Outcome

23. The Arbitrator granted the USDA's motion to dismiss in 2001. The basis for the dismissal was that in 1991 Mr. Stephenson hurt his back and did not farm. His wife filed a Track A claim for that year, and the Arbitrator ruled that her claim for 1991 barred his claims for other years for jointly-farmed land.

24. I appealed the dismissal to the Monitor. The Monitor concluded in 2008 that the dismissal was clear and manifest error. The Monitor further concluded that the error constituted a fundamental miscarriage of justice within the meaning of the Consent Decree.

25. The Monitor directed the Arbitrator to reexamine the claim.

26. The parties prepared for arbitration. In June, 2010, shortly before the scheduled arbitration hearing, the parties began settlement negotiations. Negotiations proceeded in tandem with preparation for the arbitration. Mediation was held on August 2, 2010. The matter was settled.

27. The settlement agreement expressly left open the question of attorney's fees and expenses for further negotiations.

28. The parties have been unable to resolve the question of fees and expenses.

### Fees and Expenses

29. Except as noted in the next paragraph, I kept contemporaneous records of my time and expenditures on the Stephenson matter.

30. In the early days of this matter, my understanding was that class counsel were supposed to keep time records without differentiating among the individual Track B claimants.

6

Later, I learned that we should keep records separately. I made a good faith effort to accurately separate my time records. I believe I have made appropriate and accurate adjustments to reflect the time I spent on Mr. Stephenson's case.

31. My time on the Stephenson matter is shown on Exhibit C. My time spent on my request for payment of fees and expenses is shown on Exhibit E. My expenses are shown on Exhibit F.

I declare under penalty of perjury the foregoing is true and correct. Executed on 28th June, 2014.

_____
Jesse Kearney