UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TIMOTHY PIGFORD et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 97-1978 (PLF) |
| TOM VILSACK, Secretary,<br>United States Department of Agriculture, | ) | |
| Defendant. | ) | |
| CECIL BREWINGTON et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 98-1693 (PLF) |
| TOM VILSACK, Secretary,<br>United States Department of Agriculture, | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

    This matter is before the Court on motions filed by two Track B claimants who seek vacatur of the arbitrator's dismissal of their claims. Six years ago, these claimants filed separate civil actions seeking somewhat different relief, yet in part raising the same arguments on which they now base the present motions. The Court at that time concluded that it had no authority to entertain these arguments, which were clearly

foreclosed by the terms of the Consent Decree in this case. The same conclusion holds true today, and the Court therefore will deny the claimants' motions.[1]

## I. BACKGROUND

The two Track B claimants presently seeking relief are Lucious Abrams, Jr. and Cecil Brewington.[2] Both were members of the original group of plaintiffs named in the complaint in this action, in which a class of African American farmers sued the United States Department of Agriculture ("USDA") for discriminating against them in the provision of farming credit and benefits. In April 1999, this Court approved a Consent Decree that settled the plaintiffs' claims and created a mechanism for resolving individual claims of class members outside the traditional litigation process. See Pigford v. Glickman, 185 F.R.D. 82 (D.D.C. 1999). Class members could choose between two claims procedures, known as Track A and Track B. Pigford v. Schafer, 536 F. Supp. 2d 1, 4 (D.D.C. 2008). Track A claims were decided by a third-party neutral known as an adjudicator, and claimants that were able to meet a minimal burden of proof were

---

[1] The papers considered in connection with the pending motions include: motion to vacate and set aside arbitrator's order filed by Lucious Abrams and Sons and Lucious Abrams, Jr. [Dkt. No. 1943] and memorandum in support thereof ("Abrams Mot.") [Dkt. No. 1943-1]; Abrams' motion to amend previously filed motion [Dkt. No. 1947] and memorandum in support thereof ("Abrams Mot. to Amend") [Dkt. No. 1947-1]; Abrams' amended motion [Dkt. No. 1948] and memorandum in support thereof ("Abrams Am. Mot.") [Dkt. No. 1948-1]; motion to vacate and set aside arbitrator's order filed by Cecil Brewington [Dkt. No. 1949] and memorandum in support thereof ("Brewington Mot.") [Dkt. No. 1949-1]; USDA's opposition to Abrams' motion and amended motion ("USDA Abrams Opp.") [Dkt. No. 1952]; USDA's opposition to Brewington's motion ("USDA Brewington Opp.") [Dkt. No. 1962]; Arbitrator's Decision, In re: The Arbitration of Lucious Abrams & Sons ("Arbitrator's Abrams Decision") [Dkt. No. 1948-2]; and Arbitrator's Reconsideration of Defendant's Motion for Default Judgment, In re: The Arbitration of Cecil Brewington ("Arbitrator's Brewington Decision") [Dkt. No. 1949-3].

[2] Mr. Abrams' Track B claim was filed on behalf of "Lucious Abrams & Sons." See Arbitrator's Abrams Decision at 1.

awarded $50,000 in monetary damages, debt relief, tax relief, and injunctive relief. Id. Track B imposed no cap on damages and also provided for debt relief and injunctive relief; but claimants that chose Track B were required to prove their claims by a preponderance of the evidence in one-day mini-trials before a third-party neutral known as an arbitrator. Id. Under the terms of the Consent Decree, all decisions of the adjudicator and the arbitrator were final and not subject to review in any judicial forum, except that the Monitor, a court-appointed third-party neutral, could, on petition for review, direct the adjudicator or the arbitrator to reexamine claims if the Monitor determined that "a clear and manifest error ha[d] occurred" that was "likely to result in a fundamental miscarriage of justice." Id. (citing Consent Decree ¶¶ 9(a)(v), 9(b)(v), 10(i), 12(b)(iii)).

