UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
TIMOTHY PIGFORD et al.,                             )
                                                    )
                    Plaintiffs,                     )
                                                    )
        v.                                          )        Civil Action No. 97-1978 (PLF)
                                                    )
TOM VILSACK, Secretary,                             )
United States Department of Agriculture,            )
                                                    )
                    Defendant.                      )
_____ )
                                                    )
CECIL BREWINGTON et al.,                            )
                                                    )
                    Plaintiffs,                     )
                                                    )
        v.                                          )        Civil Action No. 98-1693 (PLF)
                                                    )
TOM VILSACK, Secretary,                             )
United States Department of Agriculture,            )
                                                    )
                    Defendant.                      )
_____ )

OPINION AND ORDER

        This matter is before the Court on the motion for fees, costs, and expenses filed

by the law firm of Cross & Kearney PLLC, which seeks $243,210.17 for work performed and

expenses incurred in connection with James T. Stephenson's Track B claim.  In addition, Cross

& Kearney and its counsel together request $39,431.00 for fees incurred in the preparation of this

fee petition.  The United States Department of Agriculture ("USDA") does not oppose awarding

Cross & Kearney some amount in attorneys' fees and expenses, and does not dispute the hourly

rates of either of the two attorneys or the paralegals who performed the work involved.  But

USDA argues that the award should be reduced across-the-board by 75%: a 50% reduction due to Mr. Stephenson's modest settlement, and an additional 25% reduction due to purported deficiencies in Cross & Kearney's billing records. Upon consideration of the parties' arguments, declarations, documentary submissions, and the relevant legal authorities, the Court will grant Cross & Kearney's motion in part and deny it in part, awarding fees and expenses in the amount of $268,879.65.[1]

## I. BACKGROUND

James T. Stephenson is a Track B claimant who alleged that the Farmers Home Administration, an agency of the USDA, discriminated against him in the provision and servicing of farm loans on various occasions between 1981 and 1996. Mot. at 2-4. Jesse Kearney, a partner at Cross & Kearney, began representing Mr. Stephenson in February 1999 and continued to seek relief for Mr. Stephenson on his Track B claim for eleven years, until a settlement was reached on August 17, 2010. Mot., Ex. A, Declaration of Jesse Kearney ("Kearney Decl.") [Dkt. No. 1931-2] at 1, 3. Mr. Stephenson sought $8 million in damages. Opp. at 3. The Track B Arbitrator initially granted USDA's motion to dismiss Mr. Stephenson's claim on the ground that it was barred by his wife's successful Track A claim. Id. Mr. Stephenson sought Monitor review, and the Monitor determined that the dismissal constituted clear and manifest error and directed the Arbitrator to re-examine Mr. Stephenson's claim. Mot. at 5; Opp. at 3. The parties entered mediation on August 2, 2010, and settled the Track B claim for $142,500 on August 17, 2010. Mot. at 4-5; Kearney Decl. at 3. Since then, the parties have

---

[1]     Relevant papers reviewed by the Court with respect to this matter include the following, for which docket entries refer to Civil Action No. 97-1978: Motion of Cross & Kearney PLLC for Attorneys' Fees and Expenses ("Mot.") [Dkt. No. 1931]; Defendant's Opposition to Motion of Cross & Kearney PLLC for Attorneys' Fees and Expenses ("Opp.") [Dkt. No. 1944]; Reply of Cross & Kearney PLLC to Opposition to Motion for Attorneys' Fees and Expenses ("Reply") [Dkt. No. 1953].

been unable to resolve the question of attorneys' fees, costs, and expenses, which was expressly

left open in the settlement agreement.  Mot. at 5.

Cross & Kearney now seeks $282,641.17 in attorneys' fees, costs, and expenses

under the April 14, 1999 Consent Decree; the Equal Credit Opportunity Act, 15 U.S.C.

§ 1691 et seq. ("ECOA"); and the Equal Access to Justice Act, 28 U.S.C. § 2412.  Mot. at 2.

USDA argues that Cross & Kearney's award should be reduced by a total of 75% to reflect Mr.

