UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY PIGFORD et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 97-1978 (PLF) |
| ) | |
| TOM VILSACK, Secretary, ) | |
| United States Department of Agriculture, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| CECIL BREWINGTON et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 98-1693 (PLF) |
| ) | |
| TOM VILSACK, Secretary, ) | |
| United States Department of Agriculture, ) | |
| ) | |
| Defendant. ) | |
| ) | |

OPINION AND ORDER

This matter is before the Court on the motion for fees, costs, and expenses filed by Faya Rose Toure, a/k/a Rose M. Sanders ("Ms. Sanders"), which seeks $17,212 for work performed and expenses incurred between September 1, 2014 and December 30, 2014, implementing the Consent Decree in this case. The United States Department of Agriculture ("USDA") does not dispute that Ms. Sanders is entitled to an appropriate fee for her work on the wind-down stipulation and order during this time, but it challenges all of Ms. Sanders's time entries as "block billing" and some as non-payable, too vague, or not reflecting proper billing

judgment. Upon consideration of the parties' arguments, documentary submissions, and the relevant legal authorities, the Court will grant Ms. Sanders's motion in part and deny it in part, awarding her fees, costs, and expenses in the amount of $10,056.80.[1]

## I.  BACKGROUND

Ms. Sanders is a former partner in the law firm Chestnut, Sanders, Sanders & Pettaway, LLC and one of several class counsel for the plaintiffs in this class action. Mot. at 1, 3. In that role, Ms. Sanders collaborated between September 1, 2014 and December 30, 2014 with other class counsel and USDA on the negotiation and drafting of a wind-down stipulation and order that resolved outstanding issues in the case. Mot. at 6-9; Opp. at 1. On December 31, 2014, Ms. Sanders moved for $17,212 in attorneys' fees, costs, and expenses for her work "implementing the Consent Decree, for the period from September 1, 2014 through December 30, 2014." Mot. at 1. USDA argues that Ms. Sanders "is entitled to no more than $2,360.60 in fees" for her work during that period. Opp. at 10.

## II. LEGAL STANDARD

The Consent Decree in this class action states that "[c]lass counsel . . . shall be entitled to reasonable attorney[s'] fees and costs under [the Equal Credit Opportunity Act ("ECOA")], 15 U.S.C. § 1691e(d) . . . that are generated in connection with the filing of this action and the implementation of this Consent Decree." Pigford v. Glickman, No. 97-1978, Consent Decree (Apr. 14, 1999) at 22-23, ¶ 14(a) [Dkt. 167]. The ECOA permits plaintiffs who

---

[1]  Relevant papers reviewed by the Court with respect to this matter include the following, for which docket entries refer to Civil Action No. 97-1978: Motion For Attorney's Fees, Costs, and Expenses, Incurred by Faya Rose Toure f/k/a Rose M. Sanders, For Implementation Work During the Period From September 1, 2014 – December 30, 2014 ("Mot.") [Dkt. 1966]; and, Defendant's Response to the Motion of Faya Rose Toure a/k/a Rose Sanders For 4th Quarter 2014 Implementation Fees ("Opp.") [Dkt. 1973].

2

prosecute "successful action[s]" to seek reasonable attorneys' fees, costs, and expenses.  See 15 U.S.C. § 1691e(d) ("In the case of any successful action . . . the costs of the action, together with a reasonable attorney's fee as determined by the court, shall be added to any damages awarded by the court.").  The Court's prior opinions on attorneys' fees for class counsel make clear that "[s]uccess" includes "all portions of the implementation phase" but excludes "assisting an individual farmer whose [Track A or Track B] claim ultimately failed."  See Pigford v. Glickman, No. 97-1978, Opinion and Order (Mar. 8, 2001) at 8 [Dkt. 411].  The Court created a quarterly schedule for class counsel to submit fee motions, which requires that "for fees, costs and expenses incurred by any class counsel or of counsel after June 30, 2002 . . . such class counsel or of counsel shall file motions for his own fees, costs and expenses, on a quarterly basis, on the 30th day of March, June, September and December."  See Pigford v. Veneman, 239 F. Supp. 2d 68, 73 (D.D.C. 2003).

