UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
TIMOTHY PIGFORD et al.,                     )
                                            )
          Plaintiffs,                       )
                                            )
     v.                                     )        Civil Action No. 97-1978 (PLF)
                                            )
TOM VILSACK, Secretary,                     )
United States Department of Agriculture,    )
                                            )
          Defendant.                        )
_____ )
                                            )
CECIL BREWINGTON et al.,                    )
                                            )
          Plaintiffs,                       )
                                            )
     v.                                     )        Civil Action No. 98-1693 (PLF)
                                            )
TOM VILSACK, Secretary,                     )
United States Department of Agriculture,    )
                                            )
          Defendant.                        )
_____ )

OPINION

Before the Court are eight motions and one "objection" filed by four sets of pro se

parties, three of whom are individuals or groups of individuals who either filed unsuccessful

Track A claims, unsuccessfully attempted to late-file Track A claims, or opted-out of the plaintiff

class:  (1) Eddie and Dorothy Wise (collectively, "the Wises"); (2) Theodore F.B. Bates, Ava L.

Bates, Karla K. Bates, Terrie L. Bates, Theodore B. Bates, Jr., Theodore F.B. Bates, Sr., and Ada

C. and Kerry F. Bates (collectively, "the Bateses"); and (3) Carl Parker on behalf of the Estate of

Robert J. Parker ("Parker").  The fourth party is Corey Lea, a representative of the Cowtown

Foundation, Inc. ("Cowtown"), who appears to have no prior connection to this case.  The

defendant — the United States Department of Agriculture ("USDA") — opposes the motions

and has supplied a declaration by Bob Etheridge, North Carolina Executive Director of the

USDA's Farm Service Agency, with respect to the Wises' motions.  The motions seek various

forms of relief, discussed in further detail below, but generally ask for further hearings under the

Consent Decree in this case.

        The Court has previously considered similar motions — including some by these

same pro se parties — raising the same arguments on which the movants now base the present

motions.  See, e.g., Pigford v. Vilsack, 78 F. Supp. 3d 247 (D.D.C. 2015), appeal dismissed (July

20, 2015); Pigford v. Vilsack, No. 97-1978, 2014 WL 6886607 (D.D.C. Dec. 8, 2014);

Memorandum Opinion and Order (Jan. 29, 2013) [Dkt. 1873].  The Court at that time concluded

that it had no authority to entertain these arguments, which were clearly foreclosed by the terms

of the Consent Decree.  The same conclusion holds true today — indeed, even more so in light of

the Wind-down Stipulation and Order rendered on November 2, 2015 [Dkt. 2008].  Where not

foreclosed on jurisdictional grounds, the pro se motions are barred by the doctrine of res judicata.

The Court therefore will deny the pro se motions and objection.[1]

---

[1]    The papers considered in connection with the pending motions include:  Consent
Decree [Dkt. 167]; Wises' Letter [Dkt. 177]; Wises' Motion to Compel Written Consent to Opt
Out [Dkt. 2002]; Wises' Motion for Contempt and to Enforce the Pigford Consent Decree [Dkt.
2003]; Wises' Emergency Motion for Preliminary Injunction Against Foreclosure [Dkt. 2006];
Wind-down Stipulation and Order [Dkt. 2008]; Defendant's Opposition to Wises' Motions [Dkt.
2010]; Wises' Reply in Support of Three Initial Motions [Dkt. 2013]; Bateses' Motion [Dkt.
2017]; Bateses' Objection [Dkt. 2018]; Defendant's Response to Bateses' Motion and Objection
[Dkt. 2019]; Bateses' Reply [Dkt. 2027]; Wises' Emergency Motion for an Order on Dkt. 2003
[Dkt. 2031]; Defendant's Opposition to Wises' Emergency Motion for an Order [Dkt. 2033];
Wises' Reply in Support of Emergency Motion for an Order [Dkt. 2036]; Wises' Motion for a
Declaratory Judgment [Dkt. 2037]; Defendant's Opposition to Wises' Motion for a Declaratory
Judgment [Dkt. 2039]; Parker's Motion for a Declaratory Judgment [Dkt. 2040]; Wises' Reply in
Support of Motion for a Declaratory Judgment [Dkt. 2041]; Defendant's Opposition to Parker

I.  FACTUAL AND PROCEDURAL BACKGROUND

In this action, a class of African-American farmers sued the USDA for

discriminating against them in the provision of farming credit and benefits.  In April 1999, this

Court approved a Consent Decree that settled the plaintiffs' claims and created a mechanism for

resolving individual claims of class members outside the traditional litigation process.  Pigford v.