Claimants Abrams and Brewington both elected to pursue Track B claims. On May 31, 2005, the arbitrator issued a decision dismissing Abrams' claim, concluding that, "Claimant cannot prove by a preponderance of the evidence any claims of discrimination brought against Defendant." Arbitrator's Abrams Decision at 6. Likewise, on June 6, 2005, the arbitrator dismissed Brewington's claim. Arbitrator's Brewington Decision at 6-7. Neither Abrams nor Brewington invoked his right to seek Monitor review of the denial of his claim. See Abrams Am. Mot. at 37-39; Brewington Mot. at 37-39. Accordingly, under the terms of the Consent Decree and a subsequent stipulation by the parties, the arbitrator's decisions became final 120 days following the issuance of the decision on each claim. See Consent Decree ¶ 10(i); Stipulation & Order (July 14, 2000) (setting 120-day period within which to petition for Monitor review).

3

On October 14, 2008, Abrams and Brewington filed substantially identical complaints in this Court in which they sought to renew their claims of discrimination against USDA by bringing new civil actions. See Abrams v. Vilsack, 655 F. Supp. 2d 48, 52 (D.D.C. 2009); Brewington v. Vilsack, Civil Action No. 08-1762 (PLF), 2009 WL 2617910, at *1 & n.2 (noting identity of the two cases, and incorporating analysis and conclusion contained in Court's Memorandum Opinion relating to Abrams' complaint). Mr. Abrams and Mr. Brewington each invoked recently passed legislation that afforded certain defined Pigford claimants who had not timely submitted claims the right to file new lawsuits by tolling the statute of limitations and providing a cause of action for such claims. See Abrams v. Vilsack, 655 F. Supp. 2d at 51-52. The Court dismissed both Abrams' and Brewington's complaints for failure to state a claim, as neither claimant fell within the class of Pigford claimants for whom Congress had provided relief. See Abrams v. Vilsack, 655 F. Supp. 2d at 53; Brewington v. Vilsack, 2009 WL 2617910, at *1.

The Court also noted that the claimants, in their complaints, had asserted that the arbitrator's decisions on their Track B claims were invalid, on the ground that the arbitrator had dismissed the claims prior to holding a hearing on either claim. See Abrams v. Vilsack, 655 F. Supp. 2d at 52 & n.4. Abrams and Brewington argued that the arbitrator's dismissals thus violated both the Consent Decree and their constitutional right to due process. See id. But the Court stated that it lacked authority to entertain any such claim, as the Consent Decree unequivocally provided that decisions of the arbitrator were final and not subject to judicial review. Id. at 52 & n.5.

In late 2014, Mr. Abrams and Mr. Brewington filed the motions presently before the Court. Both claimants are represented by the same counsel, and their motions are virtually identical.[3] Abrams and Brewington complain that the arbitrator refused to extend filing deadlines to allow them to supplement the evidentiary records supporting their claims, and that the arbitrator then dismissed their claims prior to holding any hearing on them, on the ground that the existing records failed to show prima facie cases of discrimination. See Abrams' Am. Mot. at 8-10 & nn.15-16; Brewington Mot. at 8-10 & nn.15-16. Invoking Rule 60(b) of the Federal Rules of Civil Procedure as well as the Federal Arbitration Act, they contend that this Court should vacate the arbitrator's decisions on the basis of these purported violations of the Consent Decree and of due process. Each maintains that he should be given a hearing before the arbitrator on his claim. Abrams' Am. Mot. at 40; Brewington Mot. at 40. The defendant, USDA, has filed memoranda in opposition to the claimants' motions, and neither Mr. Abrams nor Mr. Brewington has filed any reply.

## II.  DISCUSSION

The Court will deny Mr. Abrams' and Mr. Brewington's motions for the same reason that was set forth more than five years ago, when the Court previously addressed their contention that the arbitrator's dismissal of their Track B claims without a hearing denied them due process of law and violated their rights under the Consent Decree. Now, as then, "[t]he Court has no authority to address such claims," as

---

[3] Mr. Abrams actually has three motions before the Court at this moment: his initial motion seeking vacatur of the arbitrator's decision; a motion to amend that initial motion; and the amended motion itself, which adds arguments under the Federal Arbitration Act. Mr. Brewington's motion is virtually identical to Abrams' amended motion. The Court here considers Abrams' amended motion and Brewington's motion simultaneously.