Stephenson's supposedly modest settlement as well as alleged deficiencies in the law firm's

billing records.  Opp. at 14.

## II.  LEGAL STANDARD

Plaintiffs who prosecute "successful action[s]" under the ECOA may seek

reasonable attorneys' fees, costs, and expenses.  See 15 U.S.C. § 1691e(d) ("In the case of any

successful action . . . the costs of the action, together with a reasonable attorney's fee as

determined by the court, shall be added to any damages awarded by the court.").  A party

prosecutes a successful action if he or she prevails in that action.  Pigford v. Schafer, Civil

Action No. 97-1978, Memorandum Opinion and Order (Nov. 12, 2008) [Dkt. No. 1505] at 4.

For a party to be a prevailing party, it must have succeeded on a significant issue raised in the

litigation and secured some of the benefit sought.  Hensley v. Eckerhart, 461 U.S. 424, 433

(1983).  In addition, this benefit must reflect a change in the legal relationship between the

parties, and that change must be judicially sanctioned in some way.  Blackman v. Dist. of

Columbia, 328 F. Supp. 2d 36, 45 (D.D.C. 2004) (citing Buckhannon Bd. & Care Home, Inc. v.

West Virginia Dep't of Health & Human Res., 532 U.S. 598, 604-05 (2001)).  Once the court has

determined that the plaintiff is a prevailing party, it then must decide whether the fees sought are

reasonable by calculating "the number of hours reasonably expended on the litigation multiplied

by a reasonable hourly rate" — the so-called "lodestar" fee.  <u>Hensley v. Eckerhart</u>, 461 U.S. at

433; <u>see</u> <u>also</u> <u>Sierra Club v. Jackson</u>, 926 F. Supp. 2d 341, 346 (D.D.C. 2013).  In this case,

USDA does not contest the reasonableness of the hourly rates.

On the issue of reasonableness of the hours expended on the tasks involved, the

motion for attorneys' fees must include supporting documentation, providing sufficient detail so

that the court can determine "with a high degree of certainty" that the hours billed were actually

and reasonably expended and that the matter was appropriately staffed to do the work required

efficiently and without duplicative billing.  <u>In re Olson</u>, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989)

(emphasis omitted); <u>see</u> <u>also</u> <u>Hensley v. Eckerhart</u>, 461 U.S. at 433; <u>Covington v. Dist. of</u>

<u>Columbia</u>, 57 F.3d 1101, 1107 (D.C. Cir. 1995).  At a minimum, a fee applicant must provide

some information about the attorney's billing practices and hourly rate, the attorney's skill and

experience, and the nature of counsel's practice as it relates to this kind of litigation.  <u>See</u> <u>Rooths</u>

<u>v. Dist. of Columbia</u>, 802 F. Supp. 2d 56, 60 (D.D.C. 2011).  The D.C. Circuit also requires that

"fee applications include contemporaneous time records of hours worked and rates claimed, plus

a detailed description of the subject matter of the work with supporting documents, if any."  <u>In re</u>

<u>Donovan</u>, 877 F.2d 982, 994 (D.C. Cir. 1989) (citing <u>Nat'l Ass'n of Concerned Veterans v.</u>

<u>Sec'y of Def.</u>, 675 F.2d 1319, 1326 (D.C. Cir. 1982)).

Once a plaintiff has provided such information, there is a presumption that the

number of hours billed and the hourly rates are reasonable, and the burden then shifts to the

defendant to rebut the plaintiff's showing of reasonable hours and reasonable hourly rates for

attorneys of the relevant level of skill and expertise.  <u>See</u> <u>Watkins v. Vance</u>, 328 F. Supp. 2d 23,

26 (D.D.C. 2004).  But "[t]he product of reasonable hours times a reasonable rate does not end

the inquiry," as "[t]here remain other considerations that may lead the district court to adjust the

fee upward or downward, including the important factor of the 'results obtained.'" Hensley v.