    Once the court has determined that the class counsel was successful, it then must decide whether the fees sought are reasonable by calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," Hensley v. Eckerhart, 461 U.S. at 433, the so-called "Lodestar figure."  See Sierra Club v. Jackson, 926 F. Supp. 2d 341, 346 (D.D.C. 2013).  On the issue of reasonableness, counsel must submit supporting documentation with the motion for attorneys' fees, providing sufficient detail so that the court can determine "with a high degree of certainty" that the hours billed were actually and reasonably expended, that the hourly rate charged was reasonable in view of the attorneys' reputation, level of skill, and experience with respect to this type of case, and that the matter was appropriately staffed to do the work required efficiently and without duplicative billing.  See In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989); see also Hensley v. Eckerhart, 461 U.S. at

433; Covington v. Dist. of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995). "At a minimum, a fee applicant must provide some information about the attorneys' billing practices and hourly rate, the attorneys' skill and experience, . . . the nature of counsel's practice as it relates to this kind of litigation, and the prevailing market rates in the relevant community." Rooths v. Dist. of Columbia, 802 F. Supp. 2d 56, 60 (D.D.C. 2011). "In this Circuit, courts 'require that fee applications include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents, if any.'" Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice, No. 12-1491, 2015 WL 6529371, at *6 (D.D.C. Oct. 27, 2015) (quoting In re Donovan, 877 F.2d 982, 994 (D.C. Cir. 1989)). "Once a plaintiff has provided such information, there is a presumption that the number of hours billed and the hourly rate are reasonable, and the burden then shifts to the defendant[] to rebut the plaintiff's showing of reasonable hours and reasonable hourly rates for attorneys of [the relevant] skill level and experience for [the] kind of case." Watkins v. Vance, 328 F. Supp. 2d 23, 26 (D.D.C. 2004).

### III.  DISCUSSION

There is no dispute that Ms. Sanders's work on the wind-down stipulation was "successful" under the ECOA and she therefore is entitled to reasonable fees, costs, and expenses. USDA raises a number of arguments, however, in support of its contention that Ms. Sanders's request for $17,212 is based upon "block billing," that several sets of time entries are non-payable or too vague, and that several time entries are inflated and do not reflect "billing judgment." The Court will address each of USDA's arguments in turn.

*A. Block Billing*

USDA characterizes all of the entries in Ms. Sanders's four-page time sheet as constituting "serial or block billing." See Opp. at 3; Mot. at 6-9. The term "block billing" commonly refers to a single time entry that lists multiple tasks, thus making it impossible to evaluate each task's reasonableness. See Role Models America, Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004); see also Blackman v. Dist. of Columbia, 677 F. Supp. 2d 169, 179-80 (D.D.C. 2010) (finding entries reasonable where counsel "[did] not actually lump multiple tasks together and the relatively few entries that do contain more than one task are of relatively minor significance and amount to minimal time").

Here, USDA cites no specific entries in Ms. Sanders's time sheet as "serial or block billing," see Opp. at 3, but almost every entry therein does list multiple tasks. See Mot. at 6-9. Generally, it is incumbent upon a party objecting to claimed fees to identify, for example in the context of block billing, why the multiple tasks billed together do not "appear interrelated" or why the entry lacks "sufficient clarity and detail" for the Court to "evaluate each task's reasonableness." See Pigford v. Vilsack, 89 F. Supp. 3d 25, 33-34 (D.D.C. 2015); cf. Venable LLP v. Overseas Lease Grp., Inc., No. 14-2010, 2015 WL 4555372, at *4 n.9 (D.D.C. July 28, 2015) (rejecting "overbilling allegations" as "merely conclusory" because they "do not point to specific facts that show how [one party] actually overbilled [the other]"). While several of Ms. Sanders's entries do in fact contain entirely unrelated tasks, see, e.g., Mot. at 7 (time entry for October 27, 2014), it is not so clear that others do. Moreover, USDA has mounted separate challenges on different grounds to many discrete tasks that Ms. Sanders billed together with other tasks, indicating that USDA was able to evaluate their reasonableness. See Opp. at 3-7. In most cases, the Court is also able to discern from the descriptions of the tasks identified in Ms.

5

Sanders's entries what work was done sufficiently to evaluate the reasonableness of the time spent. Furthermore, the time entries that USDA does not challenge on grounds other than block billing are of "relatively minor significance and amount to minimal time." See Blackman v. Dist. of Columbia, 677 F. Supp. 2d at 180. The Court therefore will not reduce the fee award for purported block billing.

*B. Non-Payable or Vague Entries*

USDA contends that Ms. Sanders seeks fees for non-payable tasks and that several of her time entries are too vague to warrant fees. Opp. at 3-8. The Court will address each of those purportedly non-payable or vague time expenditures in turn.

First, USDA claims $1,820 "is for work performed in a different quarter" and therefore non-payable. Opp. at 1 n.1, 3; Mot. at 6. USDA argues that the fourth quarter of 2014 did not include September 2014 and that Ms. Sanders is ineligible to collect fees for the hours spent during that month. Opp. at 3. This Court's prior fees order required that "class counsel . . . file motions for his own fees, costs and expenses, on a quarterly basis, on the 30th day of March, June, September and December." See Pigford v. Veneman, 239 F. Supp. 2d at 73. Ms. Sanders styled her motion as one for fees accrued during "the Quarter ending December 30, 2014," and September 2014 is not a part of that quarter. Mot. at 3. The Court therefore agrees with USDA that a reduction of $1,820 is appropriate.