Glickman, 185 F.R.D. 82 (D.D.C. 1999).  Class members could choose between two claims

procedures, known as Track A and Track B.  Pigford v. Schafer, 536 F. Supp. 2d 1, 4 (D.D.C.

2008).  Track A claims were decided by a third-party neutral known as an adjudicator, and

claimants who were able to meet a minimal burden of proof were awarded $50,000 in monetary

damages, debt relief, tax relief, and injunctive relief.  Id.  Track B imposed no cap on damages

and also provided for debt relief and injunctive relief; but claimants who chose Track B were

required to prove their claims by a preponderance of the evidence in one-day mini-trials before a

third-party neutral known as an arbitrator.  Id.  Decisions of the adjudicator and the arbitrator

were final and not subject to review in any judicial forum, except that the Monitor, a court-

appointed third-party neutral, could — on a petition filed within 120 days of the decision —

direct the adjudicator and the arbitrator to reexamine claims if the Monitor determined that "a

clear and manifest error ha[d] occurred" that was "likely to result in a fundamental miscarriage

of justice."  Id. (citing Consent Decree ¶¶ 9(a)(v), 9(b)(v), 10(i), 12(b)(iii) (April 14, 1999) [Dkt

167]); see also Pigford v. Johanns, 416 F.3d 12, 14 (D.C. Cir. 2005).

Potential class members in 1999 were not required to participate in that alternative

claims resolution process; those African-American farmers who wished to pursue their

_____

Motion for a Declaratory Judgment [Dkt. 2044]; Parker Reply [Dkt. 2045]; and Cowtown's
Motion to Intervene and Freeze the Remaining Funds [Dkt. 2048].

individual claims against the USDA in court were permitted to opt out of the <u>Pigford</u> plaintiffs' class by submitting an opt-out request within 120 days of the entry of the Consent Decree. Consent Decree ¶¶ 2(b), 18; <u>Pigford v. Glickman</u>, 185 F.R.D. at 95-96.  The Court entered the Consent Decree on April 14, 1999 and, by its terms, it extinguished the claims against the USDA of all members of the <u>Pigford</u> plaintiffs' class who did not opt out of the Consent Decree in a timely fashion.  Consent Decree ¶¶ 2(b), 18; <u>Pigford v. Veneman</u>, 208 F.R.D. 21, 23 (D.D.C. 2002).

By the end of the claims resolution process, nearly 23,000 claimants had been found eligible to participate, and the federal government had provided more than $1 billion in total relief to prevailing claimants.  <u>See</u> Monitor's Final Report on Good Faith Implementation of the Consent Decree and Recommendations for Status Conference at 1 (Apr. 1, 2012) [Dkt. 1812].  In addition, Congress enacted in the Food, Conservation, and Energy Act of 2008 a provision that potentially would subsequently resurrect the claims of more than 60,000 potential claimants who were unable to participate in this case because they had not submitted timely claims.  <u>In re Black Farmers Discrimination Litig.</u>, 856 F.Supp.2d 1, 11-12 (D.D.C. 2011).  On May 13, 2011, after "extensive negotiations," the Court preliminarily approved a class-wide Settlement Agreement between those plaintiffs and the USDA, <u>id.</u> at 14, 22-23, which led to the implementation of another non-judicial claims resolution process with a potential total payout of more than $1 billion in relief.  <u>Id.</u> at 22-23 (explaining the claims resolution process of "expedited" Track A versus "actual damages" Track B); <u>see</u> <u>also</u> Claims Resolution Act of 2010, Pub. L. 111-291 § 201(b), 124 Stat. 3064 (2010) (appropriating funds for the claims resolution process).  In fact, the claims process in that case is now completed, and over $1 billion have been paid out to successful claimants.