"[n]othing in the Consent Decree authorizes the Court to grant [vacatur of the arbitrator's decisions and resurrection of the claimants' Track B claims]." Abrams v. Vilsack, 655 F. Supp. 2d at 52 & nn.4-5.  As the Court then explained, "[t]he Consent Decree provides that decisions of the arbitrator are final (except that the parties may petition the [M]onitor for review), and that those who seek relief under Track B 'forever waive their right to seek review in any court or before any tribunal of the decision of the arbitrator with respect to any claim that is, or could have been decided, by the arbitrator.'"  Id. at 52 n.5 (quoting Consent Decree ¶ 10(i)).  This provision regarding the finality of the arbitrator's decisions, set forth in Paragraph 10(i) of the Consent Decree, mirrors virtually identical provisions establishing the finality of the adjudicator's decisions on claimants' Track A claims.  See Consent Decree ¶¶ 9(a)(v), 9(b)(v) (concerning assertion of only non-credit claims under a USDA benefit program).  Thus, with respect to decisions of the adjudicator on Track A claims and decisions of the arbitrator on Track B claims, the parties, in negotiating the terms of the Consent Decree, agreed that these decisions would be final and not subject to judicial review "in any court or before any tribunal."  Id. ¶¶ 9(a)(v), 9(b)(v), 10(i).

Following a day-long fairness hearing at which all interested persons were heard and their views carefully considered, the Court found that the terms of the Consent Decree, including its finality provisions, were fair, adequate, and reasonable under Rule 23(e) of the Federal Rules of Civil Procedure.  See Pigford v. Glickman, 185 F.R.D. at 107-08, 112-13.  With respect to the finality provisions of the Consent Decree specifically, the Court stated:

> [T]he decisions of the adjudicators on Track A claims and the decisions of the arbitrators on Track B claims are final; there is no right to appeal those decisions, except that the Monitor shall direct the arbitrator or adjudicator to reexamine the claim if he determines that a "clear and manifest error has occurred" that is "likely to result in a fundamental miscarriage of justice." Consent Decree at ¶¶ 9(a)(v), 9(b)(v), 10(i), 12(b)(iii).  Many objectors contend that the absence of appeal rights renders the settlement structure unfair and/or that it gives the arbitrators and adjudicators too much power. . . . While the objection has force, class counsel made a strategic decision not to press for appeal rights because the government would have insisted that any appeal rights be a two-way street.  See Transcript of Hearing of March 2, 1999 at 179. Any appeal process inevitably would delay payments to those claimants who prevailed on their claims.  Since it is anticipated that most class members will prevail under the structure of the settlement, the Court concludes that the forfeit of appeal rights was a reasonable compromise.

Id. at 107-08.

The sole exception to this robust finality was provided in Paragraph 12(b)(iii) of the Consent Decree, under which the Monitor was given the limited power, on petition of a party, to review an arbitrator or adjudicator decision and to "[d]irect the . . . adjudicator[] or arbitrator to reexamine a claim where the Monitor determines that a clear and manifest error has occurred in the . . . adjudication[] or arbitration of the claim and has resulted or is likely to result in a fundamental miscarriage of justice." Consent Decree ¶ 12(b)(iii).  Thus, by asking the Court itself to review and overturn the arbitrator's decisions, Mr. Abrams and Mr. Brewington are requesting the Court not only to act in a manner inconsistent with the carefully negotiated, explicit terms of the Consent Decree, but also in a way that would usurp the Monitor's authority under the Consent Decree.  See Pigford v. Johanns, 421 F. Supp. 2d 130, 136 (D.D.C. 2006).  As this Court has explained:

> The Monitor appointed by the Court in this case, Randi Roth, has established an office of professionals whose primary task is to review and examine decisions that have been petitioned under Paragraph 12(b)(iii) of the Consent Decree. Under Ms. Roth's leadership, her staff has performed this task in a thorough and conscientious manner that does credit to both the Monitor's Office and the process established under the Consent Decree. Ms. Roth herself has performed extraordinarily under the pressures of her role, a role which includes not only reviewing Arbitrator and Adjudicator decisions, but also handling "any problems that any class member may have with respect to any aspect of this Consent Decree." Consent Decree ¶ 12(b)(ii). Over 20,000 persons filed timely claims and an additional 60,000 or more requested permission to file late claims in this case. The mandate, therefore, to deal with "any problems" that arise for "any class member" with respect to the Consent Decree created for Ms. Roth the almost Herculean task of reviewing and responding to a huge number of complaints on a wide variety of issues, in addition to her primary task of deciding the petitions for review. Despite the challenges presented in performing all the duties assigned to her, Ms. Roth has demonstrated at every turn an unwavering dedication to her work and an incredible level of competence in carrying out her responsibilities. The Court could not have chosen a better person for the job and continues to have the utmost confidence in Ms. Roth and her staff, including General Counsel Kenneth Saffold and Senior Counsel Stephen Carpenter.