Eckerhart, 461 U.S. at 434.  "[W]here the plaintiff [has] achieved only limited success, the

district court should award only that amount of fees that is reasonable in relation to the results

obtained." Id. at 440; see also Farrar v. Hobby, 506 U.S. 103, 114-15 (1992).  But the Court

may, if appropriate, "award legal fees that substantially exceed the damages." Pigford v.

Schafer, Civil Action No. 97-1978, Memorandum Opinion and Order (Nov. 12, 2008) at 5

(quoting Johnson v. Daley, 339 F.3d 582, 587 (7th Cir. 2003)); see also Orchano v. Advanced

Recovery, Inc., 107 F.3d 94, 98 (2d Cir. 1997) ("[A] reasonable fee may well exceed the

prevailing plaintiff's recovery.") (citing, *inter alia*, City of Riverside v. Rivera, 477 U.S. 561,

564-67 (1986)).


## III.  DISCUSSION

There is no dispute that Mr. Stephenson is a prevailing party, and he therefore is

entitled to reasonable fees, costs, and expenses.  There is also no dispute about the

reasonableness of the hourly rates.  USDA raises a number of arguments, however, in support of

its request for a 75% reduction of the $282,641.17 sought by Cross & Kearney.  The Court will

address each of USDA's arguments in turn.


### A.  Mr. Stephenson's Degree of Success

USDA asks this Court to cut Cross & Kearney's requested fees in half because

counsel did not obtain "excellent results" in the Track B arbitration.  Opp. at 5 (quoting Hensley

v. Eckerhart, 461 U.S. at 435).  USDA contends that Cross & Kearney's fees should be reduced

to reflect the supposedly limited success that counsel achieved, given the fact that Mr.

Stephenson sought over $8 million in damages yet settled his Track B claim for $142,500.  Id.

USDA emphasizes that the fee amount Cross & Kearney seeks almost doubles the amount of Mr. Stephenson's settlement.  Id.  Thus, USDA requests an across-the-board reduction of 50% to achieve a "reasonable [fee] amount in relation to the results obtained."  Id. at 6.

In the context of the Pigford class action, this Court previously has awarded attorneys' fees in an amount that exceeded the damages received by a claimant, and where those damages were substantially less than the amount sought in arbitration.  For example, claimant Sandy McKinnon initially sought $438,153 in economic damages on his Track B claim, but the Arbitrator did not award any economic damages, instead awarding only some debt relief and $52,000 in non-economic damages.  Pigford v. Schafer, Civil Action No. 97-1978, Memorandum Opinion and Order (Nov. 12, 2008) at 2-3.  Nonetheless, this Court awarded Mr. McKinnon's counsel $136,340 in attorneys' fees and $2,723.11 in expenses, amounting to more than double the amount of damages received by the claimant.  Id. at 8-9.  Similarly here, the Court finds no reason to conclude that Cross & Kearney's request for $282,641.17 is unreasonable in relation to Mr. Stephenson's $142,500 settlement with USDA, nor that this settlement represents a poor result for Mr. Stephenson simply because he sought a much larger amount in damages.

Cross & Kearney worked on the substance of Mr. Stephenson's Track B claim for eleven years.  It diligently sought Monitor review of an erroneous dismissal by the Arbitrator, entered mediation, and settled the Track B claim to Mr. Stephenson's satisfaction.  See Mot. at 4-5.  The duration of Mr. Stephenson's claim was significantly lengthened by his petition for Monitor review, and Cross & Kearney incurred additional fees and expenses in connection with that effort.  See Reply at 4.  The time spent pursuing Monitor review was essential because Mr. Stephenson otherwise would not have received any compensation at all.  In the two paragraphs that USDA devotes to its argument concerning Mr. Stephenson's purportedly limited success on

6

his Track B claim, USDA offers no compelling explanation to justify the request for an "across-the-board reduction of 50%." Opp. at 6. For the foregoing reasons, the Court concludes that Mr. Stephenson's Track B settlement amount does not justify any reduction to Cross & Kearney's attorneys' fees and expenses.