Second, USDA challenges Ms. Sanders's claimed fees relating to her attempt to have USDA issue additional checks where USDA paid Track A awards to deceased persons rather than to their estates. Opp. at 3-4; Mot. at 6-7. In particular, USDA argues that this work did nothing to implement the Consent Decree because USDA ultimately sent no such checks and Ms. Sanders's efforts resulted in no material changes to the wind-down stipulation and order.

6

Opp. at 4. Ms. Sanders's work resulted in the parties adding the following clause to a draft of the wind-down stipulation and order:

> WHEREAS, Class Counsel avers that the Chestnut firm raised several times with the Neutrals the problem of the compensation check being forwarded to the claim preparer and not to the legal representative of the estate in a number of cases, and that although the problem was not resolved, the lapse of time has rendered the issue moot. The government lacks sufficient factual knowledge to stipulate to this averment[.]

See Stipulation and Order at 2 (draft as of September 5, 2015).[2]  USDA's contention that this language has "no substantive import," Opp. at 4, is irrelevant because Ms. Sanders's work to include it in the wind-down stipulation and order was undoubtedly a "portion[] of the implementation phase" and therefore "successful" under the ECOA.  See Pigford v. Glickman, No. 97-1978, Opinion and Order (Mar. 8, 2001) at 8 [Dkt. 411].  The Court declines to reduce Ms. Sanders's hours associated with estate payments.

Third, USDA challenges two expenditures on identical grounds, one relating to the .8 hour that Ms. Sanders spent discussing the "government [sic] refusal to pay" to keep the telephone line open with "farm advocates" and "John Zippert," and the other related to the .7 hour she spent on her "proposal to archive materials with Tuskegee University."  Opp. at 4-5; Mot. at 6-7.  Whether or not Ms. Sanders was actually successful in her efforts is not dispositive of whether her efforts "further[ed] the implementation of the [C]onsent [D]ecree or its wind-down." Opp. at 5.  Both time expenditures related to "the implementation phase" of the Consent Decree and the Court will not reduce them.

---

[2] The parties changed this language in the final version of the wind-down stipulation and order that the Court entered on November 2, 2015.  See Pigford v. Vilsack, No. 97-1978, Stipulation and Order (Nov. 2, 2015) at 2 [Dkt. 2008].

7

Fourth, USDA argues that the 4.8 hours Ms. Sanders spent sorting out an issue regarding checks USDA sent to her law firm in error is non-payable. Opp. at 5-6; Mot. at 8-9. It is not clear to the Court whether the checks at issue in any way related to the implementation of the Consent Decree. Ms. Sanders did not submit a reply to USDA's opposition, and the time sheet attached to her motion does not contain any information to rebut USDA's characterization of the time Ms. Sanders spent on this matter, i.e., that it was a "waste of time" and unrelated to implementation. Opp. at 5-6. The Court therefore agrees with USDA that a reduction of $2,496 for the 4.8 hours that Ms. Sanders spent dealing with these checks is appropriate.

Fifth, USDA objects to the 1.4 hours Ms. Sanders spent on what it states is the individual Pigford II claim of William and Mary Minor. Opp. at 6; Mot. at 8-9. It is not clear to the Court, however, whether William and Mary Minor are individual claimants in either Pigford I or Pigford II. Even assuming that USDA is mistaken and that this is a Pigford I claim, Ms. Sanders's time sheet also does not indicate whether the Minors's claim was "successful" and resulted in a Track A or Track B award. Mot. at 8-9. Alternatively, in the absence of contrary evidence, the Court must accept USDA's representation that Ms. Sanders's work on William and Mary Minor's individual claim is related to Pigford II and, even if successful, Ms. Sanders's work therefore is non-payable under the Pigford I Consent Decree. The Court therefore agrees with USDA that a reduction of $728 is appropriate.

Fifth, USDA challenges 2.86 hours Ms. Sanders spent reading docket entries unrelated to the implementation of the Consent Decree or individual claimants she assisted. Opp. at 6-8; Mot. at 6-7. USDA argues that Ms. Sanders billed this time for reading "emails" associated with individual Track A or Track B claimants that are "automatically sent by the Court's electronic filing system to every attorney who entered an appearance in this case." Opp.

8

at 7. The Court agrees with USDA that Ms. Sanders should not receive attorneys' fees for reading filings associated with individual Track A and Track B claimants whom she did not assist. Nor is there any colorable argument that Ms. Sanders's review of these filings contributed to the implementation of the Consent Decree. The Court therefore agrees with USDA that a reduction of $1,487.20 is appropriate.