On November 2, 2015, the Court entered a Wind-down Stipulation and Order in this case, which "which "execute[d] an orderly wind-down of all obligations imposed on the parties by the Consent Decree" in this action, and "forever discharged and released" Class Counsel, the Neutrals, and Defendant from "all duties under or related to the Consent Decree." Dkt. 2008 at 3, 7.  Subsequent to the entry of the Wind-down Stipulation and Order, the Court "retain[s] jurisdiction solely to enforce the terms of this Wind-down Stipulation and Order," as well as for certain other limited aspects of the Consent Decree that are not relevant to the pro se motions under consideration here.  Id. at 7.

## II.  DISCUSSION

The Court will discuss the background of each of the four sets of pro se parties separately and separately analyze the merits of their respective motions and objection.

### A.  The Wises

On April 15, 1999 — one day after the Court entered the Consent Decree — a letter to the Court from Eddie and Dorothy Wise was entered on the public docket in this case. Wises' Letter [Dkt. 177].[2]  In it the Wises wrote that "the Consent Decree is very unfair" and asked to "go to trial or declare the Consent Decree null and void."  Id. at 1.  If this letter was intended to be a formal opt out, as other courts have concluded it was, see infra at 6, it was timely filed.  See supra at 3-4.  The docket in this case indicates that the Wises did not participate further in this litigation until October 9, 2015, when they filed the instant motions to compel and for contempt, Dkts. 2002 and 2003.

---

[2]  The letter is dated March 27, 1999.  See Dkt. 177.

In the interim, the Wises filed a class action suit against the USDA, with the assistance of counsel, in the United States District Court for the Eastern District of North Carolina, alleging identical discrimination claims to those contained in the complaint in this case. Wise v. Vilsack, 496 F. App'x 283, 284 (4th Cir. 2012) (per curiam).  In that case, the Wises explained to the district court that they "chose to opt out of the Pigford v. Veneman class action lawsuit and become lead plaintiffs in a new class action lawsuit."  Dkt. 2010-1 at 4; see also United States v. Wise, No. 14-0844, 2015 WL 5918027, at *4 (E.D.N.C. Oct. 9, 2015) ("The evidence of record conclusively establishes the fact that [the Wises] opted out of the Pigford settlement."), reconsideration denied, No. 14-0844, 2015 WL 7302245 (E.D.N.C. Nov. 18, 2015), aff'd, 639 F. App'x 193 (4th Cir. 2016), and aff'd, 639 F. App'x 193 (4th Cir. 2016); Wise v. Glickman, 257 F. Supp. 2d 123, 129 (D.D.C. 2003) ("Eddie Wise[ and] Dorothy Monroe-Wise . . . opted out of the Pigford class.").  The Eastern District of North Carolina ultimately dismissed the Wises' putative class action in 2011 under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to plead any facts comparing their treatment to the treatment of non-minority farmers.  Wise v. Vilsack, No. 10-0197, 2011 WL 381765, at *4 (E.D.N.C. Feb. 2, 2011), aff'd sub nom. 496 F. App'x 283.[3]

In November 2014, the USDA brought a foreclosure proceeding against the Wises in the U.S. District Court for the Eastern District of North Carolina in order to collect on defaulted USDA loans and, in October 2015, the court granted summary judgment in favor of

---

[3]        Since 2011, the Wises have engaged in varied efforts before federal courts and the USDA to seek the same relief as that in their failed class action in the U.S. District Court for the Eastern District of North Carolina.  See Wise v. United States, No. 15-01331, 2015 WL 8024002 (D.D.C. Dec. 4, 2015), aff'd, No. 16-5019, 2016 WL 3049544 (D.C. Cir. May 17, 2016); Wise v. U.S. Dep't of Agric., No. 13-0234, 2014 WL 5460606 (E.D.N.C. Oct. 27, 2014), aff'd, 592 F. App'x 203 (4th Cir. 2015); In Re: Eddie Wise & Dorothy Wise, Complainant, No. 16-0002, 2015 WL 9241444 (U.S.D.A. Nov. 17, 2015); In Re: Eddie Wise, Petitioner, No. 13-0325, 2013 WL 6075751 (U.S.D.A. Oct. 29, 2013).