Id. at 137.

As noted supra at 3, neither Abrams nor Brewington elected to exercise his right to seek Monitor review of the arbitrator's dismissal of his claim. It also bears mentioning that after this Court's dismissal of Abrams' and Brewington's respective complaints in 2009, see supra at 4, both claimants filed notices of appeal, but the D.C. Circuit ultimately dismissed both appeals for lack of prosecution. See Order, Abrams v.

Vilsack, No. 09-5327 (D.C. Cir. Dec. 14, 2009); Order, Brewington v. Vilsack, No. 09-5332 (D.C. Cir. Dec. 11, 2009).[4]

To repeat, the terms of the Consent Decree provide unequivocally that decisions of the arbitrator on Track B claims are final, and are not subject to review or vacatur by this Court. "The Court has no authority under the Decree or under any relevant statute or case law to overturn the carefully crafted process that has been put in place by the Consent Decree." Pigford v. Johanns, 421 F. Supp. 2d at 135. Mr. Abrams and Mr. Brewington are not the first parties to this action whose requests for judicial review of decisions made by the neutrals have been denied, as this Court has consistently upheld the provisions of the Consent Decree concerning the finality of all such decisions. See, e.g., Memorandum Opinion & Order, Pigford v. Vilsack, Civil Action No. 97-1978 (D.D.C. May 21, 2012) [Dkt. No. 1824] (denying motions seeking vacatur of arbitrator's Track B decisions, citing Paragraphs 10(i) and 12(b)(iii) of Consent Decree), aff'd, Order, No. 12-5302 (D.C. Cir. July 30, 2013) (per curiam); Pigford v. Johanns, 421 F. Supp. 2d at 134-36 (same); Order, Pigford v. Veneman, Civil Action No. 97-1978 (D.D.C. Aug. 9, 2005) [Dkt. No. 1169] (denying motion to reverse adjudicator's Track A decision, citing Paragraphs 9(a)(v) and 12(b)(iii) of Consent Decree); Order, Pigford v. Veneman, Civil Action No. 97-1978 (D.D.C. Aug. 9, 2005) [Dkt. No. 1166] (same).

---

[4] With specific respect to the claimants' present complaint regarding the arbitrator's refusal to extend filing deadlines to allow them to submit new evidence in support of their claims, this Court previously determined that neither Abrams nor Brewington would be entitled to such relief if their failure to meet those deadlines was caused by mistakes of their privately chosen counsel. See Pigford v. Veneman, Civil Action No. 97-1978 (PLF), 2005 WL 6783452, at *1-2 (D.D.C. May 5, 2005). The arbitrator, in his decisions on their claims, determined that such was the case for both claimants. See Arbitrator's Abrams Decision at 2-3; Arbitrator's Brewington Decision at 3-4.

Neither the claimants' invocation of Rule 60(b) of the Federal Rules of Civil Procedure nor of the Federal Arbitration Act can alter the fact that the explicit and carefully negotiated terms of the Consent Decree, which govern the disposition of Pigford class members' individual claims, preclude the relief that they seek from this Court.

### III.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the motion to vacate and set aside the arbitrator's order filed by Lucious Abrams and Sons and Lucious Abrams, Jr. [Dkt. No. 1943] is DENIED; Mr. Abrams' motion to amend his previously filed motion [Dkt. No. 1947] is GRANTED; and Mr. Abrams' amended motion [Dkt. No. 1948] to vacate and set aside the arbitrator's order is DENIED; and it is

FURTHER ORDERED that the motion to vacate and set aside the arbitrator's order filed by Cecil Brewington [Dkt. No. 1949] is DENIED.  This is a final appealable order.  See FED. R. APP. P. 4(a).

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  January 21, 2015