### B. Reasonableness of Hours and Expenses Billed

USDA also argues that the Court should further reduce Cross & Kearney's request for fees and expenses by 25% to account for alleged deficiencies in the firm's billing records and for purportedly unreasonable time expenditures on particular tasks. See Opp. at 6-14.

### 1. Billing Judgment

USDA contends that Cross & Kearney did not exercise proper billing judgment with respect to certain time entries. Opp. at 7-8. First, USDA asserts that the time spent by Cross & Kearney drafting correspondence to witnesses and preparing notices of deposition demonstrates "bill inflation and/or an inefficient use of time." Id. at 7. USDA criticizes the 16.6 hours it took Cross & Kearney to prepare supposedly identical letters to eight different proposed witnesses. Id. USDA also identifies several other tasks that it alleges to be unreasonably billed, including: 3.2 hours spent preparing eight "virtually identical Notices of Deposition"; 4.8 hours preparing eight Notices to Appear for Deposition; and 2.4 hours for four separate Notices of Deposition. Id. Finally, USDA challenges two time entries in which Cross & Kearney billed a total of 0.5 hours for two voicemails left for its agricultural economic expert, Patrick O'Brien. Id. Cross & Kearney responds that (1) the letters to each of the proposed witnesses were unique; (2) the time billed for deposition notices is not excessive because depositions take time to

7

schedule; and (3) the time spent with respect to voicemails left for claimant's expert was not unreasonable because it incorporates time spent preparing for the calls.  See Reply at 5-6.

The Court agrees with USDA that the time spent in communicating with witnesses and deponents was excessive.  Cross & Kearney states that because each of its eight letters was sent to a different proposed witness, "the content [of each letter] is obviously different."  Reply at 5.  But it is not obvious to the Court why each of these eight letters took an average of more than two hours to draft, and Cross & Kearney provides no explanation of this expenditure of time in its reply memorandum.  There are no details, for example, regarding the length of each letter or the type of preparation needed to draft it.  Accordingly, the Court concludes that only eight hours may be compensated for this task.  With respect to the billing related to deposition notices, Cross & Kearney argues that the hours billed are reasonable because they include the time needed to schedule the depositions.  But, as explained infra at 10, Cross & Kearney may not bill for time spent executing clerical tasks, even if those tasks are performed by an attorney.  Accordingly, the Court will reduce by 75% the time billed in connection with the preparation of these deposition notices.  As for the half-hour billed in connection with the voicemails left for Mr. O'Brien, the Court agrees with Cross & Kearney that fifteen minutes of preparation per call is a reasonable expenditure of time.  In sum, the Court concludes that Cross & Kearney has unreasonably billed a total of $5,740.00 in fees for this group of tasks, and the fee award will be reduced by that amount.

USDA next argues that Cross & Kearney inefficiently reviewed Mr. Stephenson's farm records, resulting in a bill for 152 hours spent on this task.  USDA asserts that Cross & Kearney should have had sufficient familiarity with the nature of the documents, given the law firm's representation of other class members in this case.  Opp. at 8.  But farmers and their

claims in this class action are not identical, so it is necessary for counsel to perform a case-by-case document review to determine the facts relating to each Track B claim.  See Reply at 6.  The billing records indicate that Mr. Kearney had to review more than ten thousand pages of farming documents in connection with Mr. Stephenson's Track B claim.  See Opp., Ex. B [Dkt. No. 1944-2].  Taking four weeks to do so does not seem excessive.  The Court concludes that the amount of time Cross & Kearney spent reviewing Mr. Stephenson's farm records therefore was reasonable.

Finally, USDA contends that Cross & Kearney spent an excessive amount of time reviewing and preparing time sheets in connection with this fee petition.  Opp. at 8.  Cross & Kearney's paralegal spent 39.5 hours reviewing and preparing time sheets.  See Opp., Ex. A [Dkt. No. 1944-1] at 3.  USDA argues that the amount of time the paralegal spent preparing these time sheets suggests that Cross & Kearney failed to maintain contemporaneous records.  Opp. at 8 (citing In re North (Watson Fee Application), 32 F.3d 607, 608 (D.C. Cir. Spec. Div. 1994) (per curiam) ("[A]fter-the-fact estimates of time on a case are insufficient to support an award of attorneys' fees.")).  The Court agrees that 39.5 hours seems an excessive amount of time to consolidate time sheets that should have been maintained contemporaneously and in good order.  Accordingly, the Court will reduce the time to be compensated for the paralegal's work in reviewing and preparing time sheets by approximately 50%, to twenty hours.  At $135 per hour, this results in a deduction of $2632.50 from Cross & Kearney's fee award.