Sixth, USDA contends that 5.7 hours of Ms. Sanders's time entries relating to her work on the wind-down stipulation are "too vague to be compensable." Opp. at 8-9; Mot at 6-9. USDA argues that the descriptions in Ms. Sanders's bill such as "reviewed stipulation" and "reviewed proposed changes to stipulation" are "too vague to ascertain [their] reasonableness." Opp. at 8. The Court disagrees because, as USDA concedes, Ms. Sanders's work on the wind-down stipulation was a legitimate task related to implementation of the Consent Decree, and her time sheet identified her work on the stipulation with sufficient specificity. Compare Cobell v. Norton, 407 F. Supp. 2d 140, 158 (D.D.C. 2005) (examples of vague entries that lacked sufficient specificity included: "meet with attys"; "prepare for trial"; and "trial preparation"). Having reviewed each challenged entry, the Court disagrees with USDA's argument that they are too vague and therefore makes no reduction.

### C. Billing Judgment

USDA next argues that Ms. Sanders did not exercise proper billing judgment with respect to certain time entries. Opp. at 1, 9-10. First, USDA asserts that the .5 hour that Ms. Sanders spent "discuss[ing] preparation of time with assistant" is "an overhead item" that is "not chargeable to the government." Opp. at 9. The Court previously has awarded fees in this case for a paralegal's work in assisting in the preparation of a time sheet in support of a specific fee petition, albeit at a reduced rate. See Pigford v. Vilsack, 89 F. Supp. 3d at 32; see also Hall v.

9

Cent. Intelligence Agency, No. 04-814, 2015 WL 4335364, at *5 (D.D.C. July 15, 2015) ("[W]ork[] on time sheets was clerical work, and thus . . . should be charged at the Laffey rate for clerical work rather than attorney services.").[3]  But the "preparation of time" is not compensable per se; it must be the preparation of a time sheet in support of a fee petition, not simply an attorney's everyday maintenance of contemporaneous records.  Cf. Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice, 2015 WL 6529371, at *7 ("'[A]ttorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney.'" (quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1327 (D.C. Cir. 1982))).  Here, Ms. Sanders's motion does not indicate whether the "discuss[ion]" with her assistant was related to preparing the instant fee petition, and she did not file a reply in order to rebut the government's characterization of this time in its opposition.  The Court therefore agrees with USDA and will reduce Ms. Sanders's fee by $260.

USDA also contends that Ms. Sanders should not have spent .7 hour to "review emails re order/Ombudsman invoice." Opp. at 9.  Again, it appears that the "emails" Ms. Sanders is referencing are the emails she automatically receives from ECF when any party electronically files a document in this case or in Pigford II.  The Court concludes that reading these particular documents is not compensable under the Pigford I Consent Decree because the Ombudsman invoice and Order approving it appear on the Pigford II docket.  In fact, there was

---

[3] The Laffey Matrix is published by the United States Attorney's Office in order to determine hourly compensation rates for attorneys of varying experience levels and is named for the decision in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), overruled in part on other grounds, Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516 (D.C. Cir. 1988) (en banc).

no Ombudsman in Pigford I, so that work could not have been related to the implementation of the Pigford I Consent Decree. The Court will reduce Ms. Sanders's fee by $364.

Finally, USDA objects to 4.42 hours in claimed fees for discussions Ms. Sanders had with her husband, Henry ("Hank") Sanders. Opp. at 9-10; Mot. at 7-9. USDA contends that "[i]t is unreasonable . . . to bill the government at the $520/hour senior partner rate . . . to brainstorm every decision with another lawyer." Opp. at 9-10. In the absence of a more particularized objection, the Court concludes that such brainstorming among attorneys is precisely the sort of work that counsel should do in the course of working to implement the Consent Decree. See Blackman v. Dist. of Columbia, 56 F. Supp. 3d 19, 29 (D.D.C. 2014) ("[S]ome general oversight, collaboration and communication among attorneys . . . is necessary in any complex case."). The Court will make no deductions for Ms. Sanders's discussions with her husband.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Ms. Sanders's Motion for Attorney's Fees, Costs and Expenses. Specifically, the Court will reduce Ms. Sanders's requested total award of $17,212 in attorneys' fees, costs, and expenses by $7,155.20 to $10,056.80. Accordingly, it is hereby

ORDERED that the Motion of Faya Rose Toure f/k/a Rose M. Sanders for Attorney's Fees, Costs, and Expenses [Dkt. 1966] is GRANTED in part and DENIED in part; and it is

FURTHER ORDERED that the United States Department of Agriculture shall pay Faya Rose Toure f/k/a Rose M. Sanders $10,056.80 in attorneys' fees, costs, and expenses on or before January 15, 2016. If these amounts are not paid on or before January 15, 2016, they

will bear interest at the rate established by 28 U.S.C. § 1961. This is a final appealable Order. See FED. R. APP. P. 4(a).

        SO ORDERED.

DATE: November 23, 2015

/s/_____
PAUL L. FRIEDMAN
United States District Judge