USDA.  United States v. Wise, 2015 WL 5918027, at *6; see also United States v. Wise, No. 14-0844, 2016 WL 755627 (E.D.N.C. Feb. 25, 2016) (denying stay), reconsideration denied, No. 14-0844, 2016 WL 1448641 (E.D.N.C. Apr. 12, 2016).  "On April 4, 2016, the United States Marshal for the Eastern District of North Carolina sold at public auction approximately 105 acres of land owned by [the Wises] . . . in accordance with" that judgment.  Declaration of Bob Etheridge at 1 (Apr. 28, 2016) [Dkt. 2039-1].

In their five present motions, the Wises seek:  (1) production of their written statements opting-out of the Pigford class, Dkt. 2002; (2) a hearing before the USDA on the merits of their discrimination claim, Dkt. 2003; (3) a preliminary injunction barring the foreclosure of their farm pending the Court's resolution of their motions, Dkts. 2006 and 2031; and (4) a declaration that they are members of the Pigford class.  Dkt. 2037.  The government opposes the motions as either barred by res judicata or as moot.  Dkt. 2010 at 9-10; Dkt. 2039 at 5-6.

The Court will deny all of the Wises' motions.  As an initial matter, the government is correct that the Wises' motions for injunctive relief to prevent the foreclosure of their property, Dkt. 2006 and 2031, are moot.  The government provided the declaration of Bob Etheridge, North Carolina Executive Director of the USDA's Farm Service Agency, which indicates that the foreclosure sale of the Wises' property occurred on April 4, 2016.  Dkt. 2039-1 at 1.  The Wises' reply brief did not rebut Etheridge's statement, arguing only that the USDA perpetrated a "fraud upon the court."  Dkt. 2041 at 1.  Even if the Court were inclined to agree with the Wises' fraud argument — which it is not — federal courts are courts of limited jurisdiction that, under Article III's case or controversy requirement, may only decide "real and substantial controvers[ies]."  North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam)

(quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937)).  Federal courts have no

jurisdiction over moot cases, see Worth v. Jackson, 451 F.3d 854, 861 (D.C. Cir. 2006), and such

cases must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the

Federal Rules of Civil Procedure.  The Court therefore will deny the Wises' motions seeking

relief from foreclosure of their property, Dkt. 2006 and 2031, as moot because they present no

ongoing controversy in light of the completed foreclosure sale.

      The Wises' remaining motions seek (1) production of their written statements

opting-out of the Pigford class, Dkt. 2002, (2) a hearing before the USDA on the merits of their

discrimination claim, Dkt. 2003, and (3) a declaration that they are members of the Pigford class.

Dkt. 2037.  All of these motions fail on the basis of res judicata.  Judge Colleen Kollar-Kotelly

of this Court recently held as much when she dismissed the Wises' 2015 civil action seeking

very similar relief.  See Wise v. United States, 2015 WL 8024002, at *6; see also Wise v. United

States, 128 F. Supp. 3d 311, 318-19 (D.D.C. 2015) (denying a motion for preliminary injunction

and remarking that all of the Wises' claims "are likely barred by res judicata").

      The doctrine of res judicata "'preclud[es] parties from contesting matters that they

have had a full and fair opportunity to litigate'" and thereby "protect[s] against 'the expense and

vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on

judicial action by minimizing the possibility of inconsistent decisions.'"  Taylor v. Sturgell, 553

U.S. 880, 892 (2008) (quoting Montana v. United States, 440 U.S. 147, 153-54 (1979)).  There is

no doubt that res judicata bars the relief that the Wises seek in Dkts. 2002, 2003, and 2037

because they had a full and fair opportunity to litigate those issues in the U.S. District Court for

the Eastern District of North Carolina.  That court dismissed the Wises' putative class action

discrimination claim because the Wises "fail[ed] to sufficiently allege that other similarly-

situated applicants, outside Plaintiffs' protected class, were treated more favorably by the USDA in the provision of credit or in the provision of services or assistance." Wise v. Vilsack, 2011 WL 381765, at *4, aff'd sub nom. 496 F. App'x 283.  In addition, in the course of the foreclosure proceeding, that court found that the Wises are not members of the Pigford class because "[t]he evidence of record conclusively establishes the fact that [they] opted out of the Pigford settlement." United States v. Wise, 2015 WL 5918027, at *4.[4]