2.  Clerical Work Performed by Attorneys and Paralegal

USDA asserts that it should not be charged $3,802.00 in fees requested for administrative activities normally performed by clerical staff.  Opp. at 9-10.  Cross & Kearney's billing records contain several clerical entries that include inspecting case files, shipping via

FedEx, mailing correspondence, and receiving court reporter invoices.  See Opp., Ex. C [Dkt.

No. 1944-3].  Mr. Kearney performed roughly two-thirds of these administrative tasks at attorney

billing rates between $340 and $475 per hour.  These tasks did not require the skill and judgment

of a lawyer, and Cross & Kearney does not dispute their purely clerical nature.  Cross & Kearney

justifies its request, however, by arguing that the law firm's small size requires a lawyer or

paralegal to perform such duties.  Reply at 6.

        The Court recognizes the constraints placed on smaller law firms, but these tasks

represent normal administrative overhead typically undertaken by clerical staff, not legal

personnel.  See Lopez v. Dist. of Columbia, 383 F. Supp. 2d 18, 25 (D.D.C. 2005) ("This Circuit

has addressed the question of whether clerical work is compensable and has concluded that

Congress never intended for clerical billings to be included in attorneys' fees and that such

services are 'generally considered within the overhead component of a lawyer's fee.'")

(quoting In re Olson, 884 F.2d at 1426-27); see also Michigan v. U.S. E.P.A., 254 F.3d 1087,

1095-96 (D.C. Cir. 2001) (deducting full amount of billing entries for legal assistant's

performance of purely clerical tasks "routinely performed by other less expensive personnel,

such as messengers").  The Court will deduct the full $3,802.00 attributable to these entries.

### 3.  Vague and/or Block Billing

        USDA characterizes six of the entries in Cross & Kearney's time sheets as being

so vague as to obscure the amount of work the firm spent on particular tasks, or as constituting

block billing.  See Opp. at 10; id., Ex. D [Dkt. No. 1944-4].  The term "block billing" commonly

refers to a single time entry that lists multiple tasks, thus making it impossible to evaluate each

task's reasonableness.  See Role Models America, Inc. v. Brownlee, 353 F.3d 962, 971 (D.C.

Cir. 2004); see also Blackman v. Dist. of Columbia, 677 F. Supp. 2d 169, 179-80 (D.D.C. 2010)

(finding reasonableness where counsel "[did] not actually lump multiple tasks together and the relatively few entries that do contain more than one task are of relatively minor significance and amount to minimal time").  Courts also have concluded that the description of a task sometimes may be too vague or generic to allow for a determination of its reasonableness.  See, e.g., Cobell v. Norton, 407 F. Supp. 2d 140, 158 (D.D.C. 2005) (examples of vague entries included:  "meet with attys"; "prepare for trial"; and "trial preparation").

Here, USDA cites six entries, totaling over $7,000 in fees, which are purportedly vague or constitute block billing.  See Opp., Ex. D.  The Court has reviewed these six entries. Two of the entries relate to a report prepared by R. Stuby, an employee of Patrick O'Brien's agricultural economic consulting firm.  Mr. O'Brien was engaged to compute estimates of Mr. Stephenson's damages.  The Court concludes that 75 minutes to review documents associated with Stuby's report and another two hours to discuss the expert's findings with Mr. Stephenson seems reasonable, and the entries are not vague.  Nor is it vague or unfair to lump together a conference with Mr. Stephenson to receive and review documents and to discuss revising his witness list, as Cross & Kearney has done in its entry for October 25, 2000.  Cross & Kearney's April 12, 2001 time entry contains three tasks:  "Review file, research case law and begin drafting Response to Motion to Dismiss."  Cross & Kearney's June 15, 2010 time entry also contains three tasks:  "Research case law; draft Plaintiff's Responsive Memorandum; call to Dan to discuss further Stephenson's counteroffer."  But there appears no reason to subdivide either of these time entries, where the tasks appear interrelated and account for a mere four billable hours each.  Moreover, neither example requires additional explanation to evaluate the reasonableness of each separate task because both entries contain sufficient clarity and detail.  As for the final entry about which USDA complains — "partial review of Gov't pleadings – witnesses to be