Even if the Court did not give these prior rulings the preclusive effect to which they are entitled, the government also attached to its opposition a filing in the Wises' putative class action in the U.S. District Court for the Eastern District of North Carolina in which they explained how they "chose to opt out of the Pigford v. Veneman class action lawsuit and become lead plaintiffs in a new class action lawsuit." Dkt. 2010-1 at 4.  What is more, on April 15, 1999, the Court placed on the public docket in this case a letter from the Wises, which stated their position at the time that "the Consent Decree is very unfair" and their request to "go to trial or declare the Consent Decree null and void." Wises' Letter at 1 [Dkt. 177].  This is further evidence that the Wises intended to opt out of the Pigford class.

The Wises' motions also ask this Court to act beyond the scope of its present jurisdiction in this case.  Pursuant to the Consent Decree, the Court dismissed this case with prejudice in 1999.  Consent Decree ¶ 17; see also Pigford v. Glickman, 185 F.R.D. 82.  The Consent Decree left the Court with jurisdiction over this matter solely to enforce the terms of the Consent Decree.  Pigford v. Glickman, 185 F.R.D. at 110.  In November 2015, the Court's entry

---

[4]    Judge James Robertson of this Court previously noted in another putative class action brought by the Wises that "Eddie Wise[ and] Dorothy Monroe-Wise . . . opted out of the Pigford class." Wise v. Glickman, 257 F. Supp. 2d at 129; see also Wise v. United States, 128 F. Supp. 3d at 318-19; United States v. Wise, No. 14-0844, 2015 WL 5918027, at *4; Wise v. United States, 2015 WL 8024002, at *6.

of the Wind-down Stipulation and Order further narrowed its jurisdiction "solely to enforce the

terms of this wind-down Stipulation and Order," as well as for certain other limited aspects of

the Consent Decree that are not relevant to the pro se motions under consideration here.  Dkt.

2008 at 7.  The Wind-down Stipulation and Order does not contemplate any further hearings on

the merits of discrimination claims for anyone besides Maurice McGinnis, id. at 4-5, let alone

persons like the Wises who opted-out of the Pigford class and elected to pursue individual

claims.  The Court therefore will deny the Wises' motions seeking various forms of relief, Dkts.

2002, 2003, and 2037, as barred by the doctrine of res judicata and beyond the scope of the

Court's jurisdiction.

*B.  The Bateses*

The Bateses elected to pursue their claims under Track A.  Order at 1 (Jan. 16,

2001) [Dkt. 391].  Of the seven Bateses named in the present motion and objection, the

Adjudicator denied the claims of four persons and the Arbitrator denied the petitions to file late

claims of three others.  Declaration of James F. Radintz ¶¶ 3-11 [Dkt. 1851-1].  "In October

2012, [the Bateses] filed a motion that sought to reverse the denials of four Track A claims filed

by [Theodore F.B. Bates] and three family members, and which also sought to permit four other

family members — whose petitions to file late claims pursuant to paragraph 5(g) of the Consent

Decree were denied by the Arbitrator — to have their claims adjudicated on the merits."  Pigford

v. Vilsack, 2014 WL 6886607, at *1.  This Court denied that earlier motion, as well as several

related motions, concluding that it lacked jurisdiction to grant the requested relief.

Memorandum Opinion and Order (Jan. 29, 2013) [Dkt. 1873]; see also Order (Mar. 13, 2013)

[Dkt. 1883] (denying Bateses' motion for reconsideration).  In December 2014, the Court again

denied an "objection and notice" filed by the Bateses seeking identical relief.  Pigford v. Vilsack, 2014 WL 6886607, at *1-2.

The Bateses' present motion and objection ask the Court to hear "evidence" of the Bateses' claims of racial discrimination, "uphold" the Bateses' rights, and "[r]eopen the case." Dkt. 2017 at 2, 4; Dkt. 2018 at 2.  The government opposes the motion and objection on the ground that the Court lacks jurisdiction to grant such relief under both the Consent Decree and the Wind-down Stipulation and Order.  Dkt. 2019 at 2-3.