11

cross-examined" — it is vague, but not so vague as to prevent a determination the hours billed

(3.3) and the fee amount ($1,567.50) are reasonable.  The Court therefore will not reduce the fee

award for purportedly vague descriptions or block billing, as the descriptions of the tasks

identified in these six entries are sufficient and the hours billed for the tasks are reasonable.

### 4.  Inflated Travel Hours

USDA contends that Cross & Kearney billed 32.50 hours of Mr. Kearney's travel

time at his full normal hourly rate, and that it billed 24-hour days when Mr. Kearney was

traveling in connection with Mr. Stephenson's arbitration.  Opp. at 11-12.  In this Circuit, travel

time is compensated at no more than half the attorney's appropriate hourly rate.  See Cooper v.

United States R.R. Ret. Bd., 24 F.3d 1414, 1417 (D.C. Cir. 1994); Pigford v. Glickman, Civil

Action No. 97-1978, Opinion and Order (Mar. 8, 2001) [Dkt. No. 411] at 15-16.  Cross &

Kearney states that, in preparing this fee petition, the firm reduced Mr. Kearney's travel hours by

50% to comply with the Circuit's requirements.  Mot. at 9 n.4; see also Reply at 7.  The firm also

asserts that it corrected his billing entries by reducing his 24-hour workdays to normal workdays.

Mot. at 9 n.4.  USDA seems to miss or ignore these statements, as its opposition memorandum

bears no reference to Cross & Kearney's contention that these adjustments were made.  The

Court accepts Cross & Kearney's uncontroverted assertions, and therefore will make no

reductions to the firm's billing of Mr. Kearney's travel hours.

### 5.  Costs and Expenses

Cross & Kearney seeks a total of $21,817.92 in costs and expenses incurred

during its representation of Mr. Stephenson.  The largest component of this request consists of

$17,800.00 in expert fees for work performed by Patrick O'Brien's agricultural economic

consulting firm.  Mot. at 11; Mot., Ex. F [Dkt. No. 1931-7] at 16-17.  USDA "does not dispute

that Mr. O'Brien and his colleagues worked on this matter," but it argues that based on the two-

page time sheet documenting the expert's work, there is no way to determine whether counsel

actually paid for the consulting services.  Opp. at 12.  USDA cites no authority to support its

argument that Cross & Kearney must produce proof of payment where there is a detailed billing

record and no dispute that Mr. O'Brien performed an economic analysis for use in Mr.

Stephenson's Track B arbitration.  Moreover, Mr. Kearney has averred under oath that the

expenses he has billed were actually incurred.  See Kearney Decl. ¶ 31.  Even though Cross &

Kearney does not offer a copy of the invoice or a check indicating payment to the consulting

business, the two-page time sheet contains sufficient detail to evaluate the reasonableness of the

expense.  The statement provides each staff member's hours worked, billing rate, and

descriptions of the tasks performed in connection with Mr. Stephenson's claim.  Mot., Ex. F, at

16-17.  The Court concludes that $17,800.00 is a reasonable payment for these services.[2]

        Cross & Kearney also requests $2,845.96 in travel expenses.  Mot. at 11; Mot.,

Ex. F, at 1.  USDA contends that Cross & Kearney has failed to properly support its request for

these expenses, and that this Court should reject the law firm's request for reimbursement.  Opp.