The Court has no authority to address claims that the Adjudicator or Arbitrator erred because "[n]othing in the Consent Decree authorizes the Court to grant [vacatur of the Adjudicator's decisions and resurrection of the claimants' Track A claims]."  Abrams v. Vilsack, 655 F. Supp. 2d 48, 52 & nn. 4-5 (D.D.C. 2009).  The Consent Decree provides that decisions of the Adjudicator are final (except that the parties may petition the Monitor for review), and that those who seek relief under Track A "forever waive their right to seek review in any court or before any tribunal of the decision of the arbitrator with respect to any claim that is, or could have been decided, by the [A]djudicator."  Consent Decree ¶¶ 9(a)(v), 9(b)(v) (concerning assertion of only non-credit claims under a USDA benefit program).  This provision regarding the finality of the Adjudicator's decisions, set forth in Paragraph 9(b)(v) of the Consent Decree, mirrors a virtually identical provision establishing the finality of the Arbitrator's decisions on claimants' Track B claims.  Id. ¶ 10(i).  Thus, with respect to decisions of the Adjudicator on Track A claims and decisions of the Arbitrator on Track B claims, the parties to the Consent Decree agreed that these decisions would be final and not subject to judicial review "in any court or before any tribunal."  Id. ¶¶ 9(a)(v), 9(b)(v), 10(i).

The sole exception to this robust finality was provided in Paragraph 12(b)(iii), under which the Monitor was empowered to "[d]irect the . . . adjudicator[] or arbitrator to reexamine a claim where the Monitor determines that a clear and manifest error has occurred in the . . . adjudication[] or arbitration of the claim and has resulted or is likely to result in a fundamental miscarriage of justice."  Consent Decree ¶ 12(b)(iii).  It appears from the record that none of the members of the Bates family who filed timely Track A claims elected to exercise their right to review by the Monitor of the Adjudicator's denial or dismissal of their claims.  It was not until they filed a motion in October 2012 that those members of the Bates family who were unsuccessful Track A claimants sought review of the Adjudicator's decision.  Memorandum Opinion and Order (Jan. 29, 2013) [Dkt. 1873].

The terms of the Consent Decree provide unequivocally that decisions of the Adjudicator on Track A claims are final, and are not subject to review or vacatur by this Court. Those members of the Bates family who submitted timely Track A claims are not the first parties to this action whose requests for judicial review of decisions made by the neutrals have been denied, as this Court has consistently upheld the provisions of the Consent Decree concerning the finality of all such decisions.  See, e.g., Pigford v. Vilsack, 78 F. Supp. 3d at 251-52 (denying motions seeking vacatur of Track B decisions made by Arbitrator, citing Paragraphs 10(i) and 12(b)(iii) of Consent Decree); Memorandum Opinion and Order (May 21, 2012) [Dkt. 1824] (same).  For the reason explained above and in those earlier decisions, the Court concludes that it lacks the authority to reverse the denials of the claims of members of the Bates family who submitted timely Track A claims.

Nor is any relief available to the three members of the Bates family whose petitions to file late claims pursuant to paragraph 5(g) of the Consent Decree were denied by the

Arbitrator.  As this Court previously has explained, it "delegated the authority to decide these petitions — completely and finally — to [Arbitrator] Michael Lewis."  Memorandum Opinion and Order at 3 (Nov. 26, 2001) [Dkt. 560]; see also Order at 2 (Sept. 13, 2004) [Dkt. 994] ("The court will not consider any [¶ 5(g)] petition, either at the first instance or following denial and/or reconsideration by the Arbitrator.").  Moreover, Congress afforded relief to unsuccessful paragraph 5(g) petition-filers by enacting Section 14012 of the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, § 14012(b), 122 Stat. 1651 (2008).  The four plaintiffs whose paragraph 5(g) petitions to late file were denied by the Arbitrator thus had the opportunity to file a claim pursuant to that statutory authority but failed to take advantage of the opportunity Congress provided.  The Court therefore will deny the Bateses' motion and objection because it lacks jurisdiction to review the Adjudicator's decision to deny Track A claims or to revive late-filed claims.

### C.  Parker

Robert J. Parker elected to pursue his claim under Track A.  Decision of Adjudicator at 2 (May 16, 2001) [Dkt. 2044-1].  The Adjudicator denied Parker's claim for failing to offer the requisite evidentiary proof of discrimination, id., and the record does not reflect that Parker ever petitioned the Monitor for review.  Parker's motion seeks a declaration that he is a member of the Pigford class and is entitled to a "formal hearing before [the] USDA's Administrative Law Judge."  Dkt. 2040 at 4-5.  The government opposes the motion on the ground that the Court lacks jurisdiction to grant such relief under both the Consent Decree and the Wind-down Stipulation and Order.  Dkt. 2044 at 2-3.

Again, the Court lacks jurisdiction to issue the relief Parker requests.  Just as the Court explained with respect to the members of the Bates family who filed timely Track A

claims, see supra § II(B), the plain language of the Consent Decree forecloses the Court's review

of the merits of the Adjudicator's decision to deny Parker's Track A claim.  The Court therefore

will deny Parker's motion because it lacks jurisdiction to review the Adjudicator's decision

denying Parker's Track A claim.

### D.  Cowtown Foundation

Neither the Cowtown Foundation nor its representative, Corey Lea, appear to

have any prior connection to this case whatsoever.  The Court sees that in 2008, Cowtown

attempted "to obtain funding for the identification and education of '[s]ocially [d]isadvanatged

[f]armers,'" so its interests appear to align closely with the plaintiff class in this case.  The

Cowtown Found., Inc. v. Beshear, No. 09-0056, 2010 WL 3340831, at *1 (W.D. Ky. Aug. 20,

2010).  Cowtown's motion represents that it speaks "on the behalf of Track '[A]' and track '[B]'

Pigford litigants" and asks the Court "to freeze the remaining judgment fund" while Cowtown

represents "farmers before the USDA's Administrative Law Judge."  Dkt. 2048 at 1-2.

Cowtown's motion lacks merit.  As an initial matter, Cowtown does not allege

that Lea or any of the farmers he purports to represent are class members in this case; rather, it

suggests that they "have not received [a] hearing on the merits" of their discrimination claims.

Dkt. 2048 at 3.  Cowtown's motion therefore "does not allege that" Lea or any of the farmers he

purports to represent were "member[s] of either [the Pigford or the In re Black Farmers] class of

plaintiffs [or] that [they were] personally prejudiced by the Consent Decree [], and so lacks

standing [] to object to the terms of th[is] agreement[]."  See White v. Vilsack, 80 F. Supp. 3d

123, 127 (D.D.C. 2015), aff'd, No. 15-5108, 2015 WL 5210421 (D.C. Cir. Aug. 6, 2015); see

also Rahman v. Vilsack, 673 F. Supp. 2d 15, 18-19 (D.D.C. 2009) (persons who are not members

of class do not have standing to challenge settlement terms, unless they can show that settlement

prejudiced them).  Even assuming Cowtown would have standing to raise objections to the terms

of the Consent Decree — and construing Cowtown's motion "to freeze the remaining judgment

fund" as such an objection or motion for reconsideration — the Court finds no reason to

reconsider its determination, made after a fairness hearing where all those who objected had a

full opportunity to express their views, that the terms of the Consent Decree were fair.  See

Pigford v. Glickman, 185 F.R.D. at 100-01, 107-08, 113.

   Moreover, Cowtown's motion seeks "a hearing before the [ALJ] for the *continued*

*abuse* by the Dept. of Agriculture."  Dkt. 2048 at 3 (emphasis added).  The plaintiff class in this

case only includes farmers who "filed administrative complaints between January 1, 1981, and

July 1, 1997, for acts of discrimination occurring between January 1, 1981, and December 31,

1996."  Pigford v. Veneman, 355 F. Supp. 2d 148, 151 (D.D.C. 2005).  The Court therefore will

deny Cowtown's motion both because Cowton lacks standing to challenge the Consent Decree

and because Cowton seeks relief for discrimination that is not cognizable under the Consent

Decree entered in this case.

### III.  CONCLUSION

   For the reasons explained in this Opinion, the Court will deny all of the pending

motions.  An Order consistent with this Opinion shall issue this same day.

   SO ORDERED.


       /s/_____
       PAUL L. FRIEDMAN
       United States District Judge

DATE:  September 15, 2016