at 13.  The Court agrees in substantial part.  Unlike the detailed work descriptions provided

elsewhere in Cross & Kearney's time sheets, the firm does not provide the same level of clarity

and specificity regarding the travel expenses it incurred in relation to Mr. Stephenson's Track B

arbitration.  Based upon an examination of travel entries in Cross & Kearney's Itemized

Expenses, the Court is unable to determine the reasonableness of the expenses because the law

_____

        [2]      USDA also contends that even if Cross & Kearney did pay Mr. O'Brien, the
$17,800.00 in expert fees should be substantially reduced to reflect Mr. Stephenson's supposedly
modest settlement.  Opp. at 12-13.  As the Court already has explained, see supra at 6-7, Mr.
Stephenson's Track B settlement amount does not justify any reduction to Cross & Kearney's
fees and expenses.

firm provides vague descriptions of its four travel-related expenditures.  See Mot., Ex. F, at 1.

For example, Cross & Kearney asks for $1,525.00 in connection with "[t]ravel to DC for

Mediation (x2)."  Id.  Based on such an entry, the Court is unable to distinguish compensable

travel expenses from any non-compensable charges.  Nor can it determine the reasonableness of

any particular item of expense.

Cross & Kearney has submitted an uncategorized collection of travel receipts,

invoices, and other billing statements attached to its Itemized Expenses.  Mot., Ex. F,

at 1-4, 10-15.  According to USDA, the amounts indicated on these documents add up to a total

of only $1,765.31, which is $1,080.65 less than the $2,845.96 that Cross & Kearney has billed

for its travel expenses.  Because, as explained above, the Court cannot evaluate the

reasonableness of Cross & Kearney's travel expenses based on its terse and vague billing entries,

the Court agrees with USDA that the $1,080.65 not accounted for by any documentation cannot

be reimbursed.  Accordingly, Cross & Kearney's award will be reduced by that amount.

Cross & Kearney next seeks $1,253.80 in deposition-related expenses.  Mot.

at 11; Mot., Ex. F, at 1.  USDA does not dispute that the depositions occurred, but it argues that

Cross & Kearney deserves no reimbursement for them because Cross & Kearney did not proffer

an invoice or receipt of payment for the court reporting expenses.  Opp. at 14.  The Court is not

troubled by the absence of such documentation, as Cross & Kearney's accounting of Itemized

Expenses provide the Bushman Court Reporting invoice number, names of the deponents, and

expense amount for depositions that occurred in connection with Mr. Stephenson's Track B

claim.  Mot., Ex. F, at 1.  This information suffices to enable the Court to evaluate the

reasonableness of these expenses, and the Court finds them to be so.

14

Finally, Cross & Kearney requests $506.37 for office supplies purchased from Staples.  Mot. at 11; Mot., Ex. F, at 1.  USDA challenges the reasonableness of these expenses.  Opp. at 13.  As the Court has already discussed, see supra at 10, Cross & Kearney will not receive compensation or reimbursement for tasks and expenses that constitute ordinary administrative overhead.  The Court therefore will reduce Cross & Kearney's fee award by an additional $506.37.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the Motion of Cross & Kearney PLLC for Attorneys' Fees and Expenses.  Specifically, the Court will reduce the requested total award by $13,761.52, of which $12,174.50 is a reduction in Cross & Kearney's fees and $1,587.02 is a reduction in the firm's expenses.  Accordingly, it is hereby

ORDERED that the Motion of Cross & Kearney PLLC for Attorneys' Fees and Expenses [Dkt. No. 1931] is GRANTED in part and DENIED in part; and it is

FURTHER ORDERED that the United States Department of Agriculture shall pay Cross & Kearney PLLC $220,648.75 in attorneys' fees and $20,230.90 in expenses on or before May 1, 2015.  In addition, USDA shall pay David Fierst of Stein, Mitchell, Muse, Cipollone & Beato, LLP $28,000.00 in attorneys' fees.  If these amounts are not paid on or before May 1, 2015, they will bear interest at the rate established by 28 U.S.C. § 1961.  This is a final appealable Order.  See FED. R. APP. P. 4(a).

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN

DATE:  March 31, 2015                                    United States District